## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID B. TRACEY, DANIEL GUENTHER, MARIA T. NICHOLSON, CORRINNE R. FOGG, AND VAHIK MINAIYAN, individually and as representatives of a class of participants and beneficiaries on behalf of the MIT Supplemental 401(k) Plan, | No. 1:16-cv-11620-NMG |
| *Plaintiffs,* | AMENDED COMPLAINT— CLASS ACTION |
| v. | JURY TRIAL DEMANDED |
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY, THE MIT SUPPLEMENTAL 401(K) PLAN OVERSIGHT COMMITTEE, THE ADMINISTRATIVE COMMITTEE, ISRAEL RUIZ, MARC BERNSTEIN, GLENN DAVID ELLISON, S.P. KOTHARI, GUNTHER ROLAND, LORRAINE A. GOFFE-RUSH, GLEN SHOR, PAMELA WELDON, THOMAS M. WIEAND, AND BARTON ZWIEBACH, | |
| *Defendants.* | |

### AMENDED COMPLAINT

1.     Plaintiffs David B. Tracey, Daniel Guenther, Maria T. Nicholson, Corrinne R. Fogg, and Vahik Minaiyan, individually and as representatives of a class of participants and beneficiaries of the MIT Supplemental 401(k) Plan (the "Plan"), bring this action under 29 U.S.C. §1132(a)(2) on behalf of the Plan against Defendants Massachusetts Institute of Technology, the MIT Supplemental 401(k) Plan Oversight Committee, the Administrative Committee, Israel Ruiz, Marc Bernstein, Glenn David Ellison, S.P. Kothari, Gunther Roland, Lorraine A. Goffe-

Rush, Glen Shor, Pamela Weldon, Thomas M. Wieand, and Barton Zwiebach  for

breach of fiduciary duties and prohibited transactions under ERISA.[1]

2.      ERISA's fiduciary duties are the "highest known to the law" and

require fiduciaries to act with "an eye single to the interests of the participants and

beneficiaries." *Donovan v. Bierwirth,* 680 F.2d 263, 271, 272 n.8 (2d Cir. 1982);

*Glass Dimensions, Inc. v. State St. Bank & Tr. Co.*, 931 F. Supp. 2d 296, 304 (D.

Mass. 2013).

3.      As fiduciaries to the Plan, Defendants are obligated to limit Plan

expenses to a reasonable amount and to prudently investigate and select

investment options for the exclusive benefit of participants, rather than allowing a

conflicted third party to dictate Plan decisions that will benefit the third party.

Defined contribution plans with billions of dollars in assets, like the Plan, have

tremendous bargaining power in the marketplace for retirement plan services, and

can demand high-quality administrative and investment management services at

low cost. Instead of leveraging the Plan's bargaining power to benefit participants,

Defendants allowed a conflicted third party to dictate Plan decisions, hiring an MIT

donor—Fidelity Investments—as the Plan's recordkeeper and primary investment

provider, allowing it to put hundreds of its proprietary investment funds in the

Plan, and allowing it to collect unreasonable and excessive fees, all at the expense of

participants' retirement savings.

4.      To remedy these fiduciary breaches, Plaintiffs, individually and as

representatives of a class of participants and beneficiaries of the Plan, bring this

---

[1] The Employee Retirement Income Security Act, 29 U.S.C. §§1001–1461.

action on behalf of the Plan under 29 U.S.C. §1132(a)(2) to enforce Defendants'

personal liability under 29 U.S.C. §1109(a) to make good to the Plan all losses

resulting from each breach of fiduciary duty and to restore to the Plan any profits

made through Defendants' use of Plan assets. In addition, Plaintiffs seek such other

equitable or remedial relief for the Plan as the Court may deem appropriate.

## JURISDICTION AND VENUE

5.      **Subject-matter jurisdiction.** This Court has exclusive jurisdiction

over the subject matter of this action under 29 U.S.C. §1132(e)(1) and 28 U.S.C.

§1331 because it is an action under 29 U.S.C. §1132(a)(2).

6.      **Venue.** This District is the proper venue for this action under 29

U.S.C. §1132(e)(2) and 28 U.S.C. §1391(b) because it is the district in which the

subject Plan is administered, where at least one of the alleged breaches took place,

and where at least one defendant resides.

7.      **Standing.** An action under §1132(a)(2) allows recovery only for a plan,

and does not provide a remedy for individual injuries distinct from plan injuries.

*LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248, 256 (2008). The plan is the victim

of any fiduciary breach and the recipient of any recovery. *Id*. at 254. Section

1132(a)(2) authorizes any participant, fiduciary, or the Secretary of Labor to sue

derivatively as a representative of a plan to seek relief on behalf of the plan. 29

U.S.C. §1132(a)(2). As explained in detail below, the Plan suffered millions of

dollars in losses resulting from Defendants' fiduciary breaches and remains exposed

to harm and continued future losses, and those injuries may be redressed by a

judgment of this Court in favor of Plaintiffs. To the extent the Plaintiffs must also

show an individual injury even though §1132(a)(2) does not provide redress for individual injuries, each Plaintiff has suffered such an injury, in at least the following ways:

    a.  The named Plaintiffs and all participants in the Plan suffered financial harm as a result of the imprudent or excessive fee options in the Plan because Defendants' inclusion of those options deprived participants of the opportunity to grow their retirement savings by investing in prudent options with reasonable fees, which would have been available in the Plan if Defendants had satisfied their fiduciary obligations. All participants continue to be harmed by the ongoing inclusion of these imprudent and excessive cost options and payment of excessive recordkeeping fees.

    b.  The named Plaintiffs' individual accounts in the Plan were harmed because they invested in Plan investment options that would have been excluded from the Plan had Defendants discharged their fiduciary duties. These investment options charged excessive fees or underperformed numerous prudent alternatives that were available to the Plan, resulting in a loss of retirement savings.

    c.  The named Plaintiffs' individual accounts in the Plan suffered losses because each participant's account was assessed an excessive amount for recordkeeping and administrative fees, which would not have been

incurred had Defendants discharged their fiduciary duties to the Plan and reduced those fees to a reasonable level.

## PARTIES

### The MIT Supplemental 401(k) Plan

8.     The Plan is a defined contribution, individual account, employee pension benefit plan under 29 U.S.C. §1002(2)(A) and §1002(34).

9.     The Plan is established and maintained under a written document in accordance with 29 U.S.C. §1102(a)(1).

10.     The Plan provides for retirement income for eligible employees of Massachusetts Institute of Technology ("MIT"). Eligible employees include those who: (1) are scheduled to work at least 50% of the normal full-time schedule at MIT or will have 1,000 hours or more of paid service in a calendar year; or (2) are paid by MIT as an employee.

11.     A participant's retirement income depends upon contributions from each employee, employer matching contributions, and from the performance of the Plan's investment options, net of fees and expenses.

12.     As of December 31, 2014, the Plan had $3.6 billion in net assets and 18,268 participants with account balances. It is among the largest 0.05% of all defined contribution plans in the United States based on plan assets. Plans of such great size are commonly referred to as "jumbo plans." As such, the Plan has enormous bargaining power by reason of its massive size to command very low investment management and recordkeeping fees for its participants.

**Plaintiffs**

13.     David B. Tracey is employed as a Project Technician Electro-Mechanical in MIT's Plasma Science and Fusion Center. He resides in West Roxbury, Massachusetts He is a participant in the Plan under 29 U.S.C. §1002(7) because he and his beneficiaries are or may become eligible to receive benefits under the Plan.

14.     Daniel Guenther is a former Research Associate in MIT's Political Science department. He resides in Brookline, Massachusetts. He is a participant in the Plan under 29 U.S.C. §1002(7) because he and his beneficiaries are or may become eligible to receive benefits under the Plan.

15.     Maria T. Nicholson is employed as an Accounts Payable Assistant in MIT's Financial Accounting department. She resides in North Reading, Massachusetts. She is a participant in the Plan under 29 U.S.C. §1002(7) because she and her beneficiaries are or may become eligible to receive benefits under the Plan.

16.     Corrine R. Fogg was formerly employed as an Administrative Assistant in MIT's Plasma Science and Fusion Center. She resides in Ardmore, Pennsylvania. She is a participant in the Plan under 29 U.S.C. §1002(7) because she and her beneficiaries are or may become eligible to receive benefits under the Plan.

17.     Vahik Minaiyan was formerly employed as an HVAC Technician Mechanic in MIT's Physical Plan department. He resides in Burbank, California. He was a participant in the Plan until 2014 when his account balance was distributed from the Plan. He is nonetheless entitled to receive benefits from the

Plan in the amount of the difference between the value of his account as of the time
his account was distributed and what his account would have been worth at that
time had Defendants not breached their duties as alleged herein.

## Defendants

18.     MIT is a non-profit corporation organized under Massachusetts law
with its principal place of business in Cambridge, Massachusetts. MIT is the named
fiduciary under the Plan responsible for the control, management and
administration of the Plan. MIT is the plan sponsor and plan administrator under
29 U.S.C. §1002(16)(A)(i), and upon information and belief, has exclusive
responsibility and complete discretionary authority to control the operation,
management and administration of the Plan, with all powers necessary to enable it
properly to carry out such responsibilities, including the selection and compensation
of the providers of administrative services to the Plan and the selection, monitoring,
and removal of the investment options made available to participants for the
investment of their contributions and provision of their retirement income.

19.     MIT is a fiduciary to the Plan because it exercised discretionary
authority or discretionary control respecting the management of the Plan or
exercised authority or control respecting the management or disposition of its
assets, and has discretionary authority or discretionary responsibility in the
administration of the Plan. 29 U.S.C. §1002(21)(A)(i) and (iii).

20.     The MIT Supplemental 401(k) Plan Oversight Committee ("Oversight
Committee") was established by the Executive Committee of the Board of Trustees
of MIT. The Oversight Committee is responsible for the selection, monitoring, and

retention of Plan investment options. Its members are appointed by the President of MIT.

21.     Current members of the Oversight Committee include: Israel Ruiz, Marc Bernstein, Glenn David Ellison, S.P. Kothari, Gunther Roland, Lorraine A. Goffe-Rush, Glen Shor, Pamela Weldon, Thomas M. Wieand, and Barton Zwiebach.

22.     The Oversight Committee and its individual members are fiduciaries to the Plan because they exercised discretionary authority or discretionary control respecting the management of the Plan or exercised authority or control respecting the management or disposition of its assets, and have discretionary authority or discretionary responsibility in the administration of the Plan. 29 U.S.C. §1002(21)(A)(i) and (iii).

23.     The Administrative Committee is responsible for the administration of the Plan, including determining the eligibility for participation and for benefits, directing the Plan's trustee to pay benefits, and interpreting provisions of the Plan, among other duties.

24.     The Administrative Committee and its individual members are fiduciaries to the Plan because they exercised discretionary authority or discretionary control respecting the management of the Plan or exercised authority or control respecting the management or disposition of its assets, and have discretionary authority or discretionary responsibility in the administration of the Plan. 29 U.S.C. §1002(21)(A)(i) and (iii).

25.     Because the MIT entities described above and their individual

committee members have acted as alleged herein as agents of MIT, all defendants

are collectively referred to hereafter as "Defendants."

## ERISA'S FIDUCIARY STANDARDS

26.     ERISA imposes strict fiduciary duties of loyalty and prudence upon the

Defendants as fiduciaries of the Plan. 29 U.S.C. §1104(a), states, in relevant part,

that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the
> interest of the participants and beneficiaries and –
>
> (A)     for the exclusive purpose of
>
>> (i) providing benefits to participants and their beneficiaries; and
>> (ii) defraying reasonable expenses of administering the plan;
> [and]
>
> (B)     with the care, skill, prudence, and diligence under the
> circumstances then prevailing that a prudent man acting in a
> like capacity and familiar with such matters would use in the
> conduct of an enterprise of like character and with like aims.

27.     Under ERISA, fiduciaries that exercise any authority or control over

plan assets, including the selection of plan investments and service providers, must

act prudently and solely in the interest of participants in the plan, and not for the

benefit of third parties including service providers to the plan such as recordkeepers

and those who provide investment products. Fiduciaries must ensure that the

amount of fees paid to those service providers is no more than reasonable. DOL

Adv. Op. 97-15A (1997); DOL Adv. Op. 97-16A (1997).

28.     "[T]he duty to conduct an independent investigation into the merits of a particular investment" is "the most basic of ERISA's investment fiduciary duties." *In re Unisys Savings Plan Litig.*, 74 F.3d 420, 435 (3d Cir. 1996); *Katsaros v. Cody*, 744 F.2d 270, 279 (2d Cir. 1984) (fiduciaries must use "the appropriate methods to investigate the merits" of plan investments). A defined contribution plan fiduciary cannot "insulate itself from liability by the simple expedient of including a very large number of investment alternatives in its portfolio and then shifting to the participants the responsibility for choosing among them." *Hecker v. Deere & Co.*, 569 F.3d 708, 711 (7th Cir. 2009). Instead, fiduciaries must "initially determine, and continue to monitor, the prudence of *each* investment option available to plan participants." *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 423 (4th Cir. 2007) (emphasis original); *see also* 29 C.F.R. § 2550.404a-1; DOL Adv. Opinion 98-04A (1998); DOL Adv. Opinion 88-16A (1988). Fiduciaries have "a continuing duty to monitor investments and remove imprudent ones," regardless of how long a fund has been in the plan. *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828–29 (2015).

29.     The general duties of loyalty and prudence imposed by 29 U.S.C. §1104 are supplemented by a detailed list of transactions that are expressly prohibited by 29 U.S.C. §1106, and are considered "*per se*" violations because they entail a high potential for abuse. Section 1106(a)(1) states, in pertinent part, that:

> [A] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect –
>
> (A)     sale or exchange, or leasing, of any property between the plan and a party in interest;

\* \* \*

    (C)    furnishing of goods, services, or facilities between the plan and a party in interest;

    (D)    transfer to, or use by or for the benefit of a party in interest, of any assets of the plan…

Section 1106(b) provides, in pertinent part, that:

[A] fiduciary with respect to the plan shall not –

    (1)    deal with the assets of the plan in his own interest or for his own account,

    (2)    in his individual or in any other capacity act in a transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interest of the plan or the interest of its participants or beneficiaries, or

    (3)    receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

30.    Under 29 U.S.C. §1103(c)(1), with certain exceptions not relevant here,

the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.

31.    ERISA also imposes explicit co-fiduciary liabilities on plan fiduciaries.

29 U.S.C. §1105(a) provides a cause of action against a fiduciary for knowingly participating in a breach by another fiduciary and knowingly failing to cure any breach of duty. The statute states, in relevant part, that:

In addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable

for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

> (1)    if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; [or]

> (2)    if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

> (3)    if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

32.    29 U.S.C. §1132(a)(2) authorizes a plan participant to bring a civil action to enforce a breaching fiduciary's liability to the plan under 29 U.S.C. §1109. Section 1109(a) provides in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

## BACKGROUND FACTS

### I.    Defined contribution plans, services, and fees.

33.    A defined contribution plan is a type of employee retirement plan that allows employees to contribute a percentage of their pre-tax earnings to the plan, with the employer often matching those contributions up to a specified percentage. Each participant in the plan has an individual account. Participants direct the plan

contributions into one or more investment options in a lineup assembled by the plan's fiduciaries. "[P]articipants' retirement benefits are limited to the value of their own individual investment accounts, which is determined by the market performance of employee and employer contributions, less expenses." *Tibble*, 135 S. Ct. at 1826.

34.     The majority of fees assessed to participants in a defined contribution plan are attributable to two general categories of services: plan administration (including recordkeeping), and investment management. These expenses "can sometimes significantly reduce the value of an account in a defined-contribution plan." *Tibble*, 135 S. Ct. at 1826.

35.     The plan's fiduciaries have control over defined contribution plan expenses. The fiduciaries are responsible for hiring administrative service providers for the plan, such as a recordkeeper, and for negotiating and approving the amount of fees paid to the administrative service provider. The fiduciaries also have exclusive control over the menu of investment options to which participants may direct the assets in their accounts. Those selections each have their own fees which are deducted from the returns that participants receive on their investments.

36.     These fiduciary decisions have the potential to dramatically affect the amount of money that participants are able to save for retirement. According to the U.S. Department of Labor, a 1% difference in fees over the course of a 35-year career makes a difference of *28%* in savings at retirement. U.S. Dep't of Labor, *A*

*Look at 401(k) Plan Fees,* at 1–2 (Aug. 2013).[2] Accordingly, fiduciaries of defined contribution plans must engage in a rigorous process to control these costs and ensure that participants pay no more than a reasonable level of fees. This is particularly true for multi-billion dollar plans like the Plan, which have the bargaining power to obtain the highest level of service and the lowest fees. The fees available to multi-billion dollar retirement plans are orders of magnitude lower than the much higher retail fees available to small investors.

37.     The entities that provide services to defined contribution plans have an incentive to maximize their fees by putting their own higher-cost funds in plans and collecting the highest amount possible for recordkeeping. For each additional dollar in fees paid to a service provider, participants' retirement savings are directly reduced by the same amount, and participants lose the potential for those lost assets to grow over the remainder of their careers. Accordingly, participants' retirement security is directly affected by the diligence used by plan fiduciaries to control, negotiate, and reduce the plan's fees.

38.     Fiduciaries must be cognizant of providers' self-interest in maximizing fees, and not simply accede to the providers' preferred investment lineup—*i.e.*, proprietary funds that will generate substantial fee revenue for the provider—or agree to the provider's administrative fee quotes without negotiating or considering alternatives. In order to act in the exclusive interest of participants and not in the service providers' interest, fiduciaries must negotiate as if their own money was at stake. Instead of simply accepting the investment funds or fees demanded by these

---

[2] Available at http://www.dol.gov/ebsa/pdf/401kfeesemployee.pdf.

conflicted providers, fiduciaries must consider whether participants would be better served by using alternative investment products or services.

## II.    Defined contribution recordkeeping.

39.    Recordkeeping is a service necessary for every defined contribution plan. The recordkeeper keeps track of the amount of each participant's investments in the various options in the plan, and typically provides each participant with a quarterly account statement. The recordkeeper often maintains a plan website or call center that participants can access to obtain information about the plan and to review their accounts. The recordkeeper may also provide access to investment education materials or investment advice. These services are largely commodities, and the market for recordkeeping services is highly competitive.

40.    There are numerous recordkeepers in the marketplace who are capable of providing a high level of service and who will vigorously compete to win a recordkeeping contract for a jumbo defined contribution plan. These recordkeepers will readily respond to a request for proposal and will tailor their bids based on the desired services (*e.g.*, recordkeeping, website, call center, etc.). In light of the commoditized nature of their services, recordkeepers primarily differentiate themselves based on price, and will aggressively bid to offer the best price in an effort to win the business, particularly for jumbo plans.

41.    Some recordkeepers in the market provide only recordkeeping and administrative services, while others provide both recordkeeping and investment products. The latter group has an incentive to place their own proprietary products in the plan in order to maximize revenues from servicing the plan. As explained

below, when faced with such conflicted fund recommendations, fiduciaries must independently assess whether the provider's investment products are the best choice for the plan, or whether the purpose of providing benefits to participants would be better accomplished by considering other investment managers who may offer superior funds at a better price.

## III.     Defined contribution investment options.

42.     Defined contribution fiduciaries have exclusive control over the particular investment options available in the plan. Plan participants direct and allocate the assets in their accounts to one or more of these options, and the investment returns are credited to participants' accounts.

43.     Each investment option is typically a pooled investment product, such as a mutual fund, and invests in a diversified portfolio of securities in a broad asset class such as fixed income or equities. Fixed income funds may include conservative principal protection options, such as stable value funds, or other diversified portfolios of government or corporate debt securities. Equity funds invest in diversified portfolios of stocks of large, mid-size, or small domestic or international companies in a particular style such as growth or value (or a blend of the two). Balanced funds invest in a mix of stocks and bonds in varying percentages.

44.     Investment options can be passively or actively managed. In a passively managed or "index" fund, the investment manager attempts to match the performance of a given benchmark index by holding a representative sample of securities in that index, such as the S&P 500. In an actively managed fund, the investment manager uses her judgment in buying and selling individual securities

(*e.g.*, stocks, bonds, etc.) in an attempt to generate investment returns that surpass a benchmark index, net of fees. Because no stock selection or research is necessary for the manager to track the index and trading is limited, passively managed investments charge significantly lower fees than actively managed funds.

45.     The fees of mutual funds and other investment options are usually expressed as a percentage of assets under management, or "expense ratio." For example, if the fund deducts 1% of fund assets each year in fees, the fund's expense ratio would be 1%, or 100 basis points (bps).[3] The fees deducted from a fund's assets reduce the value of the shares owned by fund investors.

46.     Many mutual funds offer their investors different share classes. Retail share classes are marketed to individuals with small amounts to invest. Institutional share classes are offered to investors with large amounts to invest, such as large retirement plans. The different share classes of a given mutual fund have the identical manager, are managed identically, and invest in the same portfolio of securities. The only difference is that the retail shares charge significantly higher fees, resulting in retail class investors receiving lower returns. The share classes are otherwise identical in all respects.

47.     Some mutual funds engage in a practice known as "revenue sharing." In a revenue-sharing arrangement, a mutual fund pays a portion of its expense ratio to the entity providing administrative and recordkeeping services to a plan. The difference in fees between a mutual fund's retail and institutional share classes is often attributable to revenue sharing. To illustrate, a fund's retail share class

---

[3] One basis point is equal to 1/100th of one percent (or 0.01%).

may have an expense ratio of 100 bps, including 25 bps of revenue sharing, while the institutional share charges 75 bps, with no or lesser revenue sharing. The presence of revenue sharing thus provides an incentive for administrative service providers to recommend that the fiduciary select higher cost funds, including in-house funds of the administrative service provider that pay the provider revenue sharing. "[V]ery little about the mutual fund industry," including revenue sharing practices, "can plausibly be described as transparent[.]" *Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 907 (7th Cir. 2013).

48.     When selecting investments, the importance of fees cannot be overstated. Indeed, "the duty to avoid unwarranted costs is given increased emphasis in the prudent investor rule" under the common law of trusts, which informs ERISA's fiduciary duties. Restatement (Third) of Trusts ch. 17, intro. note (2007); *see Tibble*, 135 S. Ct. at 1828 (citing Restatement (Third) of Trusts § 90 in finding a continuing duty to monitor under ERISA). As the Restatement explains, "cost-conscious management is fundamental to prudence in the investment function." Restatement (Third) of Trusts § 90 cmt. b. While a fiduciary may consider higher-cost, actively-managed mutual funds as an alternative to index funds, "active management strategies involve investigation expenses and other transaction costs . . . that must be considered, realistically, in relation to the likelihood of increased return from such strategies." Restatement (Third) of Trusts ch. 17, intro. note; *id*. § 90 cmt. h(2).

49.     Academic and financial industry literature demonstrates that high

expenses are not correlated with superior investment management. Indeed, funds

with high fees on average perform worse than less expensive funds even on a *pre-fee*

*basis*. Javier Gil-Bazo & Pablo Ruiz-Verdu, *When Cheaper is Better: Fee*

*Determination in the Market for Equity Mutual Funds*, 67 J. ECON. BEHAV. & ORG.

871, 873 (2008); see also Jill E. Fisch, *Rethinking the Regulation of Securities*

*Intermediaries*, 158 U. PA. L. REV. 1961, 1993 (2010) (summarizing numerous

studies showing that "the most consistent predictor of a fund's return to investors is

the fund's expense ratio").

> [T]he empirical evidence implies that superior management is not
> priced through higher expense ratios. On the contrary, it appears that
> the effect of expenses on after-expense performance (even after
> controlling for funds' observable characteristics) is more than one-to-
> one, which would imply that low-quality funds charge higher fees.
> Price and quality thus seem to be inversely related in the market for
> actively managed mutual funds.

Gil-Bazo & Ruiz-Verdu, *When Cheaper is Better*, at 883.

50.     In light of this effect of fees on expected returns, fiduciaries must

carefully consider whether the added cost of actively-managed funds is realistically

justified by an expectation of higher returns. Restatement (Third) of Trusts ch. 17,

intro. note; *id*. § 90 cmt. h(2). Nobel Prize winners in economics have concluded that

virtually no investment manager consistently beats the market over time after fees

are taken into account. "Properly measured, the average actively managed dollar

must underperform the average passively managed dollar, net of costs." William F.

Sharpe, *The Arithmetic of Active Management,* 47 FIN. ANALYSTS J. 7, 8 (Jan./Feb.

1991);[4] Eugene F. Fama & Kenneth R. French, *Luck Versus Skill in the Cross-Section of Mutual Fund Returns*, 65 J. Fin. 1915, 1915 (2010) ("After costs…in terms of net returns to investors, active investment must be a negative sum game.").

51.    To the extent managers show any sustainable ability to beat the market, the outperformance is nearly always dwarfed by mutual fund expenses. Fama & French, *Luck Versus Skill in the Cross-Section of Mutual Fund Returns*, at 1931–34; see also Russ Wermers, *Mutual Fund Performance: An Empirical Decomposition into Stock-Picking Talent, Style, Transaction Costs, and Expenses*, 55 J. Fin. 1655, 1690 (2000) ("on a net-return level, the funds underperform broad market indexes by one percent per year").

52.    If an individual high-cost mutual fund exhibits market-beating performance over a short period of time, studies demonstrate that outperformance during a particular period is not predictive of whether a mutual fund will perform well in the future. Laurent Barras et al., *False Discoveries in Mutual Fund Performance: Measuring Luck in Estimated Alphas*, 65 J. Fin. 179, 181 (2010); Mark M. Carhart, *On Persistence in Mutual Fund Performance*, 52 J. Fin. 57, 57, 59 (1997) (measuring thirty-one years of mutual fund returns and concluding that "persistent differences in mutual fund expenses and transaction costs explain almost all of the predictability in mutual fund returns"). However, the *worst-*

---

[4] Available at http://www.cfapubs.org/doi/pdf/10.2469/faj.v47.n1.7.

*performing* mutual funds show a strong, persistent tendency to continue their poor performance. Carhart, *On Persistence in Mutual Fund Performance*, at 57.

53.   Accordingly, investment costs are of paramount importance to prudent investment selection, and a prudent investor will not select higher-cost actively managed funds without a documented process to realistically conclude that the fund is likely to be that extremely rare exception, if one even exists, that will outperform its benchmark index over time, net of investment expenses.

## IV. Revenue sharing: a practice that can lead to excessive fees if not properly monitored and capped.

54.   There are two primary methods for defined contribution plans to pay for recordkeeping and administrative services: "direct" payments from plan assets, and "indirect" revenue sharing payments from plan investments such as mutual funds. Plans may use one method or the other exclusively, or may use a combination of both direct and indirect payments.

55.   In a typical direct payment arrangement, the fiduciary contracts with the recordkeeper to obtain administrative services in exchange for a flat annual fee based on the number of participants for which the recordkeeper will be providing services, for example $30 per participant. Jumbo defined contribution plans possess tremendous economies of scale for purposes of recordkeeping and administrative fees. A plan with 20,000 participants can obtain a much lower fee on a per-participant basis than a plan with 2,000 participants.

56.   A recordkeeper's cost for providing services depends on the number of participants in the plan, not the amount of assets in the plan or in an individual

account. The cost of recordkeeping a $75,000 account balance is the same as a $7,500 account. Accordingly, a flat price based on the number of participants in the plan ensures that the amount of compensation is tied to the actual services provided and does not grow based on matters that have nothing to do with the services provided, such as an increase in plan assets due to market growth or greater plan contributions by the employee.

57.     As an example, a fiduciary of a 20,000 participant, $3 billion plan may issue a request for proposal to several recordkeepers and request that the respondents provide pricing based on a flat rate for a 20,000 participant plan. If the winning recordkeeper offers to provide the specified services at a flat rate of $30 per participant per year, the fiduciary would then contract with the recordkeeper for the plan to pay a $600,000 direct annual fee (20,000 participants at $30/participant). If the plan's assets increase to $4 billion during the course of the contract but the participant level stays constant, the recordkeeper's compensation does not change, because the services provided have not changed.

58.     Such a flat per-participant agreement does not necessarily mean, however, that every participant in the plan must pay the same $30 fee from his or her account. The fiduciary could reasonably determine that it is equitable to charge each participant the same $30 (for example, through a quarterly charge of $7.50 to each account in the plan). Alternatively, the fiduciary could conclude that assessing the same fee to all investors would discourage participants with relatively small accounts from participating in the plan, and that, *once the aggregate flat fee for the*

*plan has been determined*, a proportional asset-based charge should be used. In that case, the flat per-participant rate of $30 per participant multiplied by the number of participants would simply be converted to an asset-based charge, such that every participant pays the same percentage of his or her account balance. If plan assets increase, the percentage is adjusted downward so that the *plan* as a whole is still paying the same plan-level price for the negotiated services.

59.     Some plans pay for recordkeeping through "indirect" revenue sharing payments from the plan's mutual funds. Revenue sharing, while not a *per se* violation of ERISA, can lead to excessive fees if not properly monitored and capped.

60.     In a revenue sharing arrangement, the mutual fund pays the plan's recordkeeper putatively for providing recordkeeping and administrative services for the fund. However, because revenue sharing payments are asset-based, the fees can grow to unreasonable levels if plan assets grow while the number of participants, and thus the services provided, have not increased at a similar rate. The opposite is generally not true. If plan assets decline, participants will not receive a sustained benefit of paying lower fees, because the recordkeeper will demand that the plan make up the shortfall through additional direct payments.

61.     If a fiduciary decides to use revenue sharing to pay for recordkeeping, it is required that the fiduciary: (1) determine and monitor the amount of the revenue sharing and any other sources of compensation that the provider has received, (2) compare that amount to the price that would be available on a flat per-participant basis, and (3) control the amount of fees paid through recordkeeping by

obtaining rebates of any revenue sharing amounts that exceed the reasonable level of fees.

62.      As to the second critical element—determining the price that would be available on a flat per-participant basis—making that assessment for a jumbo plan requires soliciting bids from competing providers. In multi-billion dollar plans with over 10,000 participants, such as the MIT Plan, benchmarking based on fee surveys alone is inadequate. Recordkeeping fees for jumbo plans have also declined significantly in recent years due to increased technological efficiency, competition, and increased attention to fees by sponsors of other plans such that fees that may have been reasonable at one time may have become excessive based on current market conditions. Accordingly, the only way to determine the true market price at a given time is to obtain competitive bids. *See George v. Kraft Foods Global, Inc.*, 641 F.3d 786, 800 (7th Cir. 2011) (a 401(k) excessive fee case which denied summary judgment based in part on opinion of independent consultant that "'without an actual fee quote comparison'—*i.e*, a bid from another service provider—[consultant] 'could not comment on the competitiveness of [recordkeeper's] fee amount for the services provided.'"). Prudent fiduciaries of defined contribution plans thus obtain competitive bids for recordkeeping at regular intervals of approximately three years.

## V.     Bundled defined contribution plan services.

63.      As the prevalence and asset size of defined contribution plans grew, financial services companies such as Fidelity entered this burgeoning retirement plan market. These providers often marketed plans that were fully or partially

"bundled," offering to assist in setting up a plan that would include a package of the provider's proprietary or affiliated investment funds as well as administrative and recordkeeping services. The plans were often marketed as "free" plans, meaning there were supposedly no additional fees beyond the revenues the provider received from having their proprietary and affiliated funds in the plan. These purportedly free plans had a significant condition—in order to obtain the so-called "free" pricing, the fiduciary had to agree to put the provider's preferred investment lineup in the plan—a group of hand-picked funds that would guarantee the provider would receive its desired fee revenue on an ongoing basis. Any deviations from that lineup or removal of funds after the plan was established would require the provider's approval or result in the plan being assessed additional direct fees. Thus, under these bundled arrangements, funds were included in some defined contribution plans not based on an independent analysis of their merits or what was in the best interests of participants, but because of the benefits they provided to the plan's service provider.

64.     For many years this approach was followed by some fiduciaries of jumbo plans, resulting in excessive fees and imprudent investments. As of approximately a decade ago, if not earlier, fiduciaries of jumbo 401(k) plans widely recognized that fulfilling their duties required careful scrutiny of whether a bundled services model served the interests of participants, rather than the financial interests of the provider. Upon undertaking that analysis, prudent fiduciaries determined that bundled arrangements that limited their plans to funds that were

hand-picked by the recordkeeper resulted in a menu of underperforming investments with opaque and often excessive fees. There is no shortage of high-quality, low-cost investment products available to 401(k) plans. It is extremely unlikely that a single investment manager will offer the best option for each category in a plan's lineup. By rejecting bundling, a plan is not limited to the recordkeeper's proprietary investment products and other affiliated funds that pay it revenue sharing. Instead, the fiduciary is free to reject the recordkeeper's conflicted fund recommendations, and can independently assess whether another investment manager offers a superior product at a more attractive price, and can include such funds in the plan's investment lineup.

65.     Rejecting a bundled arrangement also facilitates negotiation of reasonable recordkeeping fees, since the price of each service is transparent and not obscured by opaque revenue sharing arrangements—through which the investment product provider does not publicize the amount of revenue sharing it kicks back to itself in its separate role as a recordkeeper—and can be negotiated separately without investment revenue skewing the recordkeeping price.

66.     An unbundled structure allows for control over revenue sharing arrangements, and indeed, allows a fiduciary to eliminate them altogether. To the extent revenue sharing is still used, the payments may effectively be "kickbacks" to induce recordkeepers to advocate for the fund to be included in the plan's investment lineup. An independent assessment of each fund is thus essential and required by ERISA to determine whether the fund should be included in the plan

based strictly on its merits as an investment, regardless of whether it also provides revenue sharing.

## DEFENDANTS BREACHED THEIR FIDUCIARY DUTIES AND COMMITTED PROHIBITED TRANSACTIONS

67.     ERISA requires defined contribution plan fiduciaries to evaluate the prudence of *each* investment option selected for inclusion in a plan, and to act in the exclusive interest of plan participants when making plan decisions. Defendants failed to do this. Instead, Defendants' included *340* investment options in the Plan— of which 180 were Fidelity funds—nearly all of Fidelity's proprietary mutual funds and over 100 additional non-Fidelity funds that provided Fidelity with a steady stream of revenue sharing payments. Defendants included many of these funds in the Plan because Fidelity requested it, and without any fiduciary analysis of the merits of those options. Thus, Defendants allowed the Plan's recordkeeper to dictate plan decisions in order to benefit itself at the Plan's expense.

68.     Had Defendants properly monitored Fidelity's compensation and considered Fidelity's financial interest in putting its own proprietary options in the Plan, and independently analyzed each fund in the Plan as its fiduciary duties required, Defendants would have rejected Fidelity's proposed 340-option lineup, which was riddled with options with excessive fees and poor performance compared to low-cost alternatives that were available to the Plan. Indeed, in 2015, Defendants eliminated hundreds of excessive-cost and underperforming options from the Plan and replaced the previous 340-option menu with a lineup of 37 core options, only one of which was managed by Fidelity. Even then, Defendants still retained Fidelity

as the Plan's recordkeeper without competition and continue to allow Fidelity to receive excessive fees. Defendants' failure to discharge their fiduciary duties caused significant losses to the Plan and participants' retirement savings.

## I.     The Plan's investment structure.

69.     MIT employees and retirees who participate in the Plan do not decide which investment options are placed in the Plan. It is Defendants who select investment options in the Plan, and it is Defendants who have the responsibility for removing imprudent Plan options.

70.     Prior to July 2015, Defendants included approximately *340* investment options in the Plan. These options were provided in the following asset classes: target date and asset allocation funds, large cap domestic equities, mid cap domestic equities, small cap domestic equities, international equities, fixed income, money market, real estate, sector funds, and stable value.

71.     Over 300 of the Plan's 340 options were mutual funds, 180 of which were managed by Fidelity—essentially its entire mutual fund lineup—and put in the Plan without a prudent screening process by a fiduciary.

72.     Despite the massive size of the Plan, many of the mutual fund options were high-priced *retail* share classes designed for small individual investors. The retail shares are identical in every respect to institutional shares of the same funds, except that the retail shares charge much higher fees.

73.     The mutual funds included in the Plan charge varying amounts for investment management, and other expenses, depending on the investment at issue and share class. Some of them also charge marketing and distribution expenses.

Mutual funds have shareholders who are not participants in the Plan, or any retirement plan, and who purchase shares as a result of the funds' marketing efforts. However, all shareholders in mutual funds, including participants in the Plan, pay these expenses. MIT participants, as with any participant in a retirement plan, receive no benefit from these marketing fees. Many other mutual funds that were available to the Plan do not include such marketing costs.

74.    The remaining investment options in the Plan included collective trusts and two custom funds (Bond Oriented Balanced Fund and Diversified Stock Fund) administered at the direction of MIT by Fidelity Management Trust Company. These custom funds invest in underlying mutual funds or collective trusts, and for years, included underlying funds managed by Fidelity.

75.    Effective July 20, 2015, Defendants eliminated hundreds of mutual funds from the Plan and implemented an overhauled investment lineup. This new lineup includes 37 investment options, of which 19 were previously offered. Thus, Defendants eliminated *over 94%* of the Plan's previous fund lineup.

## II.    Fidelity Investments had and continues to have a comprehensive role in the Plan and extensive relationship with MIT.

76.    Fidelity Investments is a privately owned company based in Boston, Massachusetts that provides financial services to individual and institutional investors. The company was founded by Edward C. Johnson II and continues to be operated by the Johnson family. Edward C. Johnson III served as Chief Executive Officer until 2014 when his daughter, Abigail Johnson, assumed that position, which she currently holds.

77.     In December 1998, Defendants selected Fidelity to provide administrative and recordkeeping services to the Plan. Fidelity began providing these services effective April 1, 1999.

78.     Prior to April 1, 1999, MIT bore the investment expenses charged by the Plan's investment options. As of April 1, 1999, MIT transferred the responsibility for payment of these expenses to Plan participants—largely in the form of additional fees paid to Fidelity.

79.     In addition to transferring the Plan's administrative and recordkeeping services to Fidelity as of April 1, 1999, Defendants also allowed Fidelity to include a massive number of its proprietary investment funds in the Plan, which provided extensive investment management fees to Fidelity, thereby providing Fidelity with very large revenues. Following the transition, Fidelity was the Plan's *primary* provider of mutual fund options for the next 16 years. As of December 31, 2014, over *180* of the Plan's 300 mutual funds were *Fidelity* mutual funds.

80.     ERISA requires that fiduciaries act for the *exclusive* benefit of plan participants. 29 U.S.C. §1104(a)(1)(A); *In re Fid. ERISA Float Litig.*, 829 F.3d 55, 58 (1st Cir. 2016). No other interest whatsoever can be served. Defendants profoundly breached this duty.

81.     Rather than conducting an independent market-wide assessment of potential service providers for the Plan, Defendants limited their search by

selecting a provider that "*did business with [MIT] or was headquartered locally*."[5]

While such a rationale may be permissible for managing MIT's own assets, ERISA requires fiduciaries to make decisions based on the merits of a transaction and for the sole benefit of participants, not based on benefiting a local investment company. And just as it is improper to hire a service provider based on factors such as other business relationships, it is similarly improper to *maintain* the arrangement on that basis while failing to consider recordkeepers or investment managers who do not meet the geographic or business relationship criteria.

82.    Fidelity's business relationship with MIT continued after it was selected. Numerous Fidelity-related entities have made substantial donations to MIT:

   a.  Since Fidelity was selected as the Plan's recordkeeper, Fidelity Foundation has donated *hundreds of thousands of dollars* to MIT.

   b.  Moreover, since 2001, Fidelity Non-Profit Management Foundation has donated over *$18 million* to MIT.

   c.  Further, another Fidelity-related entity for which former CEO Edward C. Johnson III and current CEO Abigail Johnson serve as trustees, the Edward C. Johnson Fund, has made additional donations. In 2009, for example, the Edward C. Johnson Fund contributed $100,000 to MIT for "Conferences."

   d.  In 2010, the Edward C. Johnson Fund contributed $220,000 for "Conservation-Arts & Sciences" and $25,000 for "Program Support" to MIT.

   e.  The Fidelity Foundation and Fidelity Investments Charitable Gift Fund are also supporters of the MIT OpenCourseWare, a web-based publication of MIT course content.

---

[5] MIT News, *Fidelity Chosen to Manage MIT Supplemental 401(k) Plan as of April 1* (Dec. 16, 1998) (emphasis added), available at http://news.mit.edu/1998/401k-1216.

f.  Fidelity is a research supporter of MIT's Center for Information Systems Research and member of MIT's Media Lab.

g.  In addition, Fidelity served as one of the corporate associates of MIT's Sloan School of Management "provid[ing] critical support for capital projects, new initiatives, innovative educational activities, diversity fellowships, sponsorships for student conferences and special events, and other needs identified by the School."[6]

83.  Tellingly, for nine years, Fidelity CEO Abigail Johnson has had direct responsibility over the governance of MIT. Since 2007, she has served as a member of the Board of Trustees for MIT (also referred to as the MIT Corporation), where she chairs the visiting committee of MIT's Sloan School of Management. Members of the Board of Trustees "hold a fiduciary duty to govern MIT, to oversee the stewardship of MIT's assets for MIT's present and perpetual well-being and stability, and to ensure that MIT adheres to the purposes for which it was established."[7]

84.  As a member of the Board of Trustees, Ms. Johnson has influenced decisions concerning the operation of MIT. For instance, according to MIT President L. Rafael Reif, she offered "high-level guidance on the financial situation" following the 2008 financial crisis and "has helped shape changes at the business school."[8]

85.  Ms. Johnson therefore wears multiple hats. She is responsible for maximizing revenue to MIT as a member of the Board of Trustees. In that role, she

---

[6] MIT Sloan School of Management, Annual Philanthropy Report 2009 (Spring 2010), available at http://mitsloan.mit.edu/alumnimagazine/pdf/Spring2010-FullWithoutNotes.pdf.

[7] See MIT Bylaws, §1.1, available at http://web.mit.edu/corporation/bylaws/by1.html.

[8] Beth Healy, *Abigail Johnson, After Years of Training, Gets to Put Her Stamp on Fidelity*, Boston Globe (Dec. 5, 2014), available at https://www.bostonglobe.com/business/2014/12/05/abigail-johnson-after-years-training-gets-put-her-stamp-fidelity/Unb5tRwrL8iby2mTHoqMGN/story.html.

is directly in a position to, and has, driven donations to MIT from Fidelity and Johnson family resources. Yet at the same time, MIT, which acts through its Board of Trustees, is the named fiduciary to MIT's 401(k) plan participants with ultimate responsibility over the selection and retention of Plan investment options. Thus, as a member of the Board of Trustees governing the Plan, she personally benefits her family and her company, Fidelity, from Defendants' use of Fidelity and its funds—a total of 180—which the Board of Trustees placed in the Plan.

86.     Fidelity's family and affiliates' donations to MIT have also secured Fidelity's position as the Plan's recordkeeper without any competition from outside service providers. In addition to MIT's use of virtually all of Fidelity's funds in the Plan, since first hiring Fidelity over 17 years ago, Defendants have caused the Plan to use Fidelity as the Plan's recordkeeper and to pay Fidelity unreasonable administrative and investment management expenses, without putting those services out to competitive bidding. MIT's use of Fidelity without bids is likewise the result of Defendants' policy of benefiting Fidelity and the Johnson family at the expense of Plan participants.

**III.   Defendants allowed Fidelity to include 180 of its proprietary funds in the Plan while including 340 duplicative, excessive-cost options in the Plan and squandering the Plan's ability to obtain lower fees; Defendants admitted this was confusing and caused unreasonable fees.**

**A.     Defendants caused the Plan and participants to pay excessive investment management fees.**

87.     Prior to July 2015, Defendants included over 340 investment options in the Plan's core lineup. Over 180 of those funds were *Fidelity's own proprietary* funds

—nearly every mutual fund that Fidelity offered—which paid Fidelity investment management fees and revenue sharing. In addition, approximately *124* of the *non-*Fidelity funds also paid Fidelity revenue sharing. Thus, many funds were included in the Plan not based on an independent assessment of their merits, but because Fidelity wanted the funds in the Plan to ensure it would receive a steady stream of fee revenues and benefit its financial interests. Defendants actively favored Fidelity and failed to make a prudent determination as to whether including these funds was in the exclusive interest of participants rather than in Fidelity's interest. Thus, instead of acting solely in the interest of participants, Defendants allowed Fidelity's financial interests to dictate the Plan's investment selections.

88.     Had Defendants properly and independently evaluated Fidelity's preferred lineup compared to non-conflicted alternatives from outside managers that did not pay revenue sharing to  Fidelity, Defendants would have rejected many of the Plan's 340 options and instead selected a limited group of funds from outside managers, long before they did (albeit belatedly) in July 2015.

89.     The Plan's 340-fund lineup included an overwhelming array of duplicative funds in the same investment styles, which diluted the Plan's ability to obtain significantly lower fees by offering a single option in each investment style, and provided a confusing menu of options that impaired participants' ability to make investment decisions.

90.     In comparison, according to Callan Investments Institute's 2015 Defined Contribution Trends survey, defined contribution plans in 2014 had an

average of *15* investment options, excluding target date funds.[9] This number of options provides choice of investment style to participants while maintaining a larger pool of assets in each investment style, which benefits participants by avoiding participant confusion and obtaining lower fees. Indeed, since it is the plan fiduciary who ERISA holds to the standard of a prudent financial expert, it is important for fiduciaries to perform the role of selecting investments, for the benefit of participants who are not financial experts.

91.    A larger pool of assets in each investment style significantly reduces fees paid by participants. By consolidating duplicative investments of the same investment style into a single investment option, the Plan would then have the ability to command lower-cost investments, such as collective trusts, separately managed accounts, and low-cost institutional share classes of the selected mutual fund options.

92.    Fund selections must be the result of a detailed due diligence process that considers factors such as risk, investment return, and expenses of available investment alternatives, and the fiduciary must give "appropriate consideration" to "the role the investment or investment course of action plays . . . in the plan's investment portfolio," 29 C.F.R. §§ 2550.404a-1(b)(i)-(ii). Fiduciaries cannot discharge their duties "by the simple expedient of including a very large number of investment alternatives in its portfolio and then shifting to the participants the responsibility for choosing among them." *Hecker*, 569 F.3d at 711. This removes the

---

[9] Callan Investments Institute, *2015 Defined Contribution Trends,* at 28 (2015), available at https://www.callan.com/research/files/990.pdf.

benefit of pooling assets consistent with the size of the Plan. Assembling a haphazard lineup of over *340* duplicative options, most of which are the recordkeeper's own proprietary funds and other funds that pay that recordkeeper substantial fees does not reflect a prudent investment selection process.

93.     Within each asset class and investment style deemed appropriate for a participant-directed retirement plan, prudent fiduciaries make a reasoned determination and select a prudent investment option. In contrast to Defendants, prudent fiduciaries do not select and retain numerous investment options for a single asset class and investment style. When many investment options in a single investment style are included in a plan, fiduciaries lose the bargaining power to obtain lower investment management expenses for that style.

94.     Moreover, when many actively managed funds are included within the same investment style, participants often spread the amount of their investment evenly across all the available funds,[10] resulting in participants effectively receiving an index return but at active management fees. This is because the investments are spread so broadly over that investment style. Yet the participants will be paying much higher fees for active management than they would be paying in a passive index fund.

95.     In addition, providing multiple options in a single investment style adds unnecessary complexity to the investment lineup and leads to participant

---

[10] Ian Ayres & Quinn Curtiss, *Beyond Diversification: The Pervasive Problem of Excessive Fees and Dominated Funds in 401(k) Plans*, 124 YALE L.J. 1476, 1481 (2015) ("It is well established that some investors naively diversify by spreading their plan investments across all fund offerings.").

confusion. See, e.g., Donald B. Keim and Olivia S. Mitchell, *Simplifying Choices in Defined Contribution Retirement Plan Design,* at 3 (Nov. 30, 2015) (recognizing that "too many choices can create confusion and distraction");[11] The Standard, *Fixing Your 403(b) Plan: Adopting a Best Practices Approach,* at 2 ("Numerous studies have demonstrated that when people are given too many choices of anything, they lose confidence or make no decision."); Michael Liersch, *Choice in Retirement Plans: How Participant Behavior Differs in Plans Offering Advice, Managed Accounts, and Target-Date Investments,* T. Rowe Price Retirement Research, at 2 (Apr. 2009) ("Offering too many choices to consumers can lead to decision paralysis, preventing consumers from making decisions.").[12]

96.     Defendants provided duplicative investments in virtually every major asset class and investment style, including balanced/asset allocation (19–20 options, including 12 Fidelity funds), fixed income and high yield bond (43–49 options, including 26 Fidelity funds), international (47–55 options, including 30 Fidelity funds), large cap domestic equities (75–78 options, including 31 Fidelity funds), mid cap domestic equities (32–33 options, including 11 Fidelity funds), small cap domestic equities (24–26 options, including 7 Fidelity funds), real estate (3–4 Fidelity options), money market (8 Fidelity options), sector funds (41 Fidelity options), stable value (1 Fidelity option), and target date investments (Fidelity and Vanguard funds). This overwhelming array of duplicative funds in a single

---

[11] Available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2697680.
[12] Available at http://www.behavioralresearch.com/Publications/Choice_in_Retirement_Plans_April_2009.pdf.

investment style harmed participants by diluting the Plan's bargaining power and providing participants a collection of options that were far inferior to low-cost alternatives that were available to the Plan.

97.    Defendants also included multiple actively managed funds within the same investment style and asset class. Using many actively managed funds within the same investment style results in the Plan effectively having an index fund return while paying much higher active management fees.

98.    Moreover, Defendants retained multiple passively managed index options in the same investment style. For the large cap blend asset class, for example, Defendants retained five index funds, three of which were managed by Fidelity. Unlike actively managed funds, index funds do not attempt to beat their benchmark through active stock selection, but instead simply attempt to track a given index, such as the S&P 500. Because no stock selection or research is needed, index fund fees are substantially lower than actively managed fund fees.

99.    Since index funds merely hold the same securities in the same or approximately the same proportions as the index,[13] having multiple index funds of the same category or investment style in the Plan provides no benefit to participants. As Morningstar CEO Joe Mansueto recently observed, "[b]asic market indexes are virtually interchangeable." Lewis Braham, *Morningstar Announces Free Use of Its Indexes*, Barron's (Nov. 5, 2016).[14] Including multiple similar index funds in a plan hurts participants by diluting the Plan's ability to obtain lower rates for a

---

[13] Another example of an index is the Dow Jones Industrial Average.
[14] Available at http://www.barrons.com/articles/morningstar-announces-free-use-of-its-indexes-1478322642.

single index fund of that style because the amount of assets in any one such fund is smaller than the aggregate would be in that investment style. Moreover, multiple managers holding stocks that mimic the S&P 500 or a similar index would pick the same stocks in essentially the same proportions as the index. Thus, there is no value in offering separate index funds in the same investment style.

100.    The inefficient and costly investment structure of the Plan caused significant harm to the Plan and its participants in the form of unreasonable investment management fees and performance losses compared to readily available lower-cost alternatives. This harm and the substantial losses to the Plan are clearly illustrated by the recent 2015 fund lineup changes.

101.    Effective July 20, 2015, Defendants eliminated *hundreds* of investment options from the Plan, including over 180 *Fidelity* funds. Only a single Fidelity fund—the Fidelity Growth Fund—remained. The new investment lineup includes 37 investment options, of which 19 were previously offered. The consolidated investment lineup includes Vanguard collective trust target date funds, two custom funds (Bond Oriented Balanced Fund and Diversified Stock Fund), twelve Vanguard funds, and nine actively managed funds offered by other investment managers besides Vanguard. The assets that were invested in the funds removed from the Plan were transferred or "mapped" to low-cost Vanguard funds and the Wellington High Yield Bond Fund.

102.   The high-cost mutual fund options that Defendants removed from the Plan did not suddenly become imprudent for this jumbo 401(k) plan in July 2015. Instead, their unreasonable cost and poor performance was present for years.

103.   The following table identifies the fees charged by each of the removed investment options compared to the corresponding fund in the new core lineup as disclosed by Defendants.[15] The fees in the removed funds were *up to 15,000%* more than the fees of the fund lineup after Defendants finally conducted a comprehensive review of the Plan's structure and eliminated the imprudent Fidelity funds and duplicative and excessively priced investment options in the Plan.

| Plan Investment | Plan Fee[16] | New Core Lineup Transition Option | Lower-Cost Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| Aberdeen Global Fixed Income Fund (Instl Service) (CGFIX) | 162 bps | Vanguard Target Trust Plus | 7 bps | 2214% |
| Aberdeen US Equity Fund (A) (GXXAX) | 125 bps | Vanguard Total Stock Market Index Trust | 1 bp | 12400% |
| Aberdeen US Equity Fund (Instl Service) (GXXIX) | 107 bps | Vanguard Total Stock Market Index Trust | 1 bp | 10600% |
| Alger Capital Appreciation Institutional Fund (Instl) (ALARX) | 116 bps | Vanguard Total Stock Market Index Trust | 1 bp | 11500% |
| Alger Mid Cap Growth Institutional Fund (Instl) (ALMRX) | 130 bps | Vanguard Total Stock Market Index Trust | 1 bp | 12900% |
| Alger Small Cap Growth Institutional Fund (I) (ALSRX) | 124 bps | Vanguard Short-Term Bond Index (Instl) (VBITX) | 8 bps | 1450% |

[15] See MIT 2015 Investment Transition Guide, at 25–37, available athttp://web.mit.edu/hr/benefits/401k-transition-guide.pdf.

[16] One basis point is equal to 1/100th of one percent (or 0.01%).

| Plan Investment | Plan Fee[16] | New Core Lineup Transition Option | Lower-Cost Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| AllianzGI NFJ Small-Cap Value Fund (Admin) (PVADX) | 111 bps | Vanguard Short-Term Bond Index (Instl) (VBITX) | 8 bps | 1288% |
| AllianzGI NFJ Small-Cap Value Fund (Instl) (PSVIX) | 86 bps | Vanguard Short-Term Bond Index (Instl) (VBITX) | 8 bps | 975% |
| American Beacon Balanced Fund (Inv) (AABPX) | 93 bps | Vanguard Target Trust Plus | 7 bps | 1229% |
| American Beacon International Equity (Inv) (AAIPX) | 106 bps | Vanguard Total Intl Stock Index Fund (Instl Plus) (VTPSX) | 10 bps | 960% |
| American Beacon Large Cap Value Fund (Inv) (AAGPX) | 94 bps | Vanguard Total Stock Market Index Trust | 1 bp | 9300% |
| American Beacon Short Term Bond Fund (Inv) (AALPX) | 91 bps | Vanguard Short-Term Bond Index (Instl) (VBITX) | 7 bps | 1200% |
| American Beacon Small Cap Value Fund (Inv) (AVPAX) | 117 bps | Vanguard Short-Term Bond Index (Instl) (VBITX) | 8 bps | 1363% |
| American Century Large Company Value (Inv) (ALVIX) | 85 bps | Vanguard Total Stock Market Index Trust | 1 bp | 8400% |
| American Century Small Company (Inv) (ASQIX) | 87 bps | Vanguard Short-Term Bond Index (Instl) (VBITX) | 8 bps | 988% |
| American Century Ultra (Inv) (TWCUX) | 101 bps | Vanguard Total Stock Market Index Trust | 1 bp | 10000% |
| AMG Managers Bond Fund (Service) (MGFIX) | 103 bps | Vanguard Total Bond Market Index (Instl Plus) (VBMPX) | 5 bps | 1960% |
| AMG Managers Cadence Capital Appreciation (Admin) (MCFYX) | 107 bps | Vanguard Total Stock Market Index Trust | 1 bp | 10600% |
| AMG Managers Cadence Mid Cap (Service) (MCMYX) | 102 bps | Vanguard Total Stock Market Index Trust | 1 bp | 10100% |

| Plan Investment | Plan Fee[16] | New Core Lineup Transition Option | Lower-Cost Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| AMG Managers Special Equity Fund (Service) (MGSEX) | 150 bps | Vanguard Short-Term Bond Index (Instl) (VBITX) | 8 bps | 1775% |
| Ariel (Inv) (ARGFX) | 103 bps | Vanguard Total Stock Market Index Trust | 1 bp | 10200% |
| Ariel Appreciation (Inv) (CAAPX) | 113 bps | Vanguard Total Stock Market Index Trust | 1 bp | 11200% |
| Artisan International (Inv) (ARTIX) | 117 bps | Vanguard Total Intl Stock Index Fund (Instl Plus) (VTPSX) | 10 bps | 1070% |
| Artisan Mid Cap Fund (Inv) (ARTMX) | 120 bps | Vanguard Total Stock Market Index Trust | 1 bp | 11900% |
| Baron Asset (BARAX) | 131 bps | Vanguard Total Stock Market Index Trust | 1 bp | 13000% |
| Baron Growth Fund (Retail) (BGRFX) | 129 bps | Vanguard Short-Term Bond Index (Instl) (VBITX) | 8 bps | 1513% |
| Calvert Balanced Portfolio (A) (CSIFX) | 118 bps | Vanguard Target Trust Plus | 7 bps | 1586% |
| Calvert Capital Accumulation (A) (CCAFX) | 143 bps | Vanguard FTSE Social Index (Instl) (VFTNX) | 16 bps | 794% |
| Calvert Equity Portfolio (A) (CSIEX) | 117 bps | Vanguard FTSE Social Index (Instl) (VFTNX) | 16 bps | 631% |
| Calvert International Equity (A) (CWVGX) | 168 bps | Vanguard Total Intl Stock Index Fund (Instl Plus) (VTPSX) | 10 bps | 1580% |
| Calvert Small Cap (A) (CCVAX) | 161 bps | Vanguard FTSE Social Index (Instl) (VFTNX) | 16 bps | 906% |
| ClearBridge Value Trust (FI) (LMVFX) | 109 bps | Vanguard Total Stock Market Index Trust | 1 bp | 10800% |

| Plan Investment | Plan Fee[16] | New Core Lineup Transition Option | Lower-Cost Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| Columbia Acorn Select Fund (Z) (ACTWX) | 103 bps | Vanguard Total Stock Market Index Trust | 1 bp | 10200% |
| Columbia Acorn USA (Z) (AUSAX) | 107 bps | Vanguard Short-Term Bond Index (Instl) (VBITX) | 8 bps | 1238% |
| Columbia Income Opportunities Fund (Z) (CIOZX) | 88 bps | Wellington High Yield Bond | 60 bps | 47% |
| Columbia Small Cap Core Fund (Z) (SMCEX) | 113 bps | Vanguard Short-Term Bond Index (Instl) (VBITX) | 8 bps | 1313% |
| CRM Mid Cap Value Fund (Inv) (CRMMX) | 104 bps | Vanguard Total Stock Market Index Trust | 1 bp | 10300% |
| Deutsche Core Equity (S) (SCDGX) | 59 bps | Vanguard Total Stock Market Index Trust | 1 bp | 5800% |
| Deutsche CROCI Equity Dividend Fund (A) (KDHAX) | 117 bps | Vanguard Total Stock Market Index Trust | 1 bp | 11600% |
| Deutsche CROCI International (S) (SCINX) | 90 bps | Vanguard Total Intl Stock Index Fund (Instl Plus) (VTPSX) | 10 bps | 800% |
| Deutsche Global Small Cap (S) (SGSCX) | 125 bps | Vanguard Target Trust Plus | 7 bps | 1686% |
| Domini Social Equity (Inv) (DSEFX) | 120 bps | Vanguard FTSE Social Index (Instl) (VFTNX) | 16 bps | 650% |
| Dreyfus Mid Cap Growth Fund (F) (FRSPX) | 119 bps | Vanguard Total Stock Market Index Trust | 1 bp | 11800% |
| Dreyfus Research Growth Fund (A) (DWOAX) | 118 bps | Vanguard Total Stock Market Index Trust | 1 bp | 11700% |
| Dreyfus Research Growth Fund (Z) (DREQX) | 95 bps | Vanguard Total Stock Market Index Trust | 1 bp | 9400% |

| Plan Investment | Plan Fee[16] | New Core Lineup Transition Option | Lower-Cost Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| Fidelity Asset Manager 20% (FASIX) | 53 bps | Vanguard Target Trust Plus | 7 bps | 657% |
| Fidelity Asset Manager 30% (FTANX) | 55 bps | Vanguard Target Trust Plus | 7 bps | 686% |
| Fidelity Asset Manager 40% (FFANX) | 56 bps | Vanguard Target Trust Plus | 7 bps | 700% |
| Fidelity Asset Manager 50% (FASMX) | 66 bps | Vanguard Target Trust Plus | 7 bps | 843% |
| Fidelity Asset Manager 60% (FSANX) | 73 bps | Vanguard Target Trust Plus | 7 bps | 943% |
| Fidelity Asset Manager 70% (FASGX) | 73 bps | Vanguard Target Trust Plus | 7 bps | 943% |
| Fidelity Asset Manager 85% (FAMRX) | 75 bps | Vanguard Target Trust Plus | 7 bps | 971% |
| Fidelity Balanced K (FBAKX) | 46 bps | Vanguard Target Trust Plus | 7 bps | 557% |
| Fidelity Blue Chip Growth (K) (FDGKX) | 68 bps | Vanguard Total Stock Market Index Trust | 1 bp | 6700% |
| Fidelity Blue Chip Value (FBCVX) | 73 bps | Vanguard Total Stock Market Index Trust | 1 bp | 7200% |
| Fidelity Canada (FICDX) | 98 bps | Vanguard Target Trust Plus | 7 bps | 1300% |
| Fidelity Capital & Income (FAGIX) | 71 bps | Wellington High Yield Bond | 60 bps | 18% |
| Fidelity Capital Appreciation (K) (FCAKX) | 70 bps | Vanguard Total Stock Market Index Trust | 1 bp | 6900% |
| Fidelity Cash Reserves Management (FDRXX) | 37 bps | Vanguard Prime Money Market (Instl) (VMRXX) | 10 bps | 270% |
| Fidelity China Region (FHKCX) | 101 bps | Vanguard Target Trust Plus | 7 bps | 1343% |
| Fidelity Conservative Income Bond (FCONX) | 40 bps | Vanguard Short-Term Bond Index (Instl) (VBITX) | 7 bps | 471% |
| Fidelity Contrafund (K) (FCNKX) | 54 bps | Vanguard Total Stock Market Index Trust | 1 bp | 5300% |

| Plan Investment | Plan Fee[16] | New Core Lineup Transition Option | Lower-Cost Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| Fidelity Convertible Securities (FCVSX) | 58 bps | Vanguard Target Trust Plus | 7 bps | 729% |
| Fidelity Corporate Bond (FCBFX) | 45 bps | Vanguard Target Trust Plus | 7 bps | 543% |
| Fidelity Disciplined Equity (K) (FDEKX) | 39 bps | Vanguard Total Stock Market Index Trust | 1 bp | 3800% |
| Fidelity Diversified International (K) (FDIKX) | 78 bps | Vanguard Total Intl Stock Index Fund (Instl Plus) (VTPSX) | 10 bps | 680% |
| Fidelity Dividend Growth (K) (FDGKX) | 44 bps | Vanguard Total Stock Market Index Trust | 1 bp | 4300% |
| Fidelity Emerging Asia (FSEAX) | 104 bps | Vanguard Target Trust Plus | 7 bps | 1386% |
| Fidelity Emerging Europe, Middle East, Africa (FEMEX) | 137 bps | Vanguard Emerging Markets Index (Instl) (VEMIX) | 12 bps | 1042% |
| Fidelity Emerging Markets (K) (FEDDX) | 86 bps | Vanguard Emerging Markets Index (Instl) (VEMIX) | 12 bps | 617% |
| Fidelity Emerging Markets Discovery (FEDDX) | 148 bps | Vanguard Emerging Markets Index (Instl) (VEMIX) | 12 bps | 1133% |
| Fidelity Equity Dividend Income (K) (FETKX) | 52 bps | Vanguard Total Stock Market Index Trust | 1 bp | 5100% |
| Fidelity Equity-Income (K) (FEIKX) | 54 bps | Vanguard Total Stock Market Index Trust | 1 bp | 5300% |
| Fidelity Europe (FIEUX) | 97 bps | Vanguard Target Trust Plus | 7 bps | 1286% |
| Fidelity Export & Multinational (K) (FEXKX) | 64 bps | Vanguard Total Stock Market Index Trust | 1 bp | 6300% |

| Plan Investment | Plan Fee[16] | New Core Lineup Transition Option | Lower-Cost Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| Fidelity Fifty (FFTYX) | 83 bps | Vanguard Total Stock Market Index Trust | 1 bp | 8200% |
| Fidelity Floating Rate High Income  (FFRHX) | 69 bps | Vanguard Target Trust Plus | 7 bps | 886% |
| Fidelity Focused High Income (FHIFX) | 83 bps | Wellington High Yield Bond | 60 bps | 38% |
| Fidelity Focused Stock (FTQGX) | 78 bps | Vanguard Total Stock Market Index Trust | 1 bp | 7700% |
| Fidelity Four-in-One Index (FFNOX) | 24 bps | Vanguard Target Trust Plus | 7 bps | 243% |
| Fidelity Freedom K 2005 (FFKVX) | 50 bps | Vanguard Target Trust Plus | 7 bps | 614% |
| Fidelity Freedom K 2010 (FFKCX) | 53 bps | Vanguard Target Trust Plus | 7 bps | 657% |
| Fidelity Freedom K 2015 (FKVFX) | 55 bps | Vanguard Target Trust Plus | 7 bps | 686% |
| Fidelity Freedom K 2020 (FFKDX) | 57 bps | Vanguard Target Trust Plus | 7 bps | 714% |
| Fidelity Freedom K 2025 (FKTWX) | 61 bps | Vanguard Target Trust Plus | 7 bps | 771% |
| Fidelity Freedom K 2030 (FFKEX) | 65 bps | Vanguard Target Trust Plus | 7 bps | 829% |
| Fidelity Freedom K 2035 (FKTHX) | 66 bps | Vanguard Target Trust Plus | 7 bps | 843% |
| Fidelity Freedom K 2040 (FFKFX) | 66 bps | Vanguard Target Trust Plus | 7 bps | 843% |
| Fidelity Freedom K 2045 (FFKGX) | 66 bps | Vanguard Target Trust Plus | 7 bps | 843% |
| Fidelity Freedom K 2050 (FFKHX) | 65 bps | Vanguard Target Trust Plus | 7 bps | 829% |
| Fidelity Freedom K 2055 (FDENX) | 66 bps | Vanguard Target Trust Plus | 7 bps | 843% |
| Fidelity Freedom K Income (FFKAX) | 44 bps | Vanguard Target Trust Plus | 7 bps | 529% |
| Fidelity Fund (K) (FFDKX) | 41 bps | Vanguard Total Stock Market Index Trust | 1 bp | 4000% |

| Plan Investment | Plan Fee[16] | New Core Lineup Transition Option | Lower-Cost Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| Fidelity Global Balanced (FGBLX) | 99 bps | Vanguard Target Trust Plus | 7 bps | 1314% |
| Fidelity Global Bond (FGBFX) | 109 bps | Vanguard Target Trust Plus | 7 bps | 1457% |
| Fidelity Global Commodity Stock (FFGCX) | 111 bps | Vanguard Target Trust Plus | 7 bps | 1486% |
| Fidelity Global Equity Income (FGILX) | 116 bps | Vanguard Target Trust Plus | 7 bps | 1557% |
| Fidelity Global High Income (FGHNX) | 95 bps | Wellington High Yield Bond | 60 bps | 58% |
| Fidelity Global Strategies (FDYSX) | 85 bps | Vanguard Target Trust Plus | 7 bps | 1114% |
| Fidelity GNMA (FGMNX) | 45 bps | Vanguard Target Trust Plus | 7 bps | 543% |
| Fidelity Government Income (FGOVX) | 45 bps | Vanguard Total Bond Market Index (Instl Plus) (VBMPX) | 5 bps | 800% |
| Fidelity Government Money Market (SPAXX) | 42 bps | Vanguard Prime Money Market (Instl) (VMRXX) | 10 bps | 320% |
| Fidelity Growth & Income (K) (FGIKX) | 53 bps | Vanguard Total Stock Market Index Trust | 1 bp | 5200% |
| Fidelity Growth Discovery (K) (FGDKX) | 68 bps | Vanguard Total Stock Market Index Trust | 1 bp | 6700% |
| Fidelity Growth Strategies (K) (FAGKX) | 53 bps | Vanguard Total Stock Market Index Trust | 1 bp | 5200% |
| Fidelity High Income (SPHIX) | 72 bps | Wellington High Yield Bond | 60 bps | 20% |
| Fidelity Independence (K) (FDFKX) | 64 bps | Vanguard Total Stock Market Index Trust | 1 bp | 6300% |
| Fidelity Inflation Protected Bond (FINPX) | 45 bps | Vanguard Inflation Protected Securities (Instl) (VIPIX) | 7 bps | 543% |

| Plan Investment | Plan Fee[16] | New Core Lineup Transition Option | Lower-Cost Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| Fidelity Institutional Money Market (FMPXX) | 21 bps | Vanguard Prime Money Market (Instl) (VMRXX) | 10 bps | 110% |
| Fidelity Intermediate Bond (FTHRX) | 45 bps | Vanguard Total Bond Market Index (Instl Plus) (VBMPX) | 5 bps | 800% |
| Fidelity Intermediate Government Income (FSTGX) | 45 bps | Vanguard Total Bond Market Index (Instl Plus) (VBMPX) | 5 bps | 800% |
| Fidelity International Bond (FINUX) | 106 bps | Vanguard Total Intl Bond Index Fund (VTABX) | 19 bps | 458% |
| Fidelity International Capital Appreciation (FIVFX) | 114 bps | Vanguard Total Intl Stock Index Fund (Instl Plus) (VTPSX) | 10 bps | 1040% |
| Fidelity International Discovery (K) (FIDKX) | 78 bps | Vanguard Total Intl Stock Index Fund (Instl Plus) (VTPSX) | 10 bps | 680% |
| Fidelity International Enhanced Index (FIENX) | 62 bps | Vanguard Total Intl Stock Index Fund (Instl Plus) (VTPSX) | 10 bps | 520% |
| Fidelity International Growth (FIGFX) | 104 bps | Vanguard Total Intl Stock Index Fund (Instl Plus) (VTPSX) | 10 bps | 940% |
| Fidelity International Real Estate (FIREX) | 114 bps | Vanguard REIT Index (Instl) (VGSNX) | 8 bps | 1325% |
| Fidelity International Small Cap (FISMX) | 122 bps | Vanguard Target Trust Plus | 7 bps | 1643% |
| Fidelity International Small Cap Opportunities (FSCOX) | 130 bps | Vanguard Target Trust Plus | 7 bps | 1757% |

| Plan Investment | Plan Fee[16] | New Core Lineup Transition Option | Lower-Cost Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| Fidelity International Value (FIVLX) | 96 bps | Vanguard Total Intl Stock Index Fund (Instl Plus) (VTPSX) | 10 bps | 860% |
| Fidelity Investment Grade Bond (FBNDX) | 45 bps | Vanguard Total Bond Market Index (Instl Plus) (VBMPX) | 5 bps | 800% |
| Fidelity Japan  (FJPNX) | 90 bps | Vanguard Target Trust Plus | 7 bps | 1186% |
| Fidelity Japan Smaller Companies (FJSCX) | 100 bps | Vanguard Target Trust Plus | 7 bps | 1329% |
| Fidelity Large Cap Core Enhanced Index (FLCEX) | 46 bps | Vanguard Total Stock Market Index Trust | 1 bp | 4500% |
| Fidelity Large Cap Growth Enhanced Index (FLGEX) | 45 bps | Vanguard Total Stock Market Index Trust | 1 bp | 4400% |
| Fidelity Large Cap Stock (FLCSX) | 88 bps | Vanguard Total Stock Market Index Trust | 1 bp | 8700% |
| Fidelity Large Cap Value Enhanced Index (FLVEX) | 47 bps | Vanguard Total Stock Market Index Trust | 1 bp | 4600% |
| Fidelity Latin America (FLATX) | 108 bps | Vanguard Target Trust Plus | 7 bps | 1443% |
| Fidelity Leveraged Company Stock (K) (FLCKX) | 67 bps | Vanguard Total Stock Market Index Trust | 1 bp | 6600% |
| Fidelity Low-Priced Stock (K) (FLPKX) | 72 bps | Vanguard Total Stock Market Index Trust | 1 bp | 7100% |
| Fidelity Magellan (K) (FMGKX) | 42 bps | Vanguard Total Stock Market Index Trust | 1 bp | 4100% |
| Fidelity Managed Income Portfolio II - Class 1 | 59 bps | Vanguard Target Trust Plus | 7 bps | 743% |
| Fidelity Mega Cap Stock (FGRTX) | 68 bps | Vanguard Total Stock Market Index Trust | 1 bp | 6700% |

| Plan Investment | Plan Fee[16] | New Core Lineup Transition Option | Lower-Cost Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| Fidelity Mid Cap Enhanced Index (FMEIX) | 62 bps | Vanguard Mid Cap Index (Adm) (VIMAX) | 9 bps | 590% |
| Fidelity Mid Cap Value (FSMVX) | 80 bps | Vanguard Total Stock Market Index Trust | 1 bp | 7900% |
| Fidelity Mid-Cap Stock (K) (FKMCX) | 68 bps | Vanguard Total Stock Market Index Trust | 1 bp | 6700% |
| Fidelity Money Market (SPRXX) | 42 bps | Vanguard Prime Money Market (Instl) (VMRXX) | 10 bps | 320% |
| Fidelity Money Market Trust Retirement Government Money Market Portfolio (FGMXX) | 42 bps | Vanguard Prime Money Market (Instl) (VMRXX) | 10 bps | 320% |
| Fidelity Mortgage Securities (FMSFX) | 45 bps | Vanguard Target Trust Plus | 7 bps | 543% |
| Fidelity NASDAQ Composite Index (FNCMX) | 55 bps | Vanguard Total Stock Market Index Trust | 1 bp | 5400% |
| Fidelity New Markets Income (FNMIX) | 90 bps | Vanguard Target Trust Plus | 7 bps | 1186% |
| Fidelity New Millennium (FMILX) | 84 bps | Vanguard Total Stock Market Index Trust | 1 bp | 8300% |
| Fidelity Nordic (FNORX) | 99 bps | Vanguard Target Trust Plus | 7 bps | 1314% |
| Fidelity OTC (K) (FOCKX) | 65 bps | Vanguard Total Stock Market Index Trust | 1 bp | 6400% |
| Fidelity Overseas (K) (FOSKX) | 88 bps | Vanguard Total Intl Stock Index Fund (Instl Plus) (VTPSX) | 10 bps | 780% |
| Fidelity Pacific Basin (FPBFX) | 118 bps | Vanguard Target Trust Plus | 7 bps | 1586% |
| Fidelity Puritan (K) (FPUKX) | 46 bps | Vanguard Target Trust Plus | 7 bps | 557% |

| Plan Investment | Plan Fee[16] | New Core Lineup Transition Option | Lower-Cost Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| Fidelity Real Estate Income (FRIFX) | 83 bps | Vanguard REIT Index (Instl) (VGSNX) | 8 bps | 938% |
| Fidelity Real Estate Investment Portfolio (FRESX) | 80 bps | Vanguard REIT Index (Instl) (VGSNX) | 8 bps | 900% |
| Fidelity Select Air Transportation (FSAIX) | 87 bps | Vanguard Target Trust Plus | 7 bps | 1143% |
| Fidelity Select Automotive (FSAVX) | 84 bps | Vanguard Target Trust Plus | 7 bps | 1100% |
| Fidelity Select Banking (FSRBX) | 81 bps | Vanguard Target Trust Plus | 7 bps | 1057% |
| Fidelity Select BioTech (FBIOX) | 76 bps | Vanguard Target Trust Plus | 7 bps | 986% |
| Fidelity Select Brokerage & Investment Management (FSLBX) | 79 bps | Vanguard Target Trust Plus | 7 bps | 1029% |
| Fidelity Select Chemicals (FSCHX) | 81 bps | Vanguard Target Trust Plus | 7 bps | 1057% |
| Fidelity Select Communications Equipment (FSDCX) | 92 bps | Vanguard Target Trust Plus | 7 bps | 1214% |
| Fidelity Select Computers (FDCPX) | 82 bps | Vanguard Target Trust Plus | 7 bps | 1071% |
| Fidelity Select Construction and Housing (FSHOX) | 81 bps | Vanguard Target Trust Plus | 7 bps | 1057% |
| Fidelity Select Consumer Discretionary (FSCPX) | 82 bps | Vanguard Target Trust Plus | 7 bps | 1071% |
| Fidelity Select Consumer Finance (FSVLX) | 85 bps | Vanguard Target Trust Plus | 7 bps | 1114% |
| Fidelity Select Consumer Staples (FDFAX) | 79 bps | Vanguard Target Trust Plus | 7 bps | 1029% |
| Fidelity Select Defense & Aerospace (FSDAX) | 81 bps | Vanguard Target Trust Plus | 7 bps | 1057% |
| Fidelity Select Electronics (FSELX) | 82 bps | Vanguard Target Trust Plus | 7 bps | 1071% |
| Fidelity Select Energy (FSENX) | 80 bps | Vanguard Target Trust Plus | 7 bps | 1043% |
| Fidelity Select Energy Services (FSESX) | 80 bps | Vanguard Target Trust Plus | 7 bps | 1043% |

| Plan Investment | Plan Fee[16] | New Core Lineup Transition Option | Lower-Cost Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| Fidelity Select Environment and Alternative Energy (FSLEX) | 97 bps | Vanguard Target Trust Plus | 7 bps | 1286% |
| Fidelity Select Financial Services (FIDSX) | 86 bps | Vanguard Target Trust Plus | 7 bps | 1129% |
| Fidelity Select Gold (FSAGX) | 94 bps | Vanguard Target Trust Plus | 7 bps | 1243% |
| Fidelity Select Health Care (FSPHX) | 77 bps | Vanguard Target Trust Plus | 7 bps | 1000% |
| Fidelity Select Industrial Equipment (FSCGX) | 79 bps | Vanguard Target Trust Plus | 7 bps | 1029% |
| Fidelity Select Industrials (FCYIX) | 81 bps | Vanguard Target Trust Plus | 7 bps | 1057% |
| Fidelity Select Insurance (FSPCX) | 83 bps | Vanguard Target Trust Plus | 7 bps | 1086% |
| Fidelity Select IT Services (FBSOX) | 84 bps | Vanguard Target Trust Plus | 7 bps | 1100% |
| Fidelity Select Leisure (FDLSX) | 82 bps | Vanguard Target Trust Plus | 7 bps | 1071% |
| Fidelity Select Materials (FSDPX) | 82 bps | Vanguard Target Trust Plus | 7 bps | 1071% |
| Fidelity Select Medical Delivery (FSHCX) | 82 bps | Vanguard Target Trust Plus | 7 bps | 1071% |
| Fidelity Select Medical Equipment & Systems (FSMEX) | 80 bps | Vanguard Target Trust Plus | 7 bps | 1043% |
| Fidelity Select Money Market (FSLXX) | 30 bps | Vanguard Prime Money Market (Instl) (VMRXX) | 10 bps | 200% |
| Fidelity Select Multimedia (FBMPX) | 81 bps | Vanguard Target Trust Plus | 7 bps | 1057% |
| Fidelity Select Natural Gas (FSNGX) | 84 bps | Vanguard Target Trust Plus | 7 bps | 1100% |
| Fidelity Select Natural Resources (FNARX) | 84 bps | Vanguard Target Trust Plus | 7 bps | 1100% |
| Fidelity Select Pharmaceutical (FPHAX) | 82 bps | Vanguard Target Trust Plus | 7 bps | 1071% |
| Fidelity Select Retailing (FSRPX) | 83 bps | Vanguard Target Trust Plus | 7 bps | 1086% |

| Plan Investment | Plan Fee[16] | New Core Lineup Transition Option | Lower-Cost Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| Fidelity Select Software & Computers (FSCSX) | 79 bps | Vanguard Target Trust Plus | 7 bps | 1029% |
| Fidelity Select Technology (FSPTX) | 80 bps | Vanguard Target Trust Plus | 7 bps | 1043% |
| Fidelity Select Telecommunications (FSTCX) | 85 bps | Vanguard Target Trust Plus | 7 bps | 1114% |
| Fidelity Select Transportation (FSRFX) | 85 bps | Vanguard Target Trust Plus | 7 bps | 1114% |
| Fidelity Select Utilities (FSUTX) | 82 bps | Vanguard Target Trust Plus | 7 bps | 1071% |
| Fidelity Select Wireless (FWRLX) | 88 bps | Vanguard Target Trust Plus | 7 bps | 1157% |
| Fidelity Short Term Bond (FSHBX) | 45 bps | Vanguard Short-Term Bond Index (Instl) (VBITX) | 7 bps | 543% |
| Fidelity Small Cap Discovery (FSCRX) | 101 bps | Vanguard Short-Term Bond Index (Instl) (VBITX) | 8 bps | 1163% |
| Fidelity Small Cap Enhanced Index (FCPEX) | 73 bps | Vanguard Short-Term Bond Index (Instl) (VBITX) | 8 bps | 813% |
| Fidelity Small Cap Growth (FCPGX) | 91 bps | Vanguard Short-Term Bond Index (Instl) (VBITX) | 8 bps | 1038% |
| Fidelity Small Cap Stock (FSLCX) | 68 bps | Vanguard Short-Term Bond Index (Instl) (VBITX) | 8 bps | 750% |
| Fidelity Small Cap Value (FCPVX) | 109 bps | Vanguard Short-Term Bond Index (Instl) (VBITX) | 8 bps | 1263% |
| Fidelity Spartan 500 Index (Instl) (FXSIX) | 5 bps | Vanguard Total Stock Market Index Trust | 1 bp | 400% |
| Fidelity Spartan Emerging Markets Index (Adv) (FPMAX) | 35 bps | Vanguard Emerging Markets Index (Instl) (VEMIX) | 12 bps | 192% |
| Fidelity Spartan Extended Market Index (Adv) (FSEVX) | 7 bps | Vanguard Total Stock Market Index Trust | 1 bp | 600% |

| Plan Investment | Plan Fee[16] | New Core Lineup Transition Option | Lower-Cost Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| Fidelity Spartan Global ex-US Index (Adv) (FSGDX) | 28 bps | Vanguard Total Intl Stock Index Fund (Instl Plus) (VTPSX) | 10 bps | 180% |
| Fidelity Spartan Inflation-Protected Index (Adv) (FSIYX) | 10 bps | Vanguard Inflation Protected Securities (Instl) (VIPIX) | 7 bps | 43% |
| Fidelity Spartan Intermediate Treasury Index (Adv) (FIBAX) | 10 bps | Vanguard Target Trust Plus | 7 bps | 43% |
| Fidelity Spartan International Index (Adv) (FSIVX) | 17 bps | Vanguard Total Intl Stock Index Fund (Instl Plus) (VTPSX) | 10 bps | 70% |
| Fidelity Spartan Long Term Treasury Bond Index (Adv) (FLBAX) | 10 bps | Vanguard Target Trust Plus | 7 bps | 43% |
| Fidelity Spartan Mid Cap Index (Adv) (FSCKX) | 21 bps | Vanguard Mid Cap Index (Adm) (VIMAX) | 9 bps | 133% |
| Fidelity Spartan Real Estate Index (Adv) (FSRVX) | 19 bps | Vanguard REIT Index (Instl) (VGSNX) | 8 bps | 138% |
| Fidelity Spartan Short-Term Treasury Bond Index Fund (Adv) (FSBAX) | 10 bps | Vanguard Short-Term Bond Index (Instl) (VBITX) | 7 bps | 43% |
| Fidelity Spartan Small Cap Index (Adv) (FSSVX) | 34 bps | Vanguard Short-Term Bond Index (Instl) (VBITX) | 8 bps | 325% |
| Fidelity Spartan Total Market Index (Adv) (FSTVX) | 7 bps | Vanguard Total Stock Market Index Trust | 1 bp | 600% |
| Fidelity Spartan US Bond Index (Instl) (FXSTX) | 7 bps | Vanguard Total Bond Market Index (Instl Plus) (VBMPX) | 5 bps | 40% |

| Plan Investment | Plan Fee[16] | New Core Lineup Transition Option | Lower-Cost Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| Fidelity Stock  Selector All Cap (K) (FSSKX) | 58 bps | Vanguard Total Stock Market Index Trust | 1 bp | 5700% |
| Fidelity Stock  Selector Large Cap Value (FSLVX) | 72 bps | Vanguard Total Stock Market Index Trust | 1 bp | 7100% |
| Fidelity Stock  Selector Mid Cap (FSSMX) | 81 bps | Vanguard Total Stock Market Index Trust | 1 bp | 8000% |
| Fidelity Stock  Selector Small Cap (FDSCX) | 73 bps | Vanguard Short-Term Bond Index (Instl) (VBITX) | 8 bps | 813% |
| Fidelity Strategic Dividend & Income (FSDIX) | 74 bps | Vanguard Total Stock Market Index Trust | 1 bp | 7300% |
| Fidelity Strategic Income (FSICX) | 69 bps | Wellington High Yield Bond | 60 bps | 15% |
| Fidelity Strategic Real Return (FSRRX) | 77 bps | Vanguard Inflation Protected Securities (Instl) (VIPIX) | 7 bps | 1000% |
| Fidelity Telecom & Utilities (FIUIX) | 76 bps | Vanguard Target Trust Plus | 7 bps | 986% |
| Fidelity Total Bond (FTBFX) | 45 bps | Vanguard Total Bond Market Index (Instl Plus) (VBMPX) | 5 bps | 800% |
| Fidelity Total Emerging Markets (FTEMX) | 173 bps | Vanguard Emerging Markets Index (Instl) (VEMIX) | 12 bps | 1342% |
| Fidelity Total International Equity (FTIEX) | 104 bps | Vanguard Total Intl Stock Index Fund (Instl Plus) (VTPSX) | 10 bps | 940% |
| Fidelity Treasury Only Money Market (FDLXX) | 42 bps | Vanguard Prime Money Market (Instl) (VMRXX) | 10 bps | 320% |

| Plan Investment | Plan Fee[16] | New Core Lineup Transition Option | Lower-Cost Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| Fidelity Trend (FTRNX) | 75 bps | Vanguard Total Stock Market Index Trust | 1 bp | 7400% |
| Fidelity U.S. Equity Index Commingled Pool (Class 1) | 4 bps | Vanguard Total Stock Market Index Trust | 1 bp | 300% |
| Fidelity US Government Reserves (FGRXX) | 32 bps | Vanguard Prime Money Market (Instl) (VMRXX) | 10 bps | 220% |
| Fidelity Value (K) (FVLKX) | 62 bps | Vanguard Total Stock Market Index Trust | 1 bp | 6100% |
| Fidelity Value Discovery (K) (FVDKX) | 66 bps | Vanguard Total Stock Market Index Trust | 1 bp | 6500% |
| Fidelity Value Strategies (K) (FVSKX) | 53 bps | Vanguard Total Stock Market Index Trust | 1 bp | 5200% |
| Fidelity Worldwide (FWWFX) | 96 bps | Vanguard Target Trust Plus | 7 bps | 1271% |
| FPA Crescent Fund (FPACX) | 123 bps | Vanguard Target Trust Plus | 7 bps | 1657% |
| Franklin Mutual Global Discovery Fund (A) (TEDIX) | 128 bps | Vanguard Target Trust Plus | 7 bps | 1729% |
| Franklin Mutual Shares Fund (A) (TESIX) | 109 bps | Vanguard Total Stock Market Index Trust | 1 bp | 10800% |
| Franklin Small Mid Cap Growth (A) (FRSGX) | 96 bps | Vanguard Mid Cap Index (Adm) (VIMAX) | 9 bps | 967% |
| Invesco Charter Fund (A) (CHTRX) | 109 bps | Vanguard Total Stock Market Index Trust | 1 bp | 10800% |
| Invesco Diversified Dividend Fund (Inv) (LCEIX) | 78 bps | Vanguard Total Stock Market Index Trust | 1 bp | 7700% |
| Invesco Global Small & Mid Cap Growth Fund (A) (AGAAX) | 137 bps | Vanguard Target Trust Plus | 7 bps | 1857% |

| Plan Investment | Plan Fee[16] | New Core Lineup Transition Option | Lower-Cost Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| Invesco Mid Cap Core Equity Fund (A) (GTAGX) | 122 bps | Vanguard Total Stock Market Index Trust | 1 bp | 12100% |
| Invesco Mid Cap Growth Fund (A) (VGRAX) | 121 bps | Vanguard Total Stock Market Index Trust | 1 bp | 12000% |
| Invesco Small Cap Growth Fund (Inv) (GTSIX) | 121 bps | Vanguard Short-Term Bond Index (Instl) (VBITX) | 8 bps | 1413% |
| Invesco Van Kampen American Franchise Fund (A) (VAFAX) | 108 bps | Vanguard Total Stock Market Index Trust | 1 bp | 10700% |
| Invesco Van Kampen Comstock Fund (A) (ACSTX) | 83 bps | Vanguard Total Stock Market Index Trust | 1 bp | 8200% |
| Invesco Van Kampen Equity and Income Fund (A) (ACEIX) | 81 bps | Vanguard Target Trust Plus | 7 bps | 1057% |
| Invesco Van Kampen Growth and Income Fund (A) (ACGIX) | 85 bps | Vanguard Total Stock Market Index Trust | 1 bp | 8400% |
| Invesco Van Kampen Value Opportunities Fund (A) (VVOAX) | 125 bps | Vanguard Total Stock Market Index Trust | 1 bp | 12400% |
| Janus Balanced Fund (S) (JABRX) | 108 bps | Vanguard Target Trust Plus | 7 bps | 1443% |
| Janus Enterprise Fund (S) (JGRTX) | 117 bps | Vanguard Total Stock Market Index Trust | 1 bp | 11600% |
| Janus Flexible Bond Fund (T) (JAFIX) | 70 bps | Vanguard Total Bond Market Index (Instl Plus) (VBMPX) | 5 bps | 1300% |
| Janus Forty Fund (S) (JARTX) | 102 bps | Vanguard Total Stock Market Index Trust | 1 bp | 10100% |
| Janus Global Research Fund (S) (JWGRX) | 127 bps | Vanguard Target Trust Plus | 7 bps | 1714% |

| Plan Investment | Plan Fee[16] | New Core Lineup Transition Option | Lower-Cost Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| Janus Overseas Fund (S) (JIGRX) | 93 bps | Vanguard Total Intl Stock Index Fund (Instl Plus) (VTPSX) | 10 bps | 830% |
| John Hancock Small Company (A) (JCSAX) | 146 bps | Vanguard Short-Term Bond Index (Instl) (VBITX) | 8 bps | 1725% |
| Loomis Sayles Small Capital Value Fund (Retail) (LSCRX) | 134 bps | Vanguard Short-Term Bond Index (Instl) (VBITX) | 8 bps | 1575% |
| Lord Abbett Mid Cap Value Fund (A) (LAVLX) | 123 bps | Vanguard Total Stock Market Index Trust | 1 bp | 12200% |
| Morgan Stanley Institutional Core Plus Fixed Income Portfolio (P) (MFXAX) | 111 bps | Vanguard Total Bond Market Index (Instl Plus) (VBMPX) | 5 bps | 2120% |
| Morgan Stanley Institutional Emerging Markets Fund (P) (MMKBX) | 178 bps | Vanguard Emerging Markets Index (Instl) (VEMIX) | 12 bps | 1383% |
| Morgan Stanley Institutional Fund, Inc. Active International Allocation Portfolio (P) (MSIBX) | 125 bps | Vanguard Total Intl Stock Index Fund (Instl Plus) (VTPSX) | 10 bps | 1150% |
| Morgan Stanley Institutional Fund, Inc. International Equity Portfolio (P) (MIQBX) | 125 bps | Vanguard Total Intl Stock Index Fund (Instl Plus) (VTPSX) | 10 bps | 1150% |
| Morgan Stanley Institutional Global Strategist Portfolio (P) (MBAAX) | 114 bps | Vanguard Target Trust Plus | 7 bps | 1529% |
| Morgan Stanley Institutional Growth (A) (MSEGX) | 96 bps | Vanguard Total Stock Market Index Trust | 1 bp | 9500% |
| Morgan Stanley Institutional Mid Cap Growth (P) (MACGX) | 100 bps | Vanguard Total Stock Market Index Trust | 1 bp | 9900% |

| Plan Investment | Plan Fee[16] | New Core Lineup Transition Option | Lower-Cost Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| Morgan Stanley Institutional Small Company Growth Fund (P) (MSSMX) | 135 bps | Vanguard Short-Term Bond Index (Instl) (VBITX) | 8 bps | 1588% |
| Neuberger Berman Core Bond Fund (Inv) (NCRIX) | 115 bps | Vanguard Total Bond Market Index (Instl Plus) (VBMPX) | 5 bps | 2200% |
| Neuberger Berman Focus Fund (Trust) (NBFCX) | 111 bps | Vanguard Total Stock Market Index Trust | 1 bp | 11000% |
| Neuberger Berman Genesis Fund (Trust) (NBGEX) | 110 bps | Vanguard Short-Term Bond Index (Instl) (VBITX) | 8 bps | 1275% |
| Neuberger Berman Guardian Fund (Trust) (NBGTX) | 106 bps | Vanguard FTSE Social Index (Instl) (VFTNX) | 16 bps | 563% |
| Neuberger Berman Mid Cap Growth Fund (Trust) (NBMTX) | 101 bps | Vanguard Total Stock Market Index Trust | 1 bp | 10000% |
| Neuberger Berman Partners Fund (Trust) (NBPTX) | 108 bps | Vanguard Total Stock Market Index Trust | 1 bp | 10700% |
| Neuberger Berman Socially Responsive (Trust) (NBSTX) | 103 bps | Vanguard FTSE Social Index (Instl) (VFTNX) | 16 bps | 544% |
| Oakmark Equity and Income Fund (I) (OAKBX) | 74 bps | Vanguard Target Trust Plus | 7 bps | 957% |
| Oakmark Fund (I) (OAKMX) | 87 bps | Vanguard Total Stock Market Index Trust | 1 bp | 8600% |
| Oakmark Select Fund (I) (OAKLX) | 95 bps | Vanguard Total Stock Market Index Trust | 1 bp | 9400% |
| Perkins Mid Cap Value Fund (T) (JMCVX) | 74 bps | Vanguard Total Stock Market Index Trust | 1 bp | 7300% |
| PIMCO Global Bond (Unhedged) Fund (Admin) (PADMX) | 81 bps | Vanguard Target Trust Plus | 7 bps | 1057% |

02030733.DOCX; 1

| Plan Investment | Plan Fee[16] | New Core Lineup Transition Option | Lower-Cost Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| PIMCO High Yield Fund (Admin) (PHYAX) | 80 bps | Wellington High Yield Bond | 60 bps | 33% |
| PIMCO Long Term US Government (Adm) (PLGBX) | 74 bps | Vanguard Target Trust Plus | 7 bps | 957% |
| PIMCO Low Duration (Adm) (PLDAX) | 71 bps | Vanguard Short-Term Bond Index (Instl) (VBITX) | 7 bps | 914% |
| PIMCO Total Return (Adm) (PTRAX) | 71 bps | Vanguard Total Bond Market Index (Instl Plus) (VBMPX) | 5 bps | 1320% |
| Rice Hall James Micro Cap Portfolio (Instl) (RHJSX) | 154 bps | Vanguard Short-Term Bond Index (Instl) (VBITX) | 8 bps | 1825% |
| Royce Low-Priced Stock Fund (Service) (RYLPX) | 151 bps | Vanguard Total Stock Market Index Trust | 1 bp | 15000% |
| RS Small Cap Growth Fund Class (A) (RSEGX) | 141 bps | Vanguard Short-Term Bond Index (Instl) (VBITX) | 8 bps | 1663% |
| Schroder Emerging Market Equity Fund (Inv) (SEMNX) | 140 bps | Vanguard Emerging Markets Index (Instl) (VEMIX) | 12 bps | 1067% |
| Strategic Advisers Core Multi-Manager (FLAUX) | 122 bps | Vanguard Total Stock Market Index Trust | 1 bp | 12100% |
| Strategic Advisers Emerging Markets Fund of Funds (FLILX) | 238 bps | Vanguard Emerging Markets Index (Instl) (VEMIX) | 12 bps | 1883% |
| Strategic Advisers Growth Multi-Manager (FMELX) | 84 bps | Vanguard Total Stock Market Index Trust | 1 bp | 8300% |
| Strategic Advisers Income Opportunity Fund of Funds (FSADX) | 502 bps | Wellington High Yield Bond | 60 bps | 737% |
| Strategic Advisers Small Mid Cap Multi- Manager (FNAPX) | 130 bps | Vanguard Short-Term Bond Index (Instl) (VBITX) | 8 bps | 1525% |

| Plan Investment | Plan Fee[16] | New Core Lineup Transition Option | Lower-Cost Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| Strategic Advisers Value Multi-Manager (FKMOX) | 132 bps | Vanguard Total Stock Market Index Trust | 1 bp | 13100% |
| TCW Select Equities Fund (N) (TGCNX) | 113 bps | Vanguard Total Stock Market Index Trust | 1 bp | 11200% |
| TCW Small Cap Growth Fund (N) (TGSNX) | 146 bps | Vanguard Short-Term Bond Index (Instl) (VBITX) | 8 bps | 1725% |
| Templeton Developing Markets (A) (TEDMX) | 171 bps | Vanguard Emerging Markets Index (Instl) (VEMIX) | 12 bps | 1325% |
| Templeton Foreign Fund (A) (TEMFX) | 116 bps | Vanguard Total Intl Stock Index Fund (Instl Plus) (VTPSX) | 10 bps | 1060% |
| Templeton Foreign Smaller Companies Fund (A) (FINEX) | 167 bps | Vanguard Target Trust Plus | 7 bps | 2286% |
| Templeton Global Bond Fund (A) (TPINX) | 91 bps | Vanguard Target Trust Plus | 7 bps | 1200% |
| Templeton Growth Fund, Inc. (A) (TEPLX) | 103 bps | Vanguard Total Intl Stock Index Fund (Instl Plus) (VTPSX) | 10 bps | 930% |
| Templeton World Fund (A) (TEMWX) | 105 bps | Vanguard Total Intl Stock Index Fund (Instl Plus) (VTPSX) | 10 bps | 950% |
| Touchstone Focused Fund (Y) (TFFYK) | 103 bps | Vanguard Total Stock Market Index Trust | 1 bp | 10200% |
| Touchstone International Small Cap Fund (Y) (TNSYX) | 146 bps | Vanguard Target Trust Plus | 7 bps | 1986% |
| USAA Cornerstone Moderately Aggressive Fund (USCRX) | 126 bps | Vanguard Target Trust Plus | 7 bps | 1700% |

| Plan Investment | Plan Fee[16] | New Core Lineup Transition Option | Lower-Cost Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| USAA Emerging Markets Fund (USEMX) | 152 bps | Vanguard Emerging Markets Index (Instl) (VEMIX) | 12 bps | 1167% |
| USAA GNMA Trust Fund (USGNX) | 47 bps | Vanguard Target Trust Plus | 7 bps | 571% |
| USAA Growth Fund (USAAX) | 112 bps | Vanguard Total Stock Market Index Trust | 1 bp | 11100% |
| USAA Income Fund (USAIX) | 59 bps | Vanguard Total Bond Market Index (Instl Plus) (VBMPX) | 5 bps | 1080% |
| USAA Income Stock Fund (USISX) | 80 bps | Vanguard Total Stock Market Index Trust | 1 bp | 7900% |
| USAA International Fund (USIFX) | 116 bps | Vanguard Total Intl Stock Index Fund (Instl Plus) (VTPSX) | 10 bps | 1060% |
| Vanguard Growth Index (Adm) (VIGAX) | 9 bps | Vanguard Growth Index (Instl) (VIGIX) | 8 bps | 13% |
| Vanguard Institutional Index (Instl) (VINIX) | 4 bps | Vanguard Total Stock Market Index Trust | 1 bp | 300% |
| Vanguard Target Retirement 2010 Trust II | 11 bps | Vanguard Target Trust Plus | 7 bps | 57% |
| Vanguard Target Retirement 2015 Trust II | 11 bps | Vanguard Target Trust Plus | 7 bps | 57% |
| Vanguard Target Retirement 2020 Trust II | 11 bps | Vanguard Target Trust Plus | 7 bps | 57% |
| Vanguard Target Retirement 2025 Trust II | 11 bps | Vanguard Target Trust Plus | 7 bps | 57% |
| Vanguard Target Retirement 2030 Trust II | 11 bps | Vanguard Target Trust Plus | 7 bps | 57% |
| Vanguard Target Retirement 2035 Trust II | 11 bps | Vanguard Target Trust Plus | 7 bps | 57% |
| Vanguard Target Retirement 2040 Trust II | 11 bps | Vanguard Target Trust Plus | 7 bps | 57% |

| Plan Investment | Plan Fee[16] | New Core Lineup Transition Option | Lower-Cost Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| Vanguard Target Retirement 2045 Trust II | 11 bps | Vanguard Target Trust Plus | 7 bps | 57% |
| Vanguard Target Retirement 2050 Trust II | 11 bps | Vanguard Target Trust Plus | 7 bps | 57% |
| Vanguard Target Retirement Income Trust II | 11 bps | Vanguard Target Trust Plus | 7 bps | 57% |
| Vanguard Total Stock Market Index (Instl) (VITSX) | 4 bps | Vanguard Total Stock Market Index Trust | 1 bp | 300% |
| Vanguard Total Stock Market Index Trust | 2 bps | Vanguard Total Stock Market Index Trust | 1 bp | 100% |
| Vanguard Value Index (Adm) (VVIAX) | 9 bps | Vanguard Value Index Instl | 8 bps | 13% |
| Vanguard Wellington (Adm) (VWENX) | 18 bps | Vanguard Target Trust Plus | 7 bps | 157% |
| Vanguard Windsor  II (Adm) (VWNAX) | 28 bps | Vanguard Total Stock Market Index Trust | 1 bp | 2700% |
| Wells Fargo Advantage Common Stock Fund (Inv) (STCSX) | 136 bps | Vanguard Total Stock Market Index Trust | 1 bp | 13500% |
| Wells Fargo Advantage Discovery Fund (Inv) (STDIX) | 131 bps | Vanguard Total Stock Market Index Trust | 1 bp | 13000% |
| Wells Fargo Advantage Government Securities Fund (Inv) (STVSX) | 92 bps | Vanguard Total Bond Market Index (Instl Plus) (VBMPX) | 5 bps | 1740% |
| Wells Fargo Advantage Growth Fund (Inv) (SGROX) | 124 bps | Vanguard Total Stock Market Index Trust | 1 bp | 12300% |
| Wells Fargo Advantage Large Cap Growth Fund (Inv) (STRFX) | 128 bps | Vanguard Total Stock Market Index Trust | 1 bp | 12700% |
| Wells Fargo Advantage Opportunity Fund (Inv) (SOPFX) | 133 bps | Vanguard Total Stock Market Index Trust | 1 bp | 13200% |

| Plan Investment | Plan Fee[16] | New Core Lineup Transition Option | Lower-Cost Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| Wells Fargo Advantage Short-Term Bond Fund (Inv) (SSTBX) | 84 bps | Vanguard Short-Term Bond Index (Instl) (VBITX) | 7 bps | 1100% |
| Wells Fargo Advantage Small Cap Value Fund (Inv) (SSMVX) | 141 bps | Vanguard Short-Term Bond Index (Instl) (VBITX) | 8 bps | 1663% |
| Wells Fargo Advantage Ultra Short Income Fund (Inv) (STADX) | 81 bps | Vanguard Short-Term Bond Index (Instl) (VBITX) | 7 bps | 1057% |
| Western Asset Core Bond Fund (FI) (WAPIX) | 83 bps | Vanguard Total Bond Market Index (Instl Plus) (VBMPX) | 5 bps | 1560% |

104.    Based on the conduct of prudent fiduciaries of large defined contribution plans, Defendants should have conducted a review of the Plan's investment structure many years before 2015 and eliminated duplicative and unnecessary investment offerings, instead of placing and retaining the vast number of funds in the Plan and selecting Fidelity funds for most of them. A prudent fiduciary would have periodically done so on a regular basis long before July 2015, and before 2010. Had Defendants conducted such a review and consolidated the Plan's investment options into those provided in the revised investment lineup, Plan participants would have saved over *$8 million* in fees in 2014 alone, and many more millions since 2010.

## B.    The excessive fees of the Plan's options were not justified by superior investment performance.

105.    Apart from the unreasonable fees charged to Plan participants as a result of Defendants' failure to consolidate the Plan's investment options, Plan

participants incurred significant performance losses in several major asset classes due to Defendants including duplicative or otherwise inappropriate investment vehicles in this jumbo 401(k) plan. For instance, Defendants retained approximately 24–26 small cap equity options, including 7 Fidelity funds, approximately 32–33 mid cap equity options, including 11 Fidelity funds, and 75–78 large cap equity options, including 31 Fidelity options. Had Defendants conducted a review of these Plan investment options as of 2010, removed duplicative options and mapped their assets to the lower-cost alternative later selected by Defendants after they consolidated the Plan's investment lineup in July 2015, Plan participants would have avoided over $20 million in performance losses in these funds. *See supra* ¶103. Other asset classes also underperformed compared to prudent lower-cost alternatives that were available to the Plan.

106.   In addition, Defendants retained approximately 41 *Fidelity* sector (or "select") funds and 10 *Fidelity* international specialty funds until July 2015 when Defendants removed these options and mapped their assets to the dramatically lower-cost Vanguard target date funds. *See supra* ¶103. Fidelity select or sector funds focus on one particular segment of the economy and invest in securities issued by companies concentrated in that segment. For example, these sector funds included: the Fidelity Select Gold Fund, the Fidelity Select Energy Fund, the Fidelity Select Energy Services Fund, the Fidelity Select Natural Gas Fund, and the Fidelity Select Natural Resources Fund, among others. The Fidelity international specialty funds refer to investments that invest in companies

concentrated in a particular region or country located throughout the world. For example, these international specialty funds included: the Fidelity Latin American Fund, the Fidelity Canada Fund, the Fidelity China Region Fund, the Fidelity Emerging Asia Fund, the Fidelity Japan Fund, and the Fidelity Europe Fund, among others. Defined contribution plan fiduciaries must "initially determine, and continue to monitor, the prudence of *each* investment option available to plan participants," *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 423 (4th Cir. 2007) (emphasis original), and must give "appropriate consideration" to "the role the investment or investment course of action plays . . . in the plan's investment portfolio," 29 C.F.R. §§ 2550.404a-1(b)(i)-(ii). The only apparent role of these options in the Plan's investment portfolio was to allow Fidelity to seed its most obscure funds with MIT employees' retirement savings. Had Defendants conducted a review of these options as of 2010, determined that they were inappropriate plan investment vehicles for this jumbo 401(k) plan, and subsequently replaced them with the lower-cost Vanguard target date funds, Plan participants would have avoided over $40 million in performance losses.

107.    Even with the new 37-fund lineup implemented in July 2015, Defendants still have an ongoing duty to monitor those options and remove any imprudent ones. *Tibble*, 135 S. Ct. at 1828–29.

108.    Defendants' failure to pool the assets invested in duplicative investment options in the same investment style into a single investment option and to eliminate unnecessary and imprudent investment options, as set forth in

¶96, caused Plan participants to pay in excess of $40 million of their retirement savings in unreasonable investment expenses, and to suffer in excess of $60 million in performance losses.[17] As part of this breach, Defendants drove revenue from participants' retirement assets to Fidelity and the Johnson family, while receiving donations from the Johnson family and Fidelity.

### C.    Defendants have admitted that the prior Plan structure caused unreasonable fees to be charged to the Plan.

109.    Defendants expressly recognized that providing *hundreds* of investment options caused the Plan to pay unreasonable investment management fees, in violation of their fiduciary obligations owed to Plan participants. Defendants have also admitted that this inefficient structure deprived the Plan of its bargaining power associated with consolidating assets into a core set of investment options, and caused participant confusion.

110.    When describing the reasons for the 2015 Plan changes, Defendants stated that the changes served to accomplish three main objectives:

- Position MIT for increasingly demanding legal and regulatory standards applicable to 401(k) plans.
- Create opportunities for lower investment costs and higher overall value to participants by consolidating assets into fewer funds. **With assets dispersed as they are today, it is not possible to take full advantage of participants' collective purchasing power.**
- Respond to feedback from faculty and staff that the **vast number of choices offered in the current line-up is confusing**. MIT's goal is to offer enough choice to accommodate our diverse community while making it easier for participants to choose cost-effective options that fit their personal goals, financial profile and risk tolerance.

---

[17] Plan losses have been brought forward to the present value using the investment returns of the S&P 500 index to compensate participants who have not been reimbursed for their losses. This is because the excessive fees participants paid would have remained in Plan investments growing with the market.

…

WHY THE CHANGE?
- **Position MIT to satisfy evolving legal standards**[18]
- **Reduce overall investment costs and increase value for participants**
- **Make investment choices for participants clearer and simpler**[19]

111.    Defendants also concluded that the revised investment lineup allowed the Plan to "[l]everage MIT's institutional purchasing power to offer both passively and actively managed options **at the best possible cost for participants**", and in some cases, provide funds "**in a better share class with lower fees.**"[20]

112.    Defendants reiterated these principles during an "Administrative & Fiscal Officers Meeting." The "[r]ationale for a streamlined line-up" was described as follows:

**Fund Monitoring**
More intensive review is **consistent with emerging regulatory and judicial standards**

**Investment Costs**
**Consolidation of assets into fewer funds can lead to lower investment costs**

**Participant Experience**
A simplified line-up can facilitate **better decision-making**[21]

---

[18] An ERISA fiduciary's duty, which is the "highest known to the law," did not only recently come into existence. *Bierwirth,* 680 F.2d at 272 n.8. Defendants were always held to that standard.

[19] MIT 2015 401(k) Investment Transition Guide, at 3 (emphasis added).

[20] *Id.* at 4 and 9 (emphasis added).

[21] MIT Administrative & Fiscal Officers Meeting Presentation, at 8 (Nov. 19, 2014), available at https://adminconnect.mit.edu/sites/default/files/documents/401(k).pdf.

113.     Again, Defendants noted that consolidation of the Plan's investment structure "[p]rovide[d] participants with **access to institutional funds** with lower costs than those available to the general public" and "**lower-cost funds.**" [22]

114.     For the first time, apparently since the Plan's inception, Defendants set as a standard that they would select actively managed funds based on specific quantitative and qualitative factors used by prudent investment managers:

— Fees
— Fund size and size of fund management firm
— Consistency and length of tenure of fund managers
— Use of a strong, detailed, investment selection process
— Nature of the fund manager's investment selection process (e.g., fundamental vs. quantitative analysis)
— History of adhering to the investment selection process
— Past consistency in fund performance[23]

115.     Passively managed funds would also be "evaluated based on fees and success in tracking benchmark indices." [24]

116.     Had Defendants conducted a prudent and loyal analysis of the Plan's investment options when they selected them effective April 1999 and periodically thereafter, including from 2010 forward, Plan participants would have avoided paying millions of dollars in unreasonable investment fees, many of them to Fidelity.

## IV.     Defendants failed to prudently consider or offer dramatically lower-cost investments that were available to the Plan.

117.     Jumbo retirement plans with billions of dollars to invest have massive bargaining power to negotiate low fees for investment management services. There

---

[22] *Id.* at 11 (emphasis in original).
[23] *Id.* at 13.
[24] *Id.*

are a wide range of low-cost institutional options available to these plans, including institutional share classes of mutual funds, which are identical in every respect to higher cost share classes except for fees; as well as non-mutual fund alternatives, such as collective trusts and separately managed accounts. Holders of large pools of assets know that these investment vehicles are readily available to them and can be obtained for the same investment style and with the same portfolio managers that manage retail mutual funds, but are much less expensive. Because the investment management services available through the lower cost options are either completely or nearly identical to those offered by retail funds, prudent fiduciaries will not pay more for the same service—thereby causing plan losses through wholly unnecessary fees—unless there is some extremely compelling reason to do so.

118.   As a prominent legal counsel to defined contribution fiduciaries has explained:

> The fiduciaries also must consider the size and purchasing power of their plan and select the share classes (or alternative investments) that a fiduciary who is knowledgeable about such matters would select under the circumstances. In other words, the "prevailing circumstances"—such as the size of the plan—are a part of a prudent decisionmaking process. The failure to understand the concepts and to know about the alternatives could be a costly fiduciary breach.

Fred Reish, *Class–ifying Mutual Funds*, PLANSPONSOR (Jan. 2011).[25]

119.   Here, Defendants caused the Plan to pay unnecessary and excessive fees by including hundreds of higher-cost share class options while failing to consider or use identical lower-cost share classes of the same funds, as well as non-

---

[25] Available at http://www.plansponsor.com/MagazineArticle.aspx?id=6442476537.

mutual fund collective trusts and separate accounts. In particular, Defendants'
breach in failing to avail the Plan of the fee savings through low-cost collective
trusts is made clear based on Defendants' own actions. Defendants actually selected
collective trusts for some investment options, but failed to do so for others. Each
mutual fund in the Plan charged fees in excess of the rates that Defendants could
have obtained for the Plan by using these comparable products.

### A. Excessive fees compared to lower-cost share classes of the Plan's identical mutual fund options.

120.   Jumbo investors like the Plan can obtain share classes with far lower
costs than retail mutual fund shares. The various share classes are identical in all
respects except for fees. They are managed by the same portfolio manager and
invest in the same portfolio of securities. The difference in fees between the share
classes reduces the returns received by investors in the higher cost shares. Thus, for
any given fund, a prudent investor will select the lowest-cost share class available,
because doing so saves money and results in a superior return.

121.   Institutional share classes sometimes have a minimum investment
threshold to qualify for the institutional rate. However,

> For large 401(k) plans with over a billion dollars in total assets…mutual
> funds will often waive an investment minimum for institutional share
> classes. It is also common for investment advisors representing large
> 401(k) plans to call mutual funds and request waivers of the investment
> minimums so as to secure the institutional shares.

*Tibble v. Edison Int'l*, No. 07-5359, 2010 U.S. Dist. LEXIS 69119, at *27–28 (C.D.
Cal. July 8, 2010), *affirmed* 729 F.3d 1110 (9th Cir. 2011).

122.    Indeed, the investment management company Vanguard expressly states in its SEC filings that it "reserves the right to establish higher or lower minimum amounts for certain investors," including when the "plan sponsor's aggregate assets within the Vanguard Funds will likely generate substantial economies in the servicing of their accounts."[26]

123.    Accordingly, Defendant knew or should have known that investment providers would have allowed the Plan to provide the lower-cost share classes to participants.

124.    Despite the availability of lower-cost share classes, Defendants inexplicably saddled the Plan with unnecessary fees by using higher-cost share classes. As to the Fidelity funds alone, a number of funds that were identical in every way except for price were available in significantly lower-priced share classes, yet were not selected for years.

125.    The following table sets forth each higher-cost mutual fund share class that was included in the Plan during the proposed class period for which a significantly lower-cost, but otherwise identical, share class of the same mutual fund was available. The expense ratio identified for the Plan investment option and the lower-cost share class alternative are based on the earliest date during the proposed class period that the higher-cost fund was included in the Plan:

---

[26] See Vanguard Funds Multiple Class Plan, available at https://www.sec.gov/Archives/edgar/data/1409957/000093247113007109/multipleclassplanv anguardfun.pdf.

| Plan Mutual Fund | Plan Fee | Identical Lower-Cost Mutual Fund | Identical Lower-Cost Mutual Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| Aberdeen US Equity (A) (GXXAX) | 141 bps | Aberdeen US Equity (Instl) (GGLIX) | 119 bps | 18.49% |
| Alger Mid Cap Growth Institutional (I) (ALMRX) | 112 bps | Alger Mid Cap Growth Institutional (Instl) (AGCIX) | 95 bps | 17.89% |
| AllianzGI NFJ Small-Cap Value (Adm) (PVADX) | 105 bps | AllianzGI NFJ Small-Cap Value (Instl) (PSVIX) | 80 bps | 31.25% |
| AllianzGI NFJ Small-Cap Value (Adm) (PVADX) | 102 bps | AllianzGI NFJ Small-Cap Value (R6) (ANFVX) | 72 bps | 41.67% |
| AllianzGI NFJ Small-Cap Value (Instl) (PSVIX) | 77 bps | AllianzGI NFJ Small-Cap Value (R6) (ANFVX) | 72 bps | 6.94% |
| American Beacon Balanced (Inv) (AABPX) | 93 bps | American Beacon Balanced (Instl) (AADBX) | 58 bps | 60.34% |
| American Beacon International Equity (Inv) (AAIPX) | 107 bps | American Beacon International Equity (AMR) (AAIAX ) | 46 bps | 132.61% |
| American Beacon Large Cap Value (Inv) (AAGPX) | 96 bps | American Beacon Large Cap Value (Instl) (AADEX) | 59 bps | 62.71% |
| American Beacon Short Term Bond (Inv) (AALPX) | 67 bps | American Beacon Short Term Bond (Y) (ACOYX) | 35 bps | 91.43% |
| American Century Large Company Value (Inv) (ALVIX) | 85 bps | American Century Large Company Value (Instl) (ALVSX) | 65 bps | 30.77% |

| Plan Mutual Fund | Plan Fee | Identical Lower-Cost Mutual Fund | Identical Lower-Cost Mutual Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| American Century Large Company Value (Inv) (ALVIX) | 85 bps | American Century Large Company Value (R6) (ALVDX) | 50 bps | 70.00% |
| American Century Small Company (Inv) (ASQIX) | 90 bps | American Century Small Company (Instl) (ASCQX) | 70 bps | 28.57% |
| American Century Ultra (Inv) (TWCUX) | 100 bps | American Century Ultra (Instl) (TWUIX) | 80 bps | 25.00% |
| American Century Ultra (Inv) (TWCUX) | 100 bps | American Century Ultra (R6) (AULDX) | 65 bps | 53.85% |
| AMG Managers Bond (Service) (MGFIX) | 101 bps | AMG Managers Bond (Instl) (MGBIX) | 91 bps | 10.99% |
| AMG Managers Cadence Mid Cap (Adm) (MCMAX) | 111 bps | AMG Managers Cadence Mid Cap (Instl) (MCMFX) | 71 bps | 56.34% |
| AMG Managers Cadence Mid Cap (Service) (MCMYX) | 96 bps | AMG Managers Cadence Mid Cap (Instl) (MCMFX) | 71 bps | 35.21% |
| AMG Managers Special Equity (Service) (MGSEX) | 148 bps | AMG Managers Special Equity (Instl) (MSEIX) | 123 bps | 20.33% |
| Ariel Appreciation (Inv) (CAAPX) | 117 bps | Ariel Appreciation (Instl) (CAAIX) | 99 bps | 18.18% |
| Ariel (Inv) (ARGFX) | 106 bps | Ariel (Instl) (ARAIX) | 68 bps | 55.88% |
| Artisan International (Inv) (ARTIX) | 123 bps | Artisan International (Instl) (APHIX) | 98 bps | 25.51% |
| Artisan Mid Cap (Inv) (ARTMX) | 123 bps | Artisan Mid Cap (Instl) (APHMX) | 96 bps | 28.13% |
| Baron Asset (BARAX) | 132 bps | Baron Asset (Instl) (BARIX) | 106 bps | 24.53% |
| Baron Growth Retail (BGRFX) | 132 bps | Baron Growth (Instl) (BGRIX) | 106 bps | 24.53% |

| Plan Mutual Fund | Plan Fee | Identical Lower-Cost Mutual Fund | Identical Lower-Cost Mutual Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| Calvert Balanced Portfolio (A) (CSIFX) | 123 bps | Calvert Balanced Portfolio (I) (CBAIX) | 72 bps | 70.83% |
| Calvert Capital Accumulation (A) (CCAFX) | 176 bps | Calvert Capital Accumulation (I) (CCPIX) | 86 bps | 104.65% |
| Calvert Equity Portfolio (A) (CSIEX) | 122 bps | Calvert Equity Portfolio (I) (CEYIX) | 68 bps | 79.41% |
| Calvert International Equity (A) (CWVGX) | 180 bps | Calvert International Equity (I) (CWVIX) | 106 bps | 69.81% |
| Calvert Small Cap (A) (CCVAX) | 169 bps | Calvert Small Cap (I) (CSVIX) | 92 bps | 83.70% |
| ClearBridge Value Trust (FI) (LMVFX) | 107 bps | ClearBridge Value Trust (I) (LMNVX) | 81 bps | 32.10% |
| Columbia Acorn Select (Z) (ACTWX) | 97 bps | Columbia Acorn Select (I) (CACIX) | 92 bps | 5.43% |
| Columbia Acorn USA (Z) (AUSAX) | 100 bps | Columbia Acorn USA (I) (CAUIX) | 94 bps | 6.38% |
| Columbia Income Opportunities (Z) (CIOZX) | 76 bps | Columbia Income Opportunities (Y) (CIOYX) | 66 bps | 15.15% |
| Columbia Small Cap Core (Z) (SMCEX) | 105 bps | Columbia Small Cap Core (I) (CPOIX) | 88 bps | 19.32% |
| Columbia Small Cap Core (Z) (SMCEX) | 111 bps | Columbia Small Cap Core (Y) (CPFRX) | 88 bps | 26.14% |
| Credit Suisse Large Cap Blend (A) (CFFAX) | 130 bps | Credit Suisse Large Cap Blend (Common) (WFDCX) | 95 bps | 36.84% |
| CRM Mid Cap Value (Inv) (CRMMX) | 103 bps | CRM Mid Cap Value (Instl) (CRIMX) | 78 bps | 32.05% |
| Deutsche Core Equity (S) (SCDGX ) | 66 bps | Deutsche Core Equity (Instl) (SUWIX) | 50 bps | 32.00% |
| Deutsche CROCI Equity Dividend (A) (KDHAX) | 116 bps | Deutsche CROCI Equity Dividend (Instl) (KDHIX) | 82 bps | 41.46% |

| Plan Mutual Fund | Plan Fee | Identical Lower-Cost Mutual Fund | Identical Lower-Cost Mutual Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| Deutsche CROCI International (S) (SCINX) | 94 bps | Deutsche CROCI International (Instl) (SUIIX) | 81 bps | 16.05% |
| Deutsche Global Small Cap (S) (SGSCX) | 130 bps | Deutsche Global Small Cap (Instl) (KGDIX) | 113 bps | 15.04% |
| Domini Social Equity (Inv) (DSEFX) | 123 bps | Domini Social Equity (Instl) (DIEQX ) | 75 bps | 64.00% |
| Dreyfus Equity Growth (A) (FRMAX) | 125 bps | Dreyfus Equity Growth (Instl) (FRMRX) | 100 bps | 25.00% |
| Dreyfus Equity Growth (F) (FRMUX) | 101 bps | Dreyfus Equity Growth (Instl) (FRMRX) | 100 bps | 1.00% |
| Dreyfus Lifetime Growth and Income Portfolio (Inv) (DGIIX) | 136 bps | Dreyfus Lifetime Growth and Income Portfolio (Rest) (DGIRX) | 102 bps | 33.33% |
| Dreyfus Research Growth (A) (DWOAX) | 136 bps | Dreyfus Research Growth (I) (DWOIX) | 100 bps | 36.00% |
| Dreyfus Research Growth (A) (DWOAX) | 113 bps | Dreyfus Research Growth (Y) (DRYQX) | 84 bps | 34.52% |
| Dreyfus Research Growth (Z) (DREQX) | 103 bps | Dreyfus Research Growth (I) (DWOIX) | 91 bps | 13.19% |
| Dreyfus Research Growth (Z) (DREQX) | 94 bps | Dreyfus Research Growth (Y) (DRYQX) | 84 bps | 11.90% |
| Fidelity Balanced (FBALX) | 61 bps | Fidelity Balanced (K) (FBAKX) | 47 bps | 29.79% |
| Fidelity Blue Chip Growth (FBGRX) | 93 bps | Fidelity Blue Chip Growth (K) (FBGKX) | 74 bps | 25.68% |
| Fidelity Capital Appreciation (FDCAX) | 86 bps | Fidelity Capital Appreciation (K) (FCAKX) | 68 bps | 26.47% |

| Plan Mutual Fund | Plan Fee | Identical Lower-Cost Mutual Fund | Identical Lower-Cost Mutual Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| Fidelity China Region (FHKCX) | 98 bps | Fidelity China Region (I) (FHKIX) | 93 bps | 5.38% |
| Fidelity Conservative Income Bond (FCONX) | 40 bps | Fidelity Conservative Income Bond (Instl) (FCNVX) | 30 bps | 33.33% |
| Fidelity Contrafund (FCNTX) | 91 bps | Fidelity Contrafund (K) (FCNKX) | 78 bps | 16.67% |
| Fidelity Disciplined Equity (FDEQX) | 68 bps | Fidelity Disciplined Equity (K) (FDEKX) | 51 bps | 33.33% |
| Fidelity Diversified International (FDIVX) | 96 bps | Fidelity Diversified International (K) (FDIKX) | 77 bps | 24.68% |
| Fidelity Dividend Growth (FDGFX) | 92 bps | Fidelity Dividend Growth (K) (FDGKX) | 71 bps | 29.58% |
| Fidelity Emerging Europe, Middle East, Africa (EMEA) (FEMEX) | 125 bps | Fidelity Emerging Europe, Middle East, Africa (EMEA) (I) (FIEMX) | 119 bps | 5.04% |
| Fidelity Emerging Markets (FEMKX) | 109 bps | Fidelity Emerging Markets (K) (FKEMX) | 84 bps | 29.76% |
| Fidelity Equity Income II (FEQTX) | 69 bps | Fidelity Equity Income II (K) (FETKX) | 54 bps | 27.78% |
| Fidelity Equity-Income (FEQIX) | 74 bps | Fidelity Equity-Income (K) (FEIKX) | 54 bps | 37.04% |
| Fidelity Export & Multinational (FEXPX) | 84 bps | Fidelity Export & Multinational (K) (FEXKX) | 64 bps | 31.25% |
| Fidelity Freedom 2000 (FFFBX) | 51 bps | Fidelity Freedom K 2000 (FFKBX) | 43 bps | 18.60% |
| Fidelity Freedom 2005 (FFFVX) | 64 bps | Fidelity Freedom K 2005 (FFKVX) | 52 bps | 23.08% |
| Fidelity Freedom 2010 (FFFCX) | 67 bps | Fidelity Freedom K 2010 (FFKCX) | 53 bps | 26.42% |

| Plan Mutual Fund | Plan Fee | Identical Lower-Cost Mutual Fund | Identical Lower-Cost Mutual Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| Fidelity Freedom 2015 (FFVFX) | 68 bps | Fidelity Freedom K 2015 (FKVFX) | 54 bps | 25.93% |
| Fidelity Freedom 2020 (FFFDX) | 74 bps | Fidelity Freedom K 2020 (FFKDX) | 57 bps | 29.82% |
| Fidelity Freedom 2025 (FFTWX) | 76 bps | Fidelity Freedom K 2025 (FKTWX) | 59 bps | 28.81% |
| Fidelity Freedom 2030 (FFFEX) | 79 bps | Fidelity Freedom K 2030 (FFKEX) | 61 bps | 29.51% |
| Fidelity Freedom 2035 (FFTHX) | 81 bps | Fidelity Freedom K 2035 (FKTHX) | 61 bps | 32.79% |
| Fidelity Freedom 2040 (FFFFX) | 81 bps | Fidelity Freedom K 2040 (FFKFX) | 62 bps | 30.65% |
| Fidelity Freedom 2045 (FFFGX) | 82 bps | Fidelity Freedom K 2045 (FFKGX) | 62 bps | 32.26% |
| Fidelity Freedom 2050 (FFFHX) | 84 bps | Fidelity Freedom K 2050 (FFKHX) | 63 bps | 33.33% |
| Fidelity Freedom Income  (FFFAX) | 50 bps | Fidelity Freedom K Income  (FFKAX) | 42 bps | 19.05% |
| Fidelity (FFIDX) | 60 bps | Fidelity (K) (FFDKX) | 43 bps | 39.53% |
| Fidelity Global Commodity Stock (FFGCX) | 109 bps | Fidelity Global Commodity Stock (I) (FFGIX) | 107 bps | 1.87% |
| Fidelity Growth & Income (FGRIX) | 74 bps | Fidelity Growth & Income (K) (FGIKX) | 53 bps | 39.62% |
| Fidelity Growth Company (FDGRX) | 89 bps | Fidelity Growth Company (K) (FGCKX) | 72 bps | 23.61% |
| Fidelity Growth Discovery (FDSVX) | 75 bps | Fidelity Growth Discovery (K) (FGDKX) | 52 bps | 44.23% |
| Fidelity Growth Strategies (FDEGX) | 77 bps | Fidelity Growth Strategies (K) (FAGKX) | 51 bps | 50.98% |
| Fidelity Independence (FDFFX) | 92 bps | Fidelity Independence (K) (FDFKX) | 77 bps | 19.48% |

| Plan Mutual Fund | Plan Fee | Identical Lower-Cost Mutual Fund | Identical Lower-Cost Mutual Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| Fidelity International Discovery (FIGRX) | 100 bps | Fidelity International Discovery (K) (FIDKX) | 79 bps | 26.58% |
| Fidelity International Growth (FIGFX) | 104 bps | Fidelity International Growth (Z) (FZAJX) | 88 bps | 18.18% |
| Fidelity International Real Estate (FIREX) | 114 bps | Fidelity International Real Estate (Instl) (FIRIX) | 109 bps | 4.59% |
| Fidelity International Small Cap (FISMX) | 142 bps | Fidelity International Small Cap (Instl) (FIXIX) | 131 bps | 8.40% |
| Fidelity International Small Cap Opportunities (FSCOX) | 89 bps | Fidelity International Small Cap Opportunities (Instl) (FOPIX) | 88 bps | 1.14% |
| Fidelity Japan (FJPNX) | 80 bps | Fidelity Japan (I) (FJPIX) | 75 bps | 6.67% |
| Fidelity Large Cap Growth (FSLGX) | 86 bps | Fidelity Large Cap Growth (Instl) (FLNOX) | 74 bps | 16.22% |
| Fidelity Leveraged Company Stock (FLVCX) | 88 bps | Fidelity Leveraged Company Stock (K) (FLCKX) | 69 bps | 27.54% |
| Fidelity Low-Priced Stock (FLPSX) | 99 bps | Fidelity Low-Priced Stock (K) (FLPKX) | 85 bps | 16.47% |
| Fidelity Magellan (FMAGX) | 74 bps | Fidelity Magellan (K) (FMGKX) | 58 bps | 27.59% |
| Fidelity Mega Cap Stock  (FGRTX) | 68 bps | Fidelity Mega Cap Stock (Z) (FZALX) | 54 bps | 25.93% |
| Fidelity Mid Cap Growth (FSMGX) | 70 bps | Fidelity Mid Cap Growth (Instl) (FGCOX) | 59 bps | 18.64% |
| Fidelity Mid-Cap Stock (FMCSX) | 64 bps | Fidelity Mid-Cap Stock (Z) (FKMCX) | 41 bps | 56.10% |

| Plan Mutual Fund | Plan Fee | Identical Lower-Cost Mutual Fund | Identical Lower-Cost Mutual Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| Fidelity OTC (FOCPX) | 104 bps | Fidelity OTC (K) (FOCKX) | 88 bps | 18.18% |
| Fidelity Overseas (FOSFX) | 85 bps | Fidelity Overseas (K) (FOSKX) | 66 bps | 28.79% |
| Fidelity Puritan (FPURX) | 61 bps | Fidelity Puritan (K) (FPUKX) | 47 bps | 29.79% |
| Fidelity Real Estate Income (FRIFX) | 92 bps | Fidelity Real Estate Income (I) (FRIRX) | 89 bps | 3.37% |
| Fidelity Select Gold (FSAGX) | 94 bps | Fidelity Select Gold (I) (FGDIX) | 91 bps | 3.30% |
| Fidelity Select Materials (FSDPX) | 94 bps | Fidelity Select Materials (I) (FMFEX) | 93 bps | 1.08% |
| Fidelity Spartan 500 Index (Instl) (FXSIX) | 5 bps | Fidelity Spartan 500 Index Adv (Instl) (FXAIX) | 3 bps | 66.67% |
| Fidelity Spartan 500 Index (Inv) (FUSEX) | 10 bps | Fidelity Spartan 500 Index (Adv) (FUSVX) | 7 bps | 42.86% |
| Fidelity Spartan Emerging Markets Index (Adv) (FPMAX) | 22 bps | Fidelity Spartan Emerging Markets Index (Adv Instl) (FPADX) | 12 bps | 83.33% |
| Fidelity Spartan Extended Market Index (Adv) (FSEVX) | 7 bps | Fidelity Spartan Extended Market Index (Adv Instl) (FSMAX) | 6 bps | 16.67% |
| Fidelity Spartan Global ex-US Index (Adv) (FSGDX) | 18 bps | Fidelity Spartan Global ex-US Index (Adv Instl) (FSGGX) | 10 bps | 80.00% |
| Fidelity Spartan Inflation-Protected Index (Adv) (FSIYX) | 10 bps | Fidelity Spartan Inflation-Protected Index (Adv Instl) (FIPDX) | 5 bps | 100.00% |

| Plan Mutual Fund | Plan Fee | Identical Lower-Cost Mutual Fund | Identical Lower-Cost Mutual Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| Fidelity Spartan International Index (Adv) (FSIVX ) | 7 bps | Fidelity Spartan International Index (Adv Instl) (FSPSX) | 6 bps | 16.67% |
| Fidelity Spartan International Index (Inv) (FSIIX) | 10 bps | Fidelity Spartan International Index (Adv) (FSIVX) | 7 bps | 42.86% |
| Fidelity Spartan Long Term Treasury Bond Index (Inv) (FLBIX) | 20 bps | Fidelity Spartan Long Term Treasury Bond Index (Adv) (FLBAX) | 10 bps | 100.00% |
| Fidelity Spartan Mid Cap Index (Adv) (FSCKX) | 12 bps | Fidelity Spartan Mid Cap Index (Adv Instl) (FSMDX) | 6 bps | 100.00% |
| Fidelity Spartan Real Estate Index (Adv) (FSRVX) | 12 bps | Fidelity Spartan Real Estate Index (Instl) (FSRNX) | 7 bps | 71.43% |
| Fidelity Spartan Short Term Treasury Bond Index (Inv) (FSBIX) | 20 bps | Fidelity Spartan Short Term Treasury Bond Index (Adv) (FSBAX) | 10 bps | 100.00% |
| Fidelity Spartan Small Cap Index (Adv) (FSSVX) | 17 bps | Fidelity Spartan Small Cap Index (Adv Instl) (FSSNX) | 11 bps | 54.55% |
| Fidelity Spartan Total Market Index (Adv) (FSTVX) | 7 bps | Fidelity Spartan Total Market Index (Adv Instl) (FSKAX) | 5 bps | 40.00% |
| Fidelity Spartan Total Market Index (Inv) (FSTMX) | 10 bps | Fidelity Spartan Total Market Index (Adv) (FSTVX) | 7 bps | 42.86% |
| Fidelity Spartan US Bond Index (Instl) (FXSTX) | 7 bps | Fidelity Spartan US Bond Index (Adv Instl) (FXNAX) | 5 bps | 40.00% |
| Fidelity Stock  Selector Small Cap  (FDSCX) | 72 bps | Fidelity Stock  Selector Small Cap (I) (FCDIX) | 62 bps | 16.13% |

| Plan Mutual Fund | Plan Fee | Identical Lower-Cost Mutual Fund | Identical Lower-Cost Mutual Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| Fidelity Stock Selector All Cap  (FDSSX) | 86 bps | Fidelity Stock Selector All Cap (K) (FSSKX) | 66 bps | 30.30% |
| Fidelity Value (FDVLX) | 63 bps | Fidelity Value (K) (FVLKX) | 46 bps | 36.96% |
| Fidelity Value Discovery (FVDFX) | 95 bps | Fidelity Value Discovery (K) (FVDKX) | 74 bps | 28.38% |
| Fidelity Value Strategies (FSLSX) | 80 bps | Fidelity Value Strategies (K) (FVSKX) | 56 bps | 42.86% |
| Franklin Mutual Shares (A) (TESIX) | 115 bps | Franklin Mutual Shares (Z) (MUTHX) | 85 bps | 35.29% |
| Franklin Mutual Shares (A) (TESIX) | 109 bps | Franklin Mutual Shares (R6) (FMSHX) | 67 bps | 62.69% |
| Franklin Small Mid Cap Growth (A) (FRSGX) | 104 bps | Franklin Small Mid Cap Growth (Adv) (FSGAX) | 79 bps | 31.65% |
| Franklin Small Mid Cap Growth (A) (FRSGX) | 96 bps | Franklin Small Mid Cap Growth (R6) (FMGGX) | 47 bps | 104.26% |
| Invesco Basic Balanced (A) (BBLAX) | 119 bps | Invesco Basic Balanced (Y) (BBLYX) | 94 bps | 26.60% |
| Invesco Basic Balanced (Inv) (BBLTX) | 117 bps | Invesco Basic Balanced (Y) (BBLYX) | 94 bps | 24.47% |
| Invesco Basic Value (A) (GTVLX) | 134 bps | Invesco Basic Value (Instl) (GTVVX) | 82 bps | 63.41% |
| Invesco Charter (A) (CHTRX) | 114 bps | Invesco Charter (R5) (CHTVX) | 71 bps | 60.56% |
| Invesco Charter (A) (CHTRX) | 105 bps | Invesco Charter (R6) (CHFTX) | 63 bps | 66.67% |
| Invesco Constellation (A) (CSTGX) | 132 bps | Invesco Constellation (R5) (CSITX) | 76 bps | 73.68% |

| Plan Mutual Fund | Plan Fee | Identical Lower-Cost Mutual Fund | Identical Lower-Cost Mutual Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| Invesco Diversified Dividend (Inv) (LCEIX) | 92 bps | Invesco Diversified Dividend (R5) (DDFIX) | 64 bps | 43.75% |
| Invesco Diversified Dividend (Inv) (LCEIX) | 86 bps | Invesco Diversified Dividend (R6) (LCEFX) | 48 bps | 79.17% |
| Invesco Dynamics (Inv) (FIDYX) | 112 bps | Invesco Dynamics (R5) (IDICX) | 67 bps | 67.16% |
| Invesco Global Small & Mid Cap Growth (A) (AGAAX) | 145 bps | Invesco Global Small & Mid Cap Growth (R5) (GAIIX) | 92 bps | 57.61% |
| Invesco Large Cap Growth (A) (LCGAX) | 141 bps | Invesco Large Cap Growth (Instl) (LCIGX) | 75 bps | 88.00% |
| Invesco Large Cap Relative Value (A) (IVABX) | 91 bps | Invesco Large Cap Relative Value (Y) (MSIVX) | 66 bps | 37.88% |
| Invesco Mid Cap Core Equity (A) (GTAGX) | 118 bps | Invesco Mid Cap Core Equity (R5) (GTAVX) | 76 bps | 55.26% |
| Invesco Mid Cap Core Equity (A) (GTAGX) | 116 bps | Invesco Mid Cap Core Equity (R6) (GTAFX) | 72 bps | 61.11% |
| Invesco Mid Cap Growth (A) (VGRAX) | 129 bps | Invesco Mid Cap Growth (R5) (VGRJX) | 84 bps | 53.57% |
| Invesco Mid Cap Growth (A) (VGRAX) | 116 bps | Invesco Mid Cap Growth (R6) (VGRFX) | 73 bps | 58.90% |
| Invesco Small Cap Growth (Inv) (GTSIX) | 125 bps | Invesco Small Cap Growth (R5) (GTSVX) | 82 bps | 52.44% |
| Invesco Small Cap Growth (Inv) (GTSIX) | 121 bps | Invesco Small Cap Growth (R6) (GTSFX) | 74 bps | 63.51% |
| Invesco Value II (A) (MPVAX) | 95 bps | Invesco Value II (Y) (MPVLX) | 70 bps | 35.71% |

| Plan Mutual Fund | Plan Fee | Identical Lower-Cost Mutual Fund | Identical Lower-Cost Mutual Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| Invesco Van Kampen American Franchise (A) (VAFAX) | 106 bps | Invesco Van Kampen American Franchise (R5) (VAFNX) | 66 bps | 60.61% |
| Invesco Van Kampen American Franchise (A) (VAFAX) | 106 bps | Invesco Van Kampen American Franchise (R6) (VAFFX) | 65 bps | 63.08% |
| Invesco Van Kampen Comstock (A) (ACSTX) | 84 bps | Invesco Van Kampen Comstock (R5) (ACSHX) | 36 bps | 133.33% |
| Invesco Van Kampen Comstock (A) (ACSTX) | 86 bps | Invesco Van Kampen Comstock (R6) (ICSFX) | 41 bps | 109.76% |
| Invesco Van Kampen Equity and Income (A) (ACEIX) | 81 bps | Invesco Van Kampen Equity and Income (R5) (ACEKX) | 39 bps | 107.69% |
| Invesco Van Kampen Equity and Income (A) (ACEIX) | 78 bps | Invesco Van Kampen Equity and Income (R6) (IEIFX) | 37 bps | 110.81% |
| Invesco Van Kampen Growth and Income (A) (ACGIX) | 74 bps | Invesco Van Kampen Growth and Income (R5) (ACGQX) | 45 bps | 64.44% |
| Invesco Van Kampen Growth and Income (A) (ACGIX) | 81 bps | Invesco Van Kampen Growth and Income (R6) (GIFFX) | 38 bps | 113.16% |
| Invesco Van Kampen Value Opportunities (A) (VVOAX) | 142 bps | Invesco Van Kampen Value Opportunities (Y) (VVOIX) | 117 bps | 21.37% |
| Invesco Van Kampen Value Opportunities (A) (VVOAX) | 140 bps | Invesco Van Kampen Value Opportunities (R5) (VVONX) | 81 bps | 72.84% |

| Plan Mutual Fund | Plan Fee | Identical Lower-Cost Mutual Fund | Identical Lower-Cost Mutual Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| Janus Balanced (S) (JABRX) | 109 bps | Janus Balanced (I) (JBALX ) | 65 bps | 67.69% |
| Janus Enterprise (S) (JGRTX) | 122 bps | Janus Enterprise (I) (JMGRX) | 74 bps | 64.86% |
| Janus Enterprise (S) (JGRTX) | 117 bps | Janus Enterprise (N) (JDMNX) | 68 bps | 72.06% |
| Janus Flexible Bond (T) (JAFIX) | 66 bps | Janus Flexible Bond (I) (JFLEX) | 55 bps | 20.00% |
| Janus Flexible Bond (T) (JAFIX) | 69 bps | Janus Flexible Bond (N) (JDFNX) | 46 bps | 50.00% |
| Janus Forty (S) (JARTX) | 120 bps | Janus Forty (I) (JCAPX) | 77 bps | 55.84% |
| Janus Forty (S) (JARTX) | 100 bps | Janus Forty (N) (JFRNX) | 52 bps | 92.31% |
| Janus Global Research S Shares (JWGRX) | 107 bps | Janus Global Research I Shares (JWWFX) | 72 bps | 48.61% |
| Janus Worldwide (S) (JWGRX) | 145 bps | Janus Worldwide (I) (JWWFX) | 96 bps | 51.04% |
| JHancock Small Company (A) (JCSAX) | 134 bps | JHancock Small Company (R5) (JCSVX) | 110 bps | 21.82% |
| JHancock Small Company (A) (JCSAX) | 144 bps | JHancock Small Company (R6) (JCSWX) | 104 bps | 38.46% |
| Legg Mason Capital Management Value Trust, Inc. (FI) (CSTGX) | 103 bps | Legg Mason Capital Management Value Trust, Inc. (I) (LMNVX) | 78 bps | 32.05% |
| Lord Abbett Mid Cap Value (A) (LAVLX) | 115 bps | Lord Abbett Mid Cap Value (I) (LMCYX) | 80 bps | 43.75% |
| Morgan Stanley Institutional Capital Growth (P) (MSEGX) | 98 bps | Morgan Stanley Institutional Capital Growth (I) (MSEQX) | 73 bps | 34.25% |

| Plan Mutual Fund | Plan Fee | Identical Lower-Cost Mutual Fund | Identical Lower-Cost Mutual Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| Morgan Stanley Institutional Core Plus Fixed Income Portfolio (P) (MFXAX) | 76 bps | Morgan Stanley Institutional Core Plus Fixed Income Portfolio (Instl) (MPFIX) | 51 bps | 49.02% |
| Morgan Stanley Institutional Emerging Markets (P) (MMKBX) | 172 bps | Morgan Stanley Institutional Emerging Markets (I) (MGEMX) | 147 bps | 17.01% |
| Morgan Stanley Institutional Emerging Markets (P) (MMKBX) | 157 bps | Morgan Stanley Institutional Emerging Markets (IS) (MMMPX) | 118 bps | 33.05% |
| Morgan Stanley Institutional Fund Trust Balanced Portfolio (P) (MABIX) | 114 bps | Morgan Stanley Institutional Fund Trust Balanced Portfolio (I) (MPBAX) | 67 bps | 70.15% |
| Morgan Stanley Institutional Fund, Inc. Active International Allocation Portfolio (P) (MSIBX) | 104 bps | Morgan Stanley Institutional Fund, Inc. Active International Allocation Portfolio (I) (MSACX) | 79 bps | 31.65% |
| Morgan Stanley Institutional Fund, Inc. International Equity Portfolio (P) (MIQBX) | 120 bps | Morgan Stanley Institutional Fund, Inc. International Equity Portfolio (Instl) (MSIQX) | 95 bps | 26.32% |
| Morgan Stanley Institutional Fund, Inc. International Equity Portfolio (P) (MIQBX) | 130 bps | Morgan Stanley Institutional Fund, Inc. International Equity Portfolio (IS) (MIQPX) | 91 bps | 42.86% |

| Plan Mutual Fund | Plan Fee | Identical Lower-Cost Mutual Fund | Identical Lower-Cost Mutual Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| Morgan Stanley Institutional Global Strategist Portfolio (P) (MBAAX) | 162 bps | Morgan Stanley Institutional Global Strategist Portfolio (I) (MPBAX) | 135 bps | 20.00% |
| Morgan Stanley Institutional Growth (A) (MSEGX) | 96 bps | Morgan Stanley Institutional Growth (I) (MSEQX) | 71 bps | 35.21% |
| Morgan Stanley Institutional Growth (A) (MSEGX) | 83 bps | Morgan Stanley Institutional Growth (IS) (MGRPX) | 54 bps | 53.70% |
| Morgan Stanley Institutional Mid Cap Growth (P) (MACGX) | 93 bps | Morgan Stanley Institutional Mid Cap Growth (I) (MPEGX) | 68 bps | 36.76% |
| Morgan Stanley Institutional Mid Cap Growth (P) (MACGX) | 100 bps | Morgan Stanley Institutional Mid Cap Growth (IS) (MMCGX) | 61 bps | 63.93% |
| Morgan Stanley Institutional Small Company Growth Fund (P) (MSSMX) | 130 bps | Morgan Stanley Institutional Small Company Growth Fund (I) (MSSGX) | 105 bps | 23.81% |
| Morgan Stanley Institutional Small Company Growth Fund (P) (MSSMX) | 138 bps | Morgan Stanley Institutional Small Company Growth Fund (IS) (MFLLX) | 97 bps | 42.27% |
| Neuberger Berman Core Bond Fund (Inv) (NCRIX) | 85 bps | Neuberger Berman Core Bond Fund (Instl) (NCRLX) | 45 bps | 88.89% |
| Neuberger Berman Focus (Trust) (NBFCX) | 119 bps | Neuberger Berman Focus (Instl) (NFALX) | 75 bps | 58.67% |
| Neuberger Berman Genesis (Trust) (NBGEX) | 112 bps | Neuberger Berman Genesis (R6) (NBGIX) | 85 bps | 31.76% |

| Plan Mutual Fund | Plan Fee | Identical Lower-Cost Mutual Fund | Identical Lower-Cost Mutual Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| Neuberger Berman Genesis (Trust) (NBGEX) | 110 bps | Neuberger Berman Genesis (Instl) (NRGSX) | 78 bps | 41.03% |
| Neuberger Berman Guardian (Trust) (NBGTX) | 112 bps | Neuberger Berman Guardian (Instl) (NGDLX) | 75 bps | 49.33% |
| Neuberger Berman Lehman Brothers Core Bond (Inv) (NCRIX) | 85 bps | Neuberger Berman Lehman Brothers Core Bond (Instl) (NCRLX) | 45 bps | 88.89% |
| Neuberger Berman Mid Cap Growth (Trust) (NBMTX) | 114 bps | Neuberger Berman Mid Cap Growth (Instl) (NBMLX) | 75 bps | 52.00% |
| Neuberger Berman Mid Cap Growth (Trust) (NBMTX) | 104 bps | Neuberger Berman Mid Cap Growth (R6) (NRMGX) | 68 bps | 52.94% |
| Neuberger Berman Partners (Trust) (NBPTX) | 103 bps | Neuberger Berman Partners (Instl) (NBPIX) | 69 bps | 49.28% |
| Neuberger Berman Socially Responsive (Trust) (NBSTX ) | 112 bps | Neuberger Berman Socially Responsive (Instl) (NBSLX ) | 75 bps | 49.33% |
| Neuberger Berman Socially Responsive (Trust) (NBSTX ) | 103 bps | Neuberger Berman Socially Responsive (R6) (NRSRX ) | 60 bps | 71.67% |
| Old Mutual Focused (Z) (OBFVX) | 95 bps | Old Mutual Focused (Instl) (OIFCX) | 80 bps | 18.75% |
| Old Mutual Strategic Small Company (Z) (OSSCX) | 130 bps | Old Mutual Strategic Small Company (Instl) (OISSX) | 105 bps | 23.81% |
| Perkins Mid Cap Value (T) (JMCVX) | 103 bps | Perkins Mid Cap Value (D) (JNMCX) | 93 bps | 10.75% |
| Perkins Mid Cap Value (T) (JMCVX) | 83 bps | Perkins Mid Cap Value (N) (JDPNX) | 58 bps | 43.10% |

| Plan Mutual Fund | Plan Fee | Identical Lower-Cost Mutual Fund | Identical Lower-Cost Mutual Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| PIMCO Global Bond (Adm) (PADMX) | 80 bps | PIMCO Global Bond (Instl) (PIGLX) | 55 bps | 45.45% |
| PIMCO High Yield (Adm) (PHYAX) | 80 bps | PIMCO High Yield (Instl) (PHIYX) | 55 bps | 45.45% |
| PIMCO Long Term U.S. Government (Adm) (PLGBX) | 73 bps | PIMCO Long Term U.S. Government (Instl) (PGOVX) | 48 bps | 52.08% |
| PIMCO Low Duration (Adm) (PLDAX) | 71 bps | PIMCO Low Duration (Instl) (PTLDX) | 46 bps | 54.35% |
| PIMCO Total Return (Adm) (PTRAX) | 71 bps | PIMCO Total Return (Instl) (PTTRX) | 46 bps | 54.35% |
| Royce Low-Priced Stock (Service) (RYLPX) | 149 bps | Royce Low-Priced Stock (Instl) (RLPIX) | 118 bps | 26.27% |
| RS Small Cap Growth (A) (RSEGX) | 135 bps | RS Small Cap Growth (Y) (RSYEX) | 98 bps | 37.76% |
| Strategic Advisers Core Multi-Manager (FLAUX) | 96 bps | Strategic Advisers Core Multi-Manager (F) (FHJSX) | 86 bps | 11.63% |
| Strategic Advisers Small Mid Cap Multi-Manager (FNAPX) | 116 bps | Strategic Advisers Small Mid Cap Multi-Manager (F) (FARMX) | 106 bps | 9.43% |
| Strategic Advisers Value Multi-Manager (FKMOX) | 97 bps | Strategic Advisers Value Multi-Manager (F) (FGWBX) | 87 bps | 11.49% |
| TCW Select Equities (N) (TGCNX) | 124 bps | TCW Select Equities (I) (TGCEX) | 92 bps | 34.78% |
| TCW Small Cap Growth (N) (TGSNX) | 151 bps | TCW Small Cap Growth (I) (TGSCX) | 111.9 bps | 34.94% |
| Templeton Developing Markets (A) (TEDMX ) | 184 bps | Templeton Developing Markets (Advisor) (TDADX ) | 156 bps | 17.95% |

| Plan Mutual Fund | Plan Fee | Identical Lower-Cost Mutual Fund | Identical Lower-Cost Mutual Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| Templeton Developing Markets (A) (TEDMX ) | 172 bps | Templeton Developing Markets (R6) (FDEVX ) | 126 bps | 36.51% |
| Templeton Foreign (A) (TEMFX) | 119 bps | Templeton Foreign (Advisor) (TFFAX) | 94 bps | 26.60% |
| Templeton Foreign (A) (TEMFX) | 119 bps | Templeton Foreign (R6) (FTFGX) | 74 bps | 60.81% |
| Templeton Foreign Smaller Companies (A) (FINEX) | 159 bps | Templeton Foreign Smaller Companies (Advisor) (FTFAX) | 134 bps | 18.66% |
| Templeton Foreign Smaller Companies (A) (FINEX) | 165 bps | Templeton Foreign Smaller Companies (R6) | 112 bps | 47.32% |
| Templeton Global Bond (A) (TPINX) | 91 bps | Templeton Global Bond (Advisor) (TGBAX) | 66 bps | 37.88% |
| Templeton Global Bond (A) (TPINX) | 86 bps | Templeton Global Bond (R6) (FBNRX) | 51 bps | 68.63% |
| Templeton Growth Fund, Inc. (A) (TEPLX) | 110 bps | Templeton Growth Fund, Inc. (Advisor) (TGADX) | 85 bps | 29.41% |
| Templeton Growth Fund, Inc. (A) (TEPLX) | 107 bps | Templeton Growth Fund, Inc. (R6) (FTGFX) | 71 bps | 50.70% |
| Templeton World (A) (TEMWX) | 109 bps | Templeton World (Advisor) (TWDAX) | 84 bps | 29.76% |
| Templeton World (A) (TEMWX) | 105 bps | Templeton World (R6) (FTWRX) | 72 bps | 45.83% |
| Touchstone Focused (Y) (TFFYX) | 95 bps | Touchstone Focused (Instl) (TFFIX) | 80 bps | 18.75% |
| Touchstone International Small Cap (Y) (TNSYX) | 130 bps | Touchstone International Small Cap (Instl) (TNSIX) | 105 bps | 23.81% |

| Plan Mutual Fund | Plan Fee | Identical Lower-Cost Mutual Fund | Identical Lower-Cost Mutual Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| USAA Emerging Markets (USEMX) | 164 bps | USAA Emerging Markets (Instl) (UIEMX) | 113 bps | 45.13% |
| USAA Growth (USAAX) | 100 bps | USAA Growth (Instl) (UIGRX) | 87 bps | 14.94% |
| USAA Income (USAIX) | 61 bps | USAA Income (Instl) (UIINX) | 38 bps | 60.53% |
| USAA Income Stock (USISX) | 82 bps | USAA Income Stock (Instl) (UIISX) | 62 bps | 32.26% |
| USAA International (USIFX) | 123 bps | USAA International (Instl) (UIIFX) | 87 bps | 41.38% |
| Vanguard FTSE All-World ex-US Index (Inv) (VFWIX) | 35 bps | Vanguard FTSE All-World ex-US Index (Instl) (VFWSX) | 15 bps | 133.33% |
| Vanguard Growth Index (Adm) (VIGAX) | 9 bps | Vanguard Growth Index (Instl) (VIGIX) | 8 bps | 12.50% |
| Vanguard Growth Index (Signal) (VIGSX) | 12 bps | Vanguard Growth Index (Instl) (VIGIX) | 8 bps | 50.00% |
| Vanguard Institutional Index (Instl) (VINIX) | 5 bps | Vanguard Institutional Index (Instl Plus) (VIIIX) | 2 bps | 150.00% |
| Vanguard Total International Stock Index (Signal) (VTSGX) | 18 bps | Vanguard Total International Stock Index (Instl Plus) (VTPSX) | 10 bps | 80.00% |
| Vanguard Total Stock Market Index (Instl) (VITSX) | 5 bps | Vanguard Total Stock Market Index (Instl Plus) (VITPX) | 2 bps | 150.00% |
| Vanguard Value Index (Adm) (VVIAX) | 9 bps | Vanguard Value Index (Instl) (VIVIX) | 8 bps | 12.50% |
| Vanguard Value Index (Signal) (VVISX) | 14 bps | Vanguard Value Index (Instl) (VIVIX) | 8 bps | 75.00% |

| Plan Mutual Fund | Plan Fee | Identical Lower-Cost Mutual Fund | Identical Lower-Cost Mutual Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| Wells Fargo Advantage Common Stock (Inv) (STCSX) | 129 bps | Wells Fargo Advantage Common Stock (R6) (SCNSX) | 87 bps | 48.28% |
| Wells Fargo Advantage Common Stock (Inv) (SCSAX) | 126 bps | Wells Fargo Advantage Common Stock (Instl) (SCSRX) | 80 bps | 57.50% |
| Wells Fargo Advantage Discovery (Inv) (STDIX) | 138 bps | Wells Fargo Advantage Discovery (Instl) (WFDSX) | 93 bps | 48.39% |
| Wells Fargo Advantage Government Securities (Inv) (STVSX) | 91 bps | Wells Fargo Advantage Government Securities (Instl) (SGVIX) | 48 bps | 89.58% |
| Wells Fargo Advantage Growth (Inv) (SGROX) | 140 bps | Wells Fargo Advantage Growth (Instl) (SGRNX) | 80 bps | 75.00% |
| Wells Fargo Advantage Large Cap Growth (Inv) (STRFX) | 119 bps | Wells Fargo Advantage Large Cap Growth (Instl) (STNFX) | 75 bps | 58.67% |
| Wells Fargo Advantage Large Cap Growth (Inv) (STRFX) | 113 bps | Wells Fargo Advantage Large Cap Growth (R6) (STFFX) | 60 bps | 88.33% |
| Wells Fargo Advantage Opportunity (Inv) (SOPFX) | 135 bps | Wells Fargo Advantage Opportunity (Adm) (WOFDX) | 104 bps | 29.81% |
| Wells Fargo Advantage Opportunity (Inv) (SOPFX) | 132 bps | Wells Fargo Advantage Opportunity (Instl) (WOFNX) | 78 bps | 69.23% |

| Plan Mutual Fund | Plan Fee | Identical Lower-Cost Mutual Fund | Identical Lower-Cost Mutual Fund Fee | Plan's Excess Cost |
|---|---|---|---|---|
| Wells Fargo Advantage Short-Term Bond (Inv) (SSTBX) | 85 bps | Wells Fargo Advantage Short-Term Bond (Instl) (SSHIX) | 48 bps | 77.08% |
| Wells Fargo Advantage Small Cap Value (Inv) (SSMVX) | 135 bps | Wells Fargo Advantage Small Cap Value (Instl) (WFSVX) | 93 bps | 45.16% |
| Wells Fargo Advantage Small Cap Value (Inv) (SSMVX) | 133 bps | Wells Fargo Advantage Small Cap Value (R6) (SMVRX) | 85 bps | 56.47% |
| Wells Fargo Advantage Ultra Short Income (Inv) (STADX) | 75 bps | Wells Fargo Advantage Ultra Short Income (Instl) (SADIX) | 35 bps | 114.29% |
| Western Asset Core Bond (FI) (WAPIX) | 75 bps | Western Asset Core Bond (IS) (WACSX) | 44 bps | 70.45% |

126. These lower-cost share classes were available for years, some dating back to the early 2000s or before.

127. The failure to select lower-cost share classes for the Plan's mutual fund options, which were *identical in all respects* (portfolio manager, underlying investments, and asset allocation) *except for cost*, demonstrates that Defendants failed to consider and use the size and purchasing power of the Plan when selecting share classes and failed to engage in a prudent process in the selection, monitoring, and retention of those mutual fund options.

128.    Had the amounts invested in the higher-cost share class mutual fund options instead been invested in the readily available lower-cost share class mutual fund options, Plan participants would not have lost millions of dollars of their retirement savings.

### B.    Excessive fees compared to separate accounts.

129.    Massive retirement plans are not limited to choosing mutual funds as investment options. According to the United States Department of Labor, large plans with total assets of over $500 million "can realize substantial savings" by hiring investment advisers directly to manage a "separate account" for the plan. U.S. Dep't of Labor, *Study of 401(k) Plan Fees and Expenses*, §2.4.1.3 (Apr. 13, 1998).[27] Separate accounts, which require a minimum investment of $15 million or less per account, can "commonly" reduce "[t]otal investment management expenses" to "*one-fourth of the expenses incurred through retail mutual funds*." *Id.* (emphasis added). In a separate account, fiduciaries can hire the same investment managers that manage mutual funds, to manage an account in the same investment style in a separate account set up for the plan. The fiduciary has the ability to negotiate plan-specific investment guidelines tailored to the plan. Unlike a mutual fund, which must charge all investors in a given share class the same amount, an investor in a separate account can directly negotiate investment management fees. Use of separate accounts greatly reduces the cost of investing with the same adviser compared to a mutual fund.

---

[27] On the Department of Labor's website at http://www.dol.gov/ebsa/pdf/401krept.pdf.

130.    The Plan had assets of billions of dollars at all relevant times, and over

*$3.8 billion* as of December 31, 2014. Thus, the Plan had ample leverage to obtain

separate account alternatives to the Plan's mutual funds, at much lower cost,

particularly after they consolidated the Plan's assets in 2015 into a core set of

investment offerings.

131.    Separate accounts have numerous advantages over mutual funds in a

401(k) plan. These include: the ability to negotiate lower fees; ability to avoid

marketing fees built into retail mutual funds; control by the fiduciaries over

investment guidelines; tailored investments to fit the demographics of the work

force; and ability to avoid holding significant cash for shareholder redemptions that

occur much more frequently in retail mutual funds than in retirement accounts.[28] In

a mutual fund, all investors are charged the same fee, and investors have no ability

to modify the fund's investment guidelines, which are set by the fund's investment

adviser. In a separate account, the plan sponsor can negotiate the best possible fee

for the plan, using its bargaining power.

132.    Following the 2015 fund lineup changes, Defendants selected several

actively managed mutual fund options. Some of these investment managers also

offer low-cost separately managed accounts. For instance, Dimensional Fund

Advisors LP, manager of the DFA Emerging Markets Equity Fund (DFCEX), offers

separate accounts in the same international equity investment strategy at

---

[28] Unlike mutual fund shareholders, 401(k) participants rarely make trades in their account—less than one trade per year. Olivia Mitchell, Gary Mottola, Stephen Utkus, and Takeski Yamaguchi, *The Inattentive Participant: Portfolio Trading Behaviors in 401(k) Plans*, at 17–18 (June 2006), available at http://www.mrrc.isr.umich.edu/publications/Papers/pdf/wp115.pdf.

significantly lower costs.[29] In addition, Dodge & Cox, manager of the Dodge & Cox Stock Fund (DODGX), similarly offers significantly lower-cost separately managed accounts for U.S. equity investment strategies.[30]

133.    Fidelity also offers separately managed accounts to institutional investors. Fidelity Institutional Asset Management (formerly Pyramis Global Advisors, LLC, an affiliate of Fidelity) offers lower-cost separate accounts in domestic equities, international equities, fixed income, asset allocation, and real estate investment strategies.[31]

134.    The above-referenced separate accounts offered by the Plan's mutual fund advisers only represent a fraction of the separate accounts that were available to the Plan in similar investment styles, from prior to 2010, through 2015 and to the present. Other investment management firms offered separate accounts in the same investment styles at a much lower cost than the Plan's mutual funds.

135.    Defendants' failure to use separate accounts for the Plan's investments instead of mutual funds caused Plan participants to lose millions of dollars of their retirement savings due to unreasonable expenses from 2010 to date.

---

[29] See Dimensional Fund Advisors LP Form ADV, available at http://www.adviserinfo.sec.gov/IAPD/Content/Common/crd_iapd_Brochure.aspx?BRCHR_V RSN_ID=376508.

[30] See Dodge & Cox Form ADV, available at http://www.adviserinfo.sec.gov/IAPD/Content/Common/crd_iapd_Brochure.aspx?BRCHR_V RSN_ID=376765.

[31] See FIAM LLC Form ADV, available at http://www.adviserinfo.sec.gov/IAPD/Content/Common/crd_iapd_Brochure.aspx?BRCHR_V RSN_ID=388324; Fidelity Investment Asset Management, *DCIO Overview*, available at https://pyramis.fidelity.com/app/p/us/defined-contribution.

### C.      Excessive fees compared to collective trusts or commingled pools.

136.    Collective trusts or commingled pools also provide much lower investment management fees than the Plan's mutual funds, and in some instances, separate accounts. Collective trusts are a common investment vehicle in large 401(k) plans, and are accessible even to midsize plans with plan assets in an amount which is a small fraction—less than 3%—of the size of the Plan. Collective trusts are pooled investment vehicles organized as trusts and maintained by a bank or trust company. These investments combine assets from eligible investors into a single investment portfolio with a specific investment strategy. Given that the Plan held billions of dollars in assets since 2010, collective trusts were readily available to the Plan.

137.    Collective trusts are widely used investment vehicles for defined contribution plans due to recordkeeper acceptance, plan investment consultant familiarity with such products, pricing flexibility, daily valuation, and improved reporting and transparency.

138.    Numerous established third-party investment managers offer low-cost collective trust investments in the same investment categories and styles as the Plan's mutual funds at a fraction of the cost. These reputable managers include BlackRock, State Street Global Advisors, and Vanguard Fiduciary Trust Company, among others.

139.    For instance, Vanguard offers low-cost collective trust funds to qualified retirement plans in several asset styles, including large cap domestic equities, small cap equities, international equities, and target date funds.

140.    Since at least 2010, Defendants included Vanguard's target date funds known as the Target Retirement Trust II Funds in the Plan. Although those funds were collective trusts, Defendants could have provided participants lower-cost versions of these same collectives trusts in the Retirement Trust Plus series since at least August 2011. The Target Date Retirement Trust II Funds charged at least 36% more in annual fees than the Retirement Trust Plus Funds (7 bps vs. 11 bps). However, Defendants did not begin providing participants the Trust Plus Funds until 2015. Moreover, the Vanguard collective trust target date funds charged far lower fees than the other target date funds in the Plan, the Fidelity Freedom Funds, which charged between 39 and 84 bps before they were removed in July 2015. In fact, at the time of removal, the Fidelity Freedom Funds charged between 614% and 529% in excess fees compared to the Vanguard equivalents. *See supra* ¶103.

141.    Moreover, Fidelity offers *identical* commingled pools for several of its mutual fund options, including for the Fidelity Diversified International Fund, the Fidelity Low-Priced Stock Fund, the Fidelity Growth Company Fund, and the Fidelity Contrafund. Fidelity Institutional Asset Management also offers commingled pools to institutional investors in a variety of investment strategies. These commingled pools have significantly lower costs than the Plan's Fidelity

mutual fund options. For instance, the Fidelity Growth Company Commingled Pool, with an expense ratio of 43 bps, has 65% lower fees compared to the Plan's mutual fund version with an expense ratio of 71 bps.

142.    Had Defendants adequately considered and selected lower-cost collective trusts or commingled pools that were readily available based on the Plan's massive size for the Plan's mutual fund investments, Plan participants would have avoided millions of dollars in unreasonable investment management expenses.

**V.    In order to maintain Fidelity's and the Johnson family's beneficial relationship with MIT, Defendants caused Plan participants to pay excessive administrative and recordkeeping fees to Fidelity in violation of their fiduciary duties and ERISA's requirement that fees be reasonable.**

143.    As set forth above, the market for recordkeeping services is highly competitive and there are numerous recordkeepers in the market who can provide a high level of service to large defined contribution plan who will readily respond to a request for proposal.

144.    Because market rates for recordkeeping services have declined in recent years and because the only way to reliably determine the true market rate for a complex jumbo plan is to obtain an actual fee quote comparison, prudent fiduciaries of jumbo defined contribution plans put the plan's recordkeeping and administrative services out for competitive bidding at regular intervals of approximately three years.

145.    Because of their size, jumbo defined contribution plans, like the Plan, enjoy economies of scale for recordkeeping and administrative services. As the number of participants in a plan increases, the cost of recordkeeping on a per-

participant basis declines. Therefore, the Plan, with over 18,000 participants, can command far lower fees than an 1,800 participant plan or even a 10,000 participant plan. These lower administrative expenses would have been readily available to the Plan, had Defendants solicited competitive bids.

146.   As discussed above, when a plan includes investments with revenue sharing, plan fiduciaries must monitor the total *amount* of revenue sharing a recordkeeper receives to ensure that the recordkeeper is not receiving unreasonable compensation.[32]

147.   A prudent fiduciary must ensure that the recordkeeper rebates to the plan all revenue sharing payments that exceed a reasonable, negotiated recordkeeping fee. Because revenue sharing payments are asset-based, they often bear no relation to a reasonable recordkeeping fee and can provide excessive compensation, or may be used as kickbacks to induce recordkeepers to have their high-priced funds included as plan investment options.

148.   As previously noted, Fidelity has provided administrative and recordkeeping services to the Plan since at least 1999. Fidelity provided these services while its owners directly benefited MIT through substantial monetary contributions. Moreover, Fidelity remained the recordkeeper during the time Fidelity's CEO, Abigail Johnson, has served on the MIT's Board of Trustees and influenced decisions made by MIT. Defendants also failed to obtain competitive bids

---

[32] For example, if the market goes up 32% as it did in 2013, as measured by the return of the S&P 500, or if a participant adds to her balance, the fees paid for recordkeeping would go up as well, with no additional services.

for Fidelity's services to ensure that only reasonable fees were charged to the Plan during this time.

149.    Fidelity was and is compensated based on a combination of direct payments from the Plan and revenue sharing payments from the Plan's investment options. Fidelity received between 3 and 55 bps in revenue sharing from the Fidelity, as well as from the non-Fidelity, mutual fund options.

150.    Fidelity also received additional indirect compensation, including float, revenue derived from securities lending, distribution fees, and redemption fees.

151.    To discharge their fiduciary duties, besides soliciting bids for recordkeeping, Defendants were required to obtain sufficient information to determine all sources of compensation received by Fidelity, including the amount of any revenue sharing payments, and to make an informed assessment as to whether the amount of compensation was no more than reasonable for the services provided. *George*, 641 F.3d at 798–99.

152.    Experts in the recordkeeping industry with vast experience in requests for proposals and information for similar plans have determined the market rate that the Plan likely would have been able to obtain had the fiduciaries put the Plan's recordkeeping services out for competitive bidding. Based on the Plan's features, the information available to Plaintiffs regarding the nature and type of administrative services actually provided by the Plan's recordkeeper, the Plan's participant level (roughly 16,000 to 18,000), and the rates obtained in the market for recordkeeping services for similar plans, the outside limit of a reasonable

recordkeeping fee for the Plan would have been a fixed fee of roughly $575,000 to $640,000 (a rate of approximately $35 for each participant in the Plan with an account balance each year).

153.    Based on the direct and indirect compensation levels shown on the Plan's Forms 5500 filed with the Department of Labor, and upon information regarding the rates of revenue sharing paid to Fidelity for recordkeeping services, the Plan paid as much as $3 million (up to $170 per participant) per year from 2010 to 2014, over 386% higher than a reasonable fee for these services, resulting in millions of dollars in excessive recordkeeping fees. The vast majority of the fees paid to Fidelity was attributable to revenue sharing, a substantial portion of which was not legitimate compensation for services rendered but rather a kickback to Fidelity as a result of placing Fidelity funds in the Plan.

154.    Defendants also failed to control recordkeeping costs as Plan assets grew. From the beginning of 2009 to the end of 2014, the Plan's assets increased from $2.02 billion to over $3.8 billion, an increase of *88 percent*. Because revenue sharing payments are asset-based, the already excessive compensation paid to Fidelity became even more excessive as the Plan's assets grew, even though the administrative services provided to the Plan remained roughly the same because the number of participants with account balances did not increase at a similar rate. Defendants could have and should have obtained bids and pricing based on the number of participants in the Plan, or capped the amount of revenue sharing at a reasonable fee level to ensure that all amounts above a reasonable fee for

recordkeeping services were returned to the Plan, as other plans do. Defendants failed to adequately do so.

155.    Upon information and belief, in order to further Fidelity's and its owners' beneficial relationship with MIT, Defendants failed to conduct a competitive bidding process for the Plan's recordkeeping services for over *16 years*, since Fidelity was hired in 1998. A competitive bidding process for the Plan's recordkeeping services would have produced a reasonable recordkeeping fee for the Plan. This competitive bidding process would have enabled Defendants to select a recordkeeper charging reasonable fees, to obtain a reduction in recordkeeping fees, and to rebate any to the Plan any expenses paid by participants for recordkeeping services that exceeded a reasonable level of fees for the services provided.

156.    Fidelity remains the Plan's recordkeeper currently, and continues to receive excessive compensation for its services to the Plan.

157.    Defendants failed to prudently monitor and control the compensation paid for recordkeeping and administrative services, particularly the asset-based revenue sharing received by Fidelity, and therefore caused the Plan participants to pay unreasonable expenses for administering the Plan. Had Defendants monitored the compensation paid to Fidelity and ensured that participants were only charged reasonable fees for administrative and recordkeeping services, including by

obtaining competitive bids, Plan participants would not have lost in excess of $9 million of their retirement savings through unreasonable recordkeeping fees.[33]

## CLASS ACTION ALLEGATIONS

158.   29 U.S.C. §1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. §1109(a).

159.   In acting in this representative capacity and to enhance the due process protections of unnamed participants and beneficiaries of the Plan, as an alternative to direct individual actions on behalf of the Plan under 29 U.S.C. §1132(a)(2), Plaintiffs seek to certify this action as a class action on behalf of all participants and beneficiaries of the Plan. Plaintiffs seek to certify, and to be appointed as representatives of, the following class:

> All participants and beneficiaries of the MIT Supplemental 401(k) Plan from August 9, 2010 through the date of judgment, excluding the Defendants.

160.   This action meets the requirements of Rule 23 and is certifiable as a class action for the following reasons:

a.   The Class includes over 18,000 members and is so large that joinder of all its members is impracticable.

b.   There are questions of law and fact common to the Class because the Defendants owed fiduciary duties to the Plan and to all participants and beneficiaries and took the actions and omissions alleged

---

[33] Plan losses have been brought forward to the present value using the investment returns of the S&P 500 index to compensate participants who have not been reimbursed for their losses.

herein as to the Plan and not as to any individual participant. Thus, common questions of law and fact include the following, without limitation: who are the fiduciaries liable for the remedies provided by 29 U.S.C. §1109(a); whether the fiduciaries of the Plan breached their fiduciary duties to the Plan; what are the losses to the Plan resulting from each breach of fiduciary duty; and what Plan-wide equitable and other relief the court should impose in light of Defendants' breach of duty.

c.       Plaintiffs' claims are typical of the claims of the Class because each Plaintiff was a participant during the time period at issue in this action and all participants in the Plan were harmed by Defendants' misconduct.

d.       Plaintiffs are adequate representatives of the Class because they were participants in the Plan during the Class period, have no interest that is in conflict with the Class, are committed to the vigorous representation of the Class, and have engaged experienced and competent attorneys to represent the Class.

e.       Prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of (A) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants in respect to the discharge of their fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. §1109(a), and (B) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plan would,

as a practical matter, be dispositive of the interests of the participants and beneficiaries not parties to the adjudication or would substantially impair or impede those participants' and beneficiaries' ability to protect their interests. Therefore, this action should be certified as a class action under Rule 23(b)(1)(A) or (B).

161.    A class action is the superior method for the fair and efficient adjudication of this controversy because joinder of all participants and beneficiaries is impracticable, the losses suffered by individual participants and beneficiaries may be small and impracticable for individual members to enforce their rights through individual actions, and the common questions of law and fact predominate over individual questions. Given the nature of the allegations, no class member has an interest in individually controlling the prosecution of this matter, and Plaintiffs are aware of no difficulties likely to be encountered in the management of this matter as a class action. Alternatively, then, this action may be certified as a class under Rule 23(b)(3) if it is not certified under Rule 23(b)(1)(A) or (B).

162.    Plaintiffs' counsel, Schlichter, Bogard & Denton LLP, will fairly and adequately represent the interests of the Class and is best able to represent the interests of the Class under Rule 23(g). Schlichter, Bogard & Denton has been appointed as class counsel in 17 other ERISA class actions regarding excessive fees in large defined contribution plans. Courts in these cases have consistently and repeatedly recognized the firm's unparalleled success in the area of defined contribution excessive fee litigation:

- As Chief Judge Michael J. Reagan of the Southern District of Illinois recognized in approving a settlement which was reached on the eve of trial after eight years of litigation, resulting in a $62 million monetary recovery and very substantial affirmative relief to benefit the Plans, the firm had shown "exceptional commitment and perseverance in representing employees and retirees seeking to improve their retirement plans," and "demonstrated its well-earned reputation as a pioneer and the leader in the field" of 401(k) plan excessive fee litigation. *Abbott v. Lockheed Martin Corp.*, No. 06-701, 2015 U.S.Dist.LEXIS 93206, at *4–5 (S.D.Ill. July 17, 2015). The court further recognized that the law firm of "Schlichter, Bogard & Denton has had a humongous impact over the entire 401(k) industry, which has benefited employees and retirees throughout the entire country by bringing sweeping changes to fiduciary practices." *Id.* at *9 (internal quotations omitted).

- Other courts have made similar findings:

  - "It is clear to the Court that the firm of Schlichter, Bogard & Denton is preeminent in the field" "and is the only firm which has invested such massive resources in this area." *George v. Kraft Foods Global, Inc.*, No. 08-3799, 2012 U.S.Dist.LEXIS 166816 at 8 (N.D. Ill. June 26, 2012).

  - "As the preeminent firm in 401(k) fee litigation, Schlichter, Bogard & Denton has achieved unparalleled results on behalf of its clients." *Nolte v. Cigna Corp.*, No. 07-2046, 2013 U.S.Dist.LEXIS 184622 at 8 (C.D. Ill. Oct. 15, 2013).

  - "Litigating this case against formidable defendants and their sophisticated attorneys required Class Counsel to demonstrate extraordinary skill and determination." *Beesley v. Int'l Paper Co.*, No. 06-703, 2014 U.S.Dist.LEXIS 12037 at *8 (S.D. Ill. Jan. 31, 2014). The court also emphasized that "the law firm of Schlichter, Bogard & Denton is the leader in 401(k) fee litigation." *Id.* at *8 (internal quotations omitted).

  - U.S. District Judge Harold Baker of the Central District of Illinois acknowledged the significant impact of the firm's work, finding that as of 2013, the nationwide "fee reduction attributed to Schlichter, Bogard & Denton's fee litigation and the Department of Labor's fee disclosure regulations approach *$2.8 billion in annual savings* for American workers and retirees." *Nolte*, 2013 U.S. Dist. LEXIS 184622, at *6 (emphasis added).

  - U.S. District Judge David Herndon of the Southern District of Illinois recognized the firm's extraordinary contributions to the retirement

industry: "Schlichter, Bogard & Denton and lead attorney Jerome Schlichter's diligence and perseverance, while risking vast amounts of time and money, reflect the finest attributes of a private attorney general. *Beesley*, 2014 U.S. Dist. LEXIS 12037, at \*8.

o U.S. District Court Judge G. Patrick Murphy similarly recognized the work of Schlichter, Bogard & Denton as exceptional:

> "Schlichter, Bogard & Denton's work throughout this litigation illustrates an exceptional example of a private attorney general risking large sums of money and investing many thousands of hours for the benefit of employees and retirees. No case had previously been brought by either the Department of Labor or private attorneys against large employers for excessive fees in a 401(k) plan. Class Counsel performed substantial work[,] investigating the facts, examining documents, and consulting and paying experts to determine whether it was viable. This case has been pending since September 11, 2006. Litigating the case required Class Counsel to be of the highest caliber and committed to the interests of the participants and beneficiaries of the General Dynamics 401(k) Plans."

*Will v. General Dynamics Corp.*, No. 06-698, 2010 U.S.Dist.LEXIS 123349 at 8–9 (S.D.Ill. Nov. 22, 2010).

- Schlichter, Bogard & Denton handled the only full trial of an ERISA excessive fee case, resulting in a $36.9 million judgment for the plaintiffs that was affirmed in part by the Eighth Circuit. *Tussey v. ABB, Inc.*, 746 F.3d 327 (8th Cir. 2014). In awarding attorney's fees after trial, the district court concluded that "Plaintiffs' attorneys are clearly experts in ERISA litigation." *Tussey v. ABB, Inc.*, No. 06-4305, 2012 U.S.Dist.LEXIS 157428 at 10 (W.D. Mo. Nov. 2, 2012). Following remand, the district court again awarded Plaintiffs' attorney's fees, emphasizing the significant contribution Plaintiffs' attorneys have made to ERISA litigation, including educating the Department of Labor and federal courts about the importance of monitoring fees in retirement plans:

> "Of special importance is the significant, national contribution made by the Plaintiffs whose litigation clarified ERISA standards in the context of investment fees. The litigation educated plan administrators, the Department of Labor, the courts and retirement plan participants

about the importance of monitoring recordkeeping fees and separating a fiduciary's corporate interest from its fiduciary obligations."

*Tussey v. ABB, Inc.,* No. 06-4305, 2015 U.S.Dist.LEXIS 164818 at 7–8 (W.D. Mo. Dec. 9, 2015).

- In *Spano v. Boeing Co.*, in approving a settlement reached after nine years of litigation which included $57 million in monetary relief and substantial affirmative relief to benefit participants, the court found that "The law firm Schlichter, Bogard & Denton has significantly improved 401(k) plans across the country by bringing cases such as this one, which have educated plan administrators, the Department of Labor, the courts and retirement plan participants about the importance of monitoring recordkeeping fees." No. 06-cv-743, Doc. 587, at 5–6 (S.D.Ill. Mar. 31, 2016) (Rosenstengel, J.) (internal quotations omitted).

- Recently, in approving a settlement including $32 million plus significant affirmative relief, Chief Judge William Osteen in *Kruger v. Novant Health, Inc.*, No. 14-208, Doc. 61, at 7–8 (M.D.N.C. Sept. 29, 2016) found that "Class Counsel's efforts have not only resulted in a significant monetary award to the class but have also brought improvement to the manner in which the Plans are operated and managed which will result in participants and retirees receiving significant savings[.]"

- On November 3, 2016, Judge Michael Ponsor of the United States District Court for the District of Massachusetts found that by securing a $30.9 million settlement, Schlichter, Bogard & Denton had achieved an "outstanding result for the class," and "demonstrated extraordinary resourcefulness, skill, efficiency and determination." *Gordan v. Mass Mutual Life Ins., Co.*, No. 14-30184, Doc. 144 at 5 (D. Mass. Nov. 3, 2016).

- Schlichter, Bogard & Denton is also class counsel in and handled *Tibble v. Edison International*, 135 S. Ct. 1823 (2015), the first and only Supreme Court case to address the issue of excessive fees in a defined contribution plan—in which the Court held in a unanimous 9–0 decision that ERISA fiduciaries have "a continuing duty to monitor investments and remove imprudent ones[.]" *Id.* at 1829. Schlichter, Bogard & Denton successfully petitioned for a writ of certiorari, and obtained amicus support from the United States Solicitor General and AARP, among others. Given the Court's broad recognition of an ongoing fiduciary duty, the *Tibble* decision will affect all ERISA defined contribution plans.

- The firm's work in ERISA excessive fee class actions has been featured in the New York Times, Wall Street Journal, NPR, Reuters, and Bloomberg, among

other media outlets. See, e.g., Anne Tergesen, *401(k) Fees, Already Low, Are Heading Lower*, WALL ST. J. (May 15, 2016);[34] Gretchen Morgenson, *A Lone Ranger of the 401(k)'s*, N.Y. TIMES (Mar. 29, 2014);[35] Liz Moyer, *High Court Spotlight Put on 401(k) Plans*, WALL ST. J. (Feb. 23, 2015);[36] Floyd Norris, *What a 401(k) Plan Really Owes Employees*,  N.Y. TIMES (Oct. 16, 2014);[37] Sara Randazzo, *Plaintiffs' Lawyer Takes on Retirement Plans*, WALL ST. J. (Aug. 25, 2015);[38] Jess Bravin and Liz Moyer, *High Court Ruling Adds Protections for Investors in 401(k) Plans*, WALL ST. J. (May 18, 2015); [39] Jim Zarroli, *Lockheed Martin Case Puts 401(k) Plans on Trial*, NPR (Dec. 15, 2014);[40] Mark Miller*, Are 401(k) Fees Too High? The High-Court May Have an Opinion*, REUTERS (May 1, 2014);[41] Greg Stohr, *401(k) Fees at Issue as Court Takes Edison Worker Appeal*, BLOOMBERG (Oct. 2, 2014).[42]

## COUNT I

### Breach of Fiduciary Duties—29 U.S.C. §1104(a)(1)(A) & (B)

### Unreasonable Investment Management Fees and Performance Losses

163.    Plaintiffs restate and incorporate the allegations contained in the preceding paragraphs.

164.    This Count alleges breach of fiduciary duties against all Defendants.

---

[34] Available at http://www.wsj.com/articles/401-k-fees-already-low-are-heading-lower-1463304601.

[35] Available at http://www.nytimes.com/2014/03/30/business/a-lone-ranger-of-the-401-k-s.html?_r=0.

[36] Available at http://www.wsj.com/articles/high-court-spotlight-put-on-401-k-plans-1424716527.

[37] Available at http://www.nytimes.com/2014/10/17/business/what-a-401-k-plan-really-owes-employees.html?_r=0.

[38] Available at http://blogs.wsj.com/law/2015/08/25/plaintiffs-lawyer-takes-on-retirement-plans/.

[39] Available at http://www.wsj.com/articles/high-court-ruling-adds-protections-for-investors-in-401-k-plans-1431974139.

[40] Available at http://www.npr.org/2014/12/15/370794942/lockheed-martin-case-puts-401-k-plans-on-trial.

[41] Available at http://www.reuters.com/article/us-column-miller-401fees-idUSBREA400J220140501.

[42] Available at http://www.bloomberg.com/news/articles/2014-10-02/401-k-fees-at-issue-as-court-takes-edison-worker-appeal.

165.   As fiduciaries to the Plan, Defendants were required to manage the assets of the Plan for the sole and exclusive benefit of Plan participants and beneficiaries, defray reasonable expenses of administering the Plan, and to act with the care, skill, diligence, and prudence required by ERISA.

166.   To discharge those duties, Defendants were required to independently assess "the prudence of *each* investment option" for the Plan on an ongoing basis, *DiFelice*, 497 F.3d at 423 (emphasis original), and not simply to allow the Plan's recordkeeper to put its entire mutual fund lineup in the Plan along with other funds that paid it revenue sharing, *see Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 590, 595–96 (8th Cir. 2009). Defendants had a continuing duty to review the Plan's investments, and to "remove imprudent ones," as the Supreme Court recently confirmed. *Tibble*, 135 S. Ct. at 1828–29.

167.   In making these investment decisions, Defendants were required to consider all relevant factors under the circumstances, including without limitation alternative investments that were available to the Plan, the recordkeeper's financial interest in placing in the Plan its proprietary investment products and other funds that paid it revenue sharing, and whether the higher costs of actively managed funds were justified by a realistic expectation of higher returns. *Braden*, 588 F.3d at 595–96; *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 360 (4th Cir. 2014); 29 C.F.R. §2550.404a-1(b); Restatement (Third) of Trusts ch. 17, intro. note; *id.* § 90 cmt. h(2).

168.    Defendants selected and retained for years Plan investment options with unreasonable expenses and poor performance relative to other investment options that were readily available to the Plan.

169.    Defendants did not determine whether each of the Plan's 340 investment options was prudent and in the interest of participants on an ongoing basis. Defendants instead allowed Fidelity to place virtually its entire lineup of 180 mutual funds in the Plan without a fiduciary having screened those options, as well as 124 other funds that paid Fidelity revenue sharing. Rather than consolidating the Plan's over 340 investment options into a core investment lineup in which prudent investments were selected for a given asset class and investment style, as is the case with most defined contribution plans, Defendants retained multiple investment options in each asset class and investment style, thereby depriving the Plan of its ability to qualify for lower cost investments, while violating the well-known principle for fiduciaries that such a high number of investment options causes participant confusion. The Plan's investment offerings included funds with expense ratios far in excess of other options available to the Plan, such as separate accounts, collective trusts, and institutional share class mutual funds. In addition, Defendants, as fiduciaries charged with operating as prudent financial experts, *Katsaros v. Cody*, 744 F.2d 270, 279 (2d Cir. 1984), knew or should have known that providing numerous actively managed duplicative funds in the same investment style would produce a "shadow index" return before accounting for their much higher fees compared to index funds, thereby resulting in significant

underperformance. Moreover, Defendants selected and retained duplicative or unnecessary investment options in small cap domestic equities, mid cap domestic equities, large cap domestic equities, sector funds, and international specialty funds that had excessive costs and poor performance relative to lower-cost investment alternatives that were readily available and appropriate plan investment alternatives for this jumbo 401(k) plan. As a result, the Plan and participants suffered millions of dollars in lost retirement savings.

170.    When Defendants finally reviewed the Plan's investment lineup in 2015, they eliminated hundreds of funds from the Plan, reducing the 340-option menu to a limited group of 37 funds, only one of which was managed by Fidelity.

171.    Because the vast majority of the Plan's 340 investment options paid significant fees to Fidelity, the use of those funds by Defendants served Fidelity's financial interest in including the funds in the Plan. Defendants' failure to engage in a prudent process for monitoring the Plan's investments and removing imprudent ones resulted in the Plan continuing to offer excessively expensive funds with inferior historical performance compared to superior low-cost alternatives that were available to the Plan.

172.    By abdicating their duty to independently assess the prudence of each option in the Plan on an ongoing basis and allowing Fidelity to dictate the Plan's investment lineup, Defendants failed to act prudently and to make investment decisions based solely on the merits of the investment funds and what was in the interest of participants, while favoring the financial interests of Fidelity in receiving

excessive revenues from Plan investments over the interest of participants. This was a breach of fiduciary duties.

173.   Total Plan losses will be determined at trial after complete discovery in this case and are continuing.

174.   Each Defendant is personally liable under 29 U.S.C. §1109(a) to make good to the Plan any losses to the Plan resulting from the breaches of fiduciary duties alleged in this Count and is subject to other equitable or remedial relief as appropriate.

175.   Each Defendant knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled the other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. §1105(a).

## COUNT II

### Breach of Fiduciary Duties—29 U.S.C. §1104(a)(1)(A) & (B)
### Unreasonable Administrative Fees

176.   Plaintiffs restate and incorporate the allegations in the preceding paragraphs.

177.   This Count alleges breach of fiduciary duties against all Defendants.

178.   Defendants were required to discharge their duties with respect to the Plan solely in the interest of, and for the exclusive purpose of providing benefits to, Plan participants and beneficiaries, defraying reasonable expenses of administering

the Plan, and acting with the care, skill, prudence, and diligence required by ERISA.

179. If a defined contribution plan overpays for recordkeeping services due to the fiduciaries' "failure to solicit bids" from other recordkeepers, the fiduciaries have breached their fiduciary duty. *George*, 641 F.3d at 798–99. Similarly, failing to "monitor and control recordkeeping fees" and "paying excessive revenue sharing" as a result of failures to "calculate the amount the Plan was paying … through revenue sharing," to "determine whether [the recordkeeper's] pricing was competitive," and to "leverage the Plan's size to reduce fees," while allowing the "revenue sharing to benefit" a third-party recordkeeper "at the Plan's expense," is a breach of fiduciary duties. *Tussey,* 746 F.3d at 336.

180. Defendants breached their fiduciary duties in by failing to engage in a prudent and loyal process for selecting and retaining Fidelity as the Plan's recordkeeper, to benefit themselves. Defendants failed to: monitor the amount of the revenue sharing and other sources of compensation received by Fidelity, determine if those amounts were competitive or reasonable for the services provided to the Plan, or use the Plan's size to reduce fees or obtain sufficient rebates to the Plan's for the excessive fees paid by participants. Moreover, Defendants failed to solicit bids from competing providers on a flat per-participant fee basis. As the Plan's assets grew, the asset-based revenue sharing payments to Fidelity grew accordingly, even though the services provided by Fidelity did not increase at a similar rate. This caused the recordkeeping compensation paid to Fidelity to exceed

a reasonable fee for the services provided, which continues to date. This conduct was a breach of fiduciary duties.

181.    By allowing Fidelity to put nearly its entire mutual fund lineup in the Plan and other non-Fidelity funds that paid it revenue sharing without scrutinizing Fidelity's financial interest in using funds that provided it a steady stream of fee revenue, Defendants failed to act in the exclusive interest of the Plan's participants

182.    As a result of these breaches of fiduciary duties, the Plan lost millions of dollars due to excessive fees. Total Plan losses will be determined at trial after complete discovery in this case, and are continuing.

183.    Each Defendant is personally liable under 29 U.S.C. §1109(a) to make good to the Plan any losses to the Plan resulting from the breaches of fiduciary duties alleged in this Count and is subject to other equitable or remedial relief as appropriate.

184.    Each Defendant knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled the other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. §1105(a).

## COUNT III

## Prohibited Transactions Between the Plan

## and Party in Interest—29 U.S.C. §1106(a)

185.   Plaintiffs restate and incorporate the allegations contained in the

preceding paragraphs.

186.   This Count alleges prohibited transactions against all Defendants.

187.   Section 1106(a)(1) prohibits transactions between a plan and a "party

in interest," and provides as follows:

> [A] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect –
>
> (C)   furnishing of goods, services, or facilities between the plan and a party in interest;
> (D)   transfer to, or use by or for the benefit of a party in interest, of any assets of the plan …

29 U.S.C. §1106(a)(1).

188.   Congress defined "party in interest" to encompass "those entities that a

fiduciary might be inclined to favor at the expense of the plan beneficiaries," such as

employers, other fiduciaries, and service providers. *Harris Tr. & Sav. Bank v.*

*Salomon Smith Barney, Inc.,* 530 U.S. 238, 242 (2000); 29 U.S.C. §1002(14)(A)–(C).

As a service provider to the Plan, Fidelity is a party in interest. 29 U.S.C.

§1002(14)(B).

189.   All Defendants were involved in causing the Plan to use Fidelity as the

Plan's recordkeeper, trustee, and primary investment provider.

190.    By causing the Plan to use Fidelity as the Plan's recordkeeper from year to year, Defendants caused the Plan to engage in transactions that they knew or should have known constituted the furnishing of services between the Plan and a party in interest, in violation of 29 U.S.C. §1106(a)(1)(C).

191.    By placing Fidelity's mutual funds in the Plan, Defendants caused the Plan to engage in transactions that they knew or should have known constituted a transfer of Plan assets to, or use by or for the benefit of a party in interest, in violation of 29 U.S.C. §1106(a)(1)(D).

192.    These transactions provided a direct benefit to Defendants and Fidelity. By selecting and retaining Fidelity to serve as the Plan's recordkeeper and including *180* Fidelity investment options in the Plan, Defendants drove substantial revenue from Plan participants' retirement savings to Fidelity and the Johnson family, while MIT received significant donations from Fidelity and the Johnson family.

193.    Under 29 U.S.C. §1109(a), Defendants are liable to restore all losses suffered by the Plan as a result of these prohibited transactions and to disgorge or provide restitution of all revenues received by Fidelity and their subsidiaries from the fees and revenue sharing payments paid by the Plan to these entities, as well as other appropriate equitable or remedial relief.

194.    Each Defendant knowingly participated in these transactions, enabled the other Defendants to engage in these transactions on an ongoing basis, and failed to make any reasonable effort under the circumstances to remedy or discontinue

these prohibited transactions. Thus, under 29 U.S.C. §1105(a), each Defendant is liable for restoring all proceeds and losses attributable to these transactions.

## COUNT IV

## Failure to Monitor Fiduciaries

195.    Plaintiffs restate and incorporate the allegations contained in the preceding paragraphs.

196.    This Count alleges breach of fiduciary duties against MIT.

197.    MIT has the ultimate responsibility to control and manage the operation and administration of the Plan, with all powers necessary to enable it properly to carry out such responsibilities. The President of MIT has the authority to appoint members of the Oversight Committee, which is responsible for the selection, monitoring, and retention of Plan investment options. MIT also had authority over the Administrative Committee and its members.

198.    A monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment and holding of plan assets, and must take prompt and effective action to protect the plan and participants when they are not.

199.    To the extent any of MIT's fiduciary responsibilities were delegated to another fiduciary, its monitoring duty included an obligation to ensure that any delegated tasks were being performed prudently and in the exclusive interest of participants.

200.    MIT breached its fiduciary monitoring duties by, among other things:

a.  failing to monitor its appointees, to evaluate their performance, or to have a system in place for doing so, and standing idly by as the Plan suffered enormous losses as a result of its appointees' imprudent actions and omissions with respect to the Plan;

b.   failing to monitor its appointees' fiduciary process, which would have alerted any prudent fiduciary to the potential breach because of the excessive administrative and investment management fees in violation of ERISA;

c.  failing to ensure that the monitored fiduciaries had a prudent process in place for evaluating the Plan's administrative fees and ensuring that the fees were competitive, including a process to identify and determine the amount of all sources of compensation to the Plan's recordkeeper and the amount of any revenue sharing payments; a process to prevent the recordkeeper from receiving revenue sharing that would increase the recordkeeper's compensation to unreasonable levels even though the services provided remained the same; and a process to periodically obtain competitive bids to determine the market rate for the services provided to the Plan;

d.  failing to ensure that the monitored fiduciaries considered the ready availability of comparable and better performing investment options that charged significantly lower fees and expenses than the Plan's investments; and

e.   failing to remove appointees whose performance was inadequate in that they continued to maintain imprudent, excessively costly, and poorly

performing investments, all to the detriment of Plan participants' retirement savings.

201.    As a consequence of these breaches of the fiduciary duty to monitor, the Plan suffered substantial losses. Had MIT discharged its fiduciary monitoring duties prudently as described above, the Plan would not have suffered these losses. Therefore, as a direct result of the breaches of fiduciary duty alleged herein, the Plan, and the Plaintiffs and the other Class members, lost tens of millions of dollars of their retirement savings.

## JURY TRIAL DEMANDED

202.    Pursuant to Fed.R.Civ.P. 38 and the Constitution of the United States, Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

For these reasons, Plaintiffs, on behalf of the Plan and all similarly situated Plan participants and beneficiaries, respectfully request that the Court:

- find and declare that Defendants have breached their fiduciary duties as described above;

- find and declare that Defendants committed prohibited transactions;

- find and adjudge that Defendants are personally liable to make good to the Plan all losses to the Plan resulting from each breach of fiduciary duty, and to otherwise restore the Plan to the position it would have occupied but for the breaches of fiduciary duty;

- determine the method by which Plan losses under 29 U.S.C. §1109(a) should be calculated;

- order the Defendants to pay the amount equaling all sums received by Fidelity as a result of recordkeeping, revenue sharing, and investment management fees;

- order Defendants to provide all accountings necessary to determine the amounts Defendants must make good to the Plan under §1109(a);

- remove the fiduciaries who have breached their fiduciary duties and enjoin them from future ERISA violations;

- surcharge against Defendants and in favor of the Plan all amounts involved in any transactions which such accounting reveals were improper, excessive and/or in violation of ERISA;

- reform the Plan to include only prudent investments;

- reform the Plan to obtain bids for recordkeeping and to pay only reasonable recordkeeping expenses;

- require the fiduciaries to select investments and service providers based solely on the merits of those selections, and not to serve the interests of service providers;

- certify the Class, appoint each of the Plaintiffs as a class representative, and appoint Schlichter, Bogard & Denton LLP as Class Counsel;

- award to the Plaintiffs and the Class their attorney's fees and costs under 29 U.S.C. §1132(g)(1) and the common fund doctrine;

- order the payment of interest to the extent it is allowed by law; and

- grant other equitable or remedial relief as the Court deems

  appropriate.

November 16, 2016                         Respectfully submitted,

                                          /s/ Jerome J. Schlichter
                                          SCHLICHTER BOGARD & DENTON LLP
                                          Jerome J. Schlichter (admitted *pro hac vice*)
                                          Michael A. Wolff (admitted *pro hac vice*)
                                          Troy A. Doles (admitted *pro hac vice*)
                                          Heather Lea (admitted *pro hac vice*)
                                          Kurt C. Struckhoff (admitted *pro hac vice*)
                                          James Redd (admitted *pro hac vice*)
                                          100 South Forth Street, Suite 1200
                                          St. Louis, MO, 63102
                                          (314) 621-6115
                                          (314) 621-5934 (fax)
                                          jschlichter@uselaws.com
                                          mwolff@uselaws.com
                                          tdoles@uselaws.com
                                          hlea@uselaws.com
                                          kstruckhoff@uselaws.com
                                          jredd@uselaws.com

                                          *Lead Counsel for Plaintiffs*

                                          Stephen Churchill, BBO#564158
                                          FAIR WORK, P.C.
                                          192 South Street, Suite 450
                                          Boston, MA 02111
                                          (617) 607-3260
                                          (617) 488-2261 (fax)
                                          steve@fairworklaw.com

                                          *Local Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 16, 2016.

/s/ Jerome J. Schlichter