United States District Court
District of Massachusetts

```
_____
                              )
Tracey, et al.,               )
                              )
        Plaintiffs,           )
                              )
        v.                    )
                              )   Civil Action No.
MIT, et al.,                  )   16-11620-NMG
                              )
        Defendants.           )
                              )
_____)
```

**MEMORANDUM & ORDER**

GORTON, J.

This case involves an alleged breach of fiduciary duty by Massachusetts Institute of Technology ("MIT" or "defendants") with respect to the supervision of its employee-sponsored defined contribution plan under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1109. Plaintiffs seek to certify a class of all MIT employees who participated in the subject retirement plan, excluding defendants, from August 9, 2010, to the date of judgment. The named plaintiffs are four current or former employees of MIT who did just that.

The underlying claims are for alleged excessive recordkeeping fees and imprudent investment lineups. Defendants do not oppose plaintiffs' request for class treatment regarding plaintiffs' claim for excessive recordkeeping fees but they do oppose class certification for the separate claims that the

- 1 -

investment lineup of the retirement plan should be altered in various ways.  The legal analysis that follows addresses only the latter dispute regarding the Plan's investments.

I.    **Background**

A.    **Factual Background**

Massachusetts Institute of Technology ("MIT") is a non-profit educational and research institution that offers its employees an employer-sponsored defined contribution plan ("the Plan").  The Plan is funded through employee contributions and matching contributions from MIT.  Under ERISA, the Plan's assets are held in a single trust for the exclusive benefit of the Plan's participants. 29 U.S.C. § 1103(a).  MIT serves as the Plan's administrator and named fiduciary with the ultimate responsibility for the management and operation of the Plan. MIT has delegated its investment-related duties to the MIT Supplemental 401(k) Plan Oversight Committee.  That committee determines the available investment options in which participants may invest their accounts.

In 1999, MIT contracted with Fidelity Investments Operations Company to serve as the Plan's recordkeeper and Fidelity Management Trust Company to serve as the Plan's Trustee.  Until 2015, plaintiffs allege that the Plan consisted of over 300 investment options primarily advised by Fidelity Management & Research Company.  Plaintiffs further allege that

defendants agreed to include almost every Fidelity mutual fund in the Plan without vetting the funds (approximately 180 options).

### 1. Excessive Administrative Fees

Fidelity is compensated for its administrative services as the Plan's recordkeeper through a revenue-sharing model by which the recordkeeper receives a percentage of the value of the mutual fund asset.  Mutual funds sometimes offer investors different share classes (categories of different kinds of securities, such as common stock or mutual fund units).  Retail share classes are marketed to individuals with relatively small amounts to invest.  Institutional share classes are offered to larger investors, such as municipal or educational retirement plans.  The different share classes are managed in the same way. Plaintiffs allege that retail share classes charge higher fees and that defendants deliberately selected more expensive options (retail share classes) rather than cheaper investment options (institutional share classes), thereby permitting Fidelity, as its recordkeeper, to receive excessive administrative fees. Moreover, from 2009 to 2014, the Plan's assets nearly doubled in value from $2 billion to $3.8 billion and the fees paid to Fidelity increased accordingly.

Plaintiffs allege that Fidelity's recordkeeping compensation was up to five times greater than the market rate

for such services, leading to a calculated loss of $12 million to the Plan.

### 2. Lineup of funds in the Plan

Prior to 2015, MIT's Plan was composed of four tiers of investment options including a "Brokerage Window" (Tier 4). Through that tier, participants could invest in the broader mutual fund market via a brokerage account.  In 2015, MIT restructured the Plan, reducing the number of options in the lineup from 340 to 37 and eliminating all but one Fidelity fund (hereafter referred to as "the consolidation").  The amounts invested in funds that no longer existed post-consolidation were reallocated to a specified option in the new lineup unless participants elected to keep their investments through the Plan's Brokerage Window for a brokerage fee.

### 3. Claims alleged by Plaintiffs

Based on the above facts, plaintiffs make the following claims: 1) defendants breached their fiduciary duty by retaining imprudent and excessive cost investment options that enriched Fidelity at the Plan's expense (Count I); 2) defendants breached their fiduciary duty by allowing Fidelity to collect excessive recordkeeping and administrative fees (Count II); 3) defendants caused the Plan to engage in prohibited transactions in violation of 29 U.S.C. § 1106(a) (Count III) and 4) defendants

failed to monitor adequately those to whom it delegated fiduciary responsibilities (Count IV).

The named plaintiffs include four current and former MIT employees and participants in the Plan.  They seek to represent the following class:

> All participants and beneficiaries of the MIT Supplemental 401(k) Plan from August 9, 2010, through the date of judgment, excluding the defendants.

Pending before this Court is plaintiffs' motion to certify the proposed class.

### B.   Procedural History

On August 31, 2017, Magistrate Judge Bowler issued a Report and Recommendation ("R&R") that recommended

1) allowing the motion to dismiss the duty of loyalty claim but denying the motion to dismiss the duty of prudence claim under Count I;

2) allowing the motion to dismiss the duty of loyalty claim but denying the motion to dismiss the duty of prudence claim under Count II;

3) denying the motion to dismiss the claim for prohibited transactions involving "assets of the plan", allowing the motion to dismiss the claims arising from mutual funds and denying the motion to dismiss the claims as to non-mutual fund options under Count III; and

4) denying the motion to dismiss for failure to monitor under Count IV.

This Court entered a Memorandum and Order in October, 2017, that accepted the Magistrate Judge's R&R with the exception that

it dismissed plaintiffs' prohibited transaction and monitoring claims under Counts III and IV.  With leave of the Court, plaintiffs filed a Second Amended Complaint ("SAC"), adding additional defendants and eliminating certain disloyalty allegations but otherwise reiterating all of the counts and theories of liability and damages that were included in the First Amended Complaint.  Plaintiffs subsequently moved to certify the class.

## II.  **Legal Standard**

Under Fed. R. Civ. P. 23, a court may certify a class only if it finds that the proposed class satisfies all the requirements of Rule 23(a) and that class-wide adjudication is appropriate for one of the reasons set forth in Rule 23(b). See Smilo v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 38 (1st Cir. 2003).

Fed. R. Civ. P. 23(a) requires that a class meet the following four criteria:

1) the class is so numerous that joinder of all members is impracticable (numerosity),

2) there are questions of law or fact common to the class (commonality),

3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality) and

4) the representative parties will fairly and adequately protect the interests of the class (adequacy).

Fed. R. Civ. P. 23(a)(1)-(4).

When reviewing Rule 23 prerequisites, a district court must
conduct a "rigorous analysis" before certifying the class.
Smilo, 323 F.3d at 38.  The Court may look behind the pleadings,
predict how specific issues will become relevant to facts in
dispute and conduct a merits inquiry to the extent that the
merits overlap with the Rule 23 criteria.  In re New Motor
Vehicles Canadian Exp. Antitrust Litig., 522 F.3d 6, 20 (1st
Cir. 2008) (citations and internal quotation marks omitted).
Courts should also be mindful that the prerequisites of
commonality, typicality and adequacy "tend to merge" in their
analysis.  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349 n.5
(2011).

In addition to satisfying Rule 23(a) requirements,
plaintiffs must meet the requirements of at least one of the
prongs under FED. R. CIV. P. 23(b).  Plaintiffs contend (and
defendants do not seem to dispute) that Rule 23(b)(1) applies.
Under subparagraph (b)(1) of Rule 23, a class may be certified
if prosecuting separate actions by or against individual class
members would create a risk of

> (A)  inconsistent or varying adjudications with respect to
> individual class members that would establish
> incompatible standards of conduct for the party
> opposing the class; or

> (B)  adjudications with respect to individual class members
> that, as a practical matter, would be dispositive of
> the interests of the other members not parties to the

individual adjudications or would substantially impair
or impede the ability to protect their interests.

FED. R. CIV. P. 23(b)(1)(A) and (B).

## III. <u>Motion to Certify Class (Docket No. 94).</u>

As noted above, defendants do not oppose class
certification with respect to plaintiffs' claims of excessive
recordkeeping fees.  They do, however, oppose plaintiffs'
separate claim regarding the prudence of the Plan's investment
lineup.

### A.    Common Methodology and Common Evidence Claims

Defendants contend that plaintiffs' claims cannot generate
common answers to drive the resolution of this litigation
because they have not identified a methodology for assessing
plaintiffs' prudence claims.

Plaintiffs respond that the common proof standard
defendants rely on applies to Rule 23(b)(3), not Rule 23(b)(1).
Furthermore, plaintiffs assert that the elements for proof of
breaches of fiduciary duties under ERISA relate to common
questions and do not require the Court to engage in individual
analysis.

The Court is not persuaded by defendants' argument that
plaintiffs must identify a methodology for assessing their
prudence claim.  To the extent that defendants are asserting
that plaintiffs must satisfy the "common proof" standard under

Rule 23(b)(3), they are mistaken because plaintiffs rely on Rule 23(b)(1) classification and thus the common proof standard does not apply.

Furthermore, defendants have not adequately explained why this Court must look to the individual participants' actions. Plaintiffs have demonstrated that there is common evidence of the alleged breach as it relates to the Plan.  They have proffered such common evidence in the form of 1) internal MIT documents, 2) the Plan's governing document and 3) the Plan's enrollment guides.

Accordingly, defendants have not shown that plaintiffs must identify common proof or evidence at the class certification stage.

### B.   FED. R. CIV. P. 23(a) Requirements

In addition to asserting that plaintiffs have not met their burden of proving common evidence, defendants contend that plaintiffs have not met Rule 23 requirements generally.  While Rule 23(a) describes the elements as individual criteria, this Court recognizes that the analysis with respect to the commonality, typicality and adequacy prongs tends to merge. Dukes, 564 U.S. at 349 n.5.

#### 1. Numerosity

In order to meet the numerosity requirement, plaintiffs must demonstrate that the class is so numerous that joinder

would be "impracticable". FED. R. CIV. P. 23(a)(1).  This prong is satisfied here because plaintiffs allege that the proposed class has at least 16,000 members and that joinder of all such claimants is impracticable.  Defendants do not dispute that assertion.

### 2. Commonality

To satisfy commonality, there must be questions of law or fact common to the class. FED. R. CIV. P. 23(a)(2).  The commonality requirement under Rule 23(a) is a "low hurdle". Swack v. Credit Suisse First Boston, 230 F.R.D. 250, 258 (D. Mass. 2005).  Even a single common question can satisfy this element. Dukes, 564 U.S. at 359.  Plaintiffs allege that because ERISA breach of fiduciary duty actions relate to the duties owed to the Plan as a whole, commonality is quite likely to be satisfied.  They further assert that the evidence at issue includes defendants' process for monitoring fees and investments of the Plan and that such factual issues do not depend on the circumstances of any individual Plan participant.

Notwithstanding the arguments defendants raise with respect to adequacy, this Court finds that, because plaintiffs have shown that their claims relate to defendants' conduct of the Plan, commonality has been sufficiently pled.

### 3. Typicality

The typicality requirement is satisfied when the claims or defenses of the parties are typical of the claims or defenses of the class. FED. R. CIV. P. 23(a)(3).  Typicality does not require that all putative class members share "identical claims". Garcia v. E.J. Amusements of N.H., Inc., 98 F. Supp. 3d 277, 289 (D. Mass. 2015) (citation omitted).  Rather, typicality is met when the representative's claims

> arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members, and . . . are based on the same legal theory.
>
> Garcia-Rubiera v. Calderon, 570 F.3d 443, 460 (1st Cir. 2009) (citation omitted).

Plaintiffs allege that typicality is met here because all class members assert an identical legal theory of imprudence on behalf of the Plan under § 1132(a)(2).  Plaintiffs further aver that variable damages among class members does not destroy typicality.

Several other district courts have found that differences in damages is of "little consequence to the typicality determination when the common issue of liability is shared". In re Pharm. Indus. Average Wholesale Price Litig., 230 F.R.D. 61, 78 (D. Mass. 2005) (quoting In re Lorazepam & Clorazepate Antitrust Litig., 202 F.R.D. 12, 28 (D.D.C. 2001)); see also Sacerdote v. New York Univ., No. 16-CV-6284 (KBF), 2018 WL

840364, at *3 (S.D.N.Y. Feb. 13, 2018) (holding that each named plaintiff is asserting a claim on behalf of the Plans and that evidence of defendants' management would be the same for all). Plaintiffs here, just as in Sacerdote, assert that all of their claims relate to defendants' alleged imprudent management of the Plan.

Notwithstanding the arguments defendants raise with respect to the adequacy element, this Court finds that because plaintiffs have shown that their claims relate to defendants' conduct of the Plan, the typicality prong has been properly pled.

### 4. Adequacy

The element of adequacy is satisfied if 1) there is no conflict between the interest of the named plaintiffs and the class members and 2) counsel chosen by the named plaintiffs are qualified and able to litigate the claims vigorously. S. States Police Benevolent Ass'n v. First Choice Armor & Equip., Inc., 241 F.R.D. 85 (D. Mass. 2007) (citing Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985)).

In their argument, defendants have put the majority of their "eggs" in the adequacy "basket". Given that the analysis of commonality, typicality and adequacy are generally intended to merge, this Court assumes that defendants' reliance on

inadequacy relates to the elements of commonality and typicality
as well.

### 1. Intra-class Conflict

Plaintiffs have promulgated two general imprudence
theories.  First, they claim that defendants should have
consolidated the options in the Plan before 2015 and that
failure to do so caused the Plan to incur losses (Consolidated
Lineup theory).  Plaintiffs alternatively allege that absent
consolidation, defendants acted imprudently by failing to select
the less expensive institutional share classes and failing to
take advantage of the Plan's size to waive investment minimums
(Same Lineup theory).  Under either theory, plaintiffs contend
that all class members share a common interest on behalf of the
Plan to recover costs incurred as a result of defendants'
imprudence.  Plaintiffs further submit that 1) the potential for
conflict with respect to the alternative theories does not
overcome the common interest of class members and 2) the thrust
of this case depends upon whether defendants breached their
fiduciary duty to the Plan as a whole, not the investment
decisions of the individual participants and their subsequent
damages claims.

Defendants rejoin that plaintiffs' theories of liability are internally inconsistent and mutually exclusive.[1]  Defendants suggest that consolidation benefitted some members in the proposed class and harmed others and that pursuing one theory over the other creates intra-class conflicts.  Furthermore, defendants explain that plaintiffs cannot concurrently claim under its Same Lineup theory that 1) defendants should have waived investment minimums when such a waiver could only occur without consolidation or 2) that defendant should have selected less expensive shares when, by definition, there were not any. In sum, defendants claim that the two theories of liability are mutually exclusive and that plaintiffs must choose one or the other to pursue.

Plaintiffs, as plan participants, have a statutory right to bring a derivative action on behalf of the plan under ERISA. LaRue v. DeWolff, Boberg & Associates, Inc., 552 U.S. 248, 254 (holding that § 1109(a) of ERISA concerns the misuse of plan assets generally, as opposed to the rights of individual beneficiaries).  In pursuing this ERISA action as a class, however, plaintiffs must show that the purported intra-class conflict is not so "substantial" as to "overbalance the common

---

[1] Defendants also refute plaintiffs' argument that the large number of Plan options confused participants but that issue was previously disposed of and will not be addressed here.

interests of the class members as a whole". Matamoros v.
Starbucks Corp., 699 F.3d 129, 138 (1st Cir. 2012) (finding that
the named plaintiffs could still represent the class because an
interest of certain putative class members in maintaining an
unlawful policy is not a reason to deny class certification).

Although some class members may not benefit if the named
plaintiffs choose one theory of liability over the other, those
who benefitted from pre-consolidation investments would not be
required to disgorge profits from investments that are later
found to have been imprudent.  Furthermore, focusing on the
individuals who benefitted from the allegedly imprudent
investments does not affect the overarching legal issue of
whether such investments constituted a breach of defendants'
fiduciary duty. See Matamoros, 699 F. 3d at 138 (holding that
only conflicts that are "fundamental to the suit" and go to the
"heart of the litigation" prevent satisfying the adequacy
requirement); see also Sacerdote v. New York Univ., No. 16-CV-
6284 (KBF), 2018 WL 840364 (S.D.N.Y. Feb. 13, 2018) (finding
that if the inclusion of certain funds is a breach of fiduciary
duty, no participant would have a legal interest in continuing
to invest in a plan that was adjudged as imprudent); Clark v.
Duke Univ., No. 1.16-CV-1044, 2018 WL 1801946 (M.D.N.C. Apr. 13,
2018) (because a fund would be removed only if it violated

ERISA, class members have no legally cognizable interest in maintaining the removed funds and no conflict exists).

Thus, because the crux of this case hinges on whether defendants acted imprudently with respect to the Plan and not the investments of individual participants, this Court finds no substantial intra-class conflict in the proposed class.

### 2. Adequate counsel

Defendants do not dispute that plaintiffs' counsel is qualified and able to litigate the claims vigorously under Rule 23(a)(4), so that is not an issue in this case.

Because plaintiffs have shown that no intra-class conflict exists and that counsel can litigate the claims in this case, the adequacy element is satisfied.

### C.   Other Rule 23 Issues

### 1. Investment-Specific Proof

Plaintiffs have asserted that defendants' failure to consolidate assets prevented the Plan from accessing less expensive institutional share classes, trusts and separate accounts.  Defendants respond that 1) plaintiffs have conceded that investment managers do not always waive investment minimums for institutional share classes and therefore 2) the Court would have to consider a variety of factors as to each fund thus eliminating commonality and typicality.

Plaintiffs, in their reply, explain that it is industry practice to waive investment minimums for large 401(k) plans that have over a billion dollars in total assets.  They assert they will proffer such evidence in this case.  Under the circumstances, this Court finds that the commonality and typicality prongs have been satisfied.

### 2. Performance-based Challenges to Investment Options

Defendants submit that plaintiffs have offered no reason why a prudent fiduciary would remove an option based on its performance relative to a different, unavailable asset class. At oral argument, plaintiffs responded that defendants could have reviewed the market, hired a consultant or researched other options when determining the lineup for the asset class. Because defendants were not making investment decisions in a vacuum, this Court finds that plaintiffs have satisfied Rule 23(a) requirements in this regard.

### D.   FED. R. CIV. P. 23(b)(1) requirements

Plaintiffs seek certification under Rule 23(b)(1), noting that an action for a breach of trust or other fiduciary duty to a large class of beneficiaries is a classic example of cases typically certified under Rule 23(b)(1)(B).  In light of the derivative nature of claims under § 1132(a)(2) of ERISA, this Court finds that plaintiffs' claims here are "paradigmatic

examples of claims appropriate for certification as a Rule 23(b)(1) class". Hochstadt v. Boston Sci. Corp., 708 F. Supp. 2d 95, 105 (D. Mass. 2010) (citing In re Schering Plough Corp. ERISA Litig., 589 F. 3d 585, 604 (3d Cir. 2009)).

### E. Supplemental Briefing

The parties have submitted supplemental briefing following the recent decision in the Northern District of Illinois in Divane v. Northwestern Univ., 2018 WL 2388118 (N.D. Ill. May 25, 2018). The Divane decision is an order on a motion to dismiss not for class certification and is therefore not directly analogous to defendants' intra-class conflict argument. The Court finds that this additional briefing is irrelevant to the claims at hand.

## IV. Conclusion

Three other district courts have allowed class certification in similar ERISA-based plan claims against university fiduciaries. See Sacerdote v. New York Univ., No. 16-CV-6284 (KBF), 2018 WL 840364 (S.D.N.Y. Feb. 13, 2018)); Henderson v. Emory Univ., No. 16-CV-2920 (N.D. Ga. Sep. 13, 2018); Clark v. Duke Univ., No. 1.16-CV-1044, 2018 WL 1801946 (M.D.N.C. Apr. 13, 2018). The potential intra-class conflict here is insufficient to overcome the conclusion that the same result is warranted in this case.

**ORDER**

For the foregoing reasons, plaintiffs' motion to certify the class (Docket No. 94) is **ALLOWED**.

**So ordered.**

_/s/ Nathaniel M. Gorton_____
Nathaniel M. Gorton
United States District Judge

Dated October 19, 2018