# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID B. TRACEY, DANIEL GUENTHER, MARIA T. NICHOLSON, AND CORRINNE R. FOGG, individually and as representatives of a class of participants and beneficiaries on behalf of the MIT Supplemental 401(k) Plan, <br><br> *Plaintiffs*, <br><br> v. <br><br> MASSACHUSETTS INSTITUTE OF TECHNOLOGY, THE MIT SUPPLEMENTAL 401(K) PLAN OVERSIGHT COMMITTEE, THE ADMINISTRATIVE COMMITTEE, ISRAEL RUIZ, ALISON ALDEN, MARC BERNSTEIN, LAWRENCE CANDELL, GLENN DAVID ELLISON, MICHAEL HOWARD, MARTIN KELLY, S.P. KOTHARI, ROBERT C. MERTON, GUNTHER ROLAND, LORRAINE A. GOFFE-RUSH, GLEN SHOR, PAMELA WELDON, THOMAS M. WIEAND, and BARTON ZWIEBACH, <br> *Defendants*. | No. 1:16-cv-11620-NMG <br><br> (Leave to file granted 8/16/19) |

**REPLY IN SUPPORT OF DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

I. **PLAINTIFFS' DISMISSED LOYALTY THEORIES ARE IRRELEVANT TO THE SUMMARY JUDGMENT ANALYSIS, WHICH IS GOVERNED BY AN OBJECTIVE STANDARD**

Plaintiffs devote much of their opposition to arguments that are nothing more than a distraction from the undisputed facts that compel entry of summary judgment for Defendants. Plaintiffs' brief begins with three pages of attacks on the character and motivations of the senior MIT faculty and administrators who volunteered their time to serve as Plan fiduciaries, ECF No. 223 ("Opp.") at 1-3, and repeatedly returns to that theme, *e.g.*, *id.* at 10-12, 14-15. These contentions have no merit, but, more important, they are irrelevant to any claim remaining in this case. The Court dismissed Plaintiffs' speculative loyalty claim nearly two years ago, ECF No. 79 at 5-6, and the Court recently rejected Plaintiffs' eleventh-hour attempt to revive that claim, ECF No. 232.

Plaintiffs nonetheless continue to cling to their disloyalty narrative, arguing that "evidence regarding Defendants' motivation is relevant to whether they breached their fiduciary duties under the duty of prudence, which requires an examination of the totality of the circumstances." Opp. 1 n.1. But unlike the duty of loyalty, which "is analyzed under a subjective standard where what matters is *why* the defendant acted as he did," prudence "is an objective standard ... that focuses on the fiduciary's conduct." *Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685, 700-01, 702-03 (W.D. Mo. 2019) (quotations omitted); *see Bunch v. W.R. Grace & Co.*, 555 F.3d 1, 7 (1st Cir. 2009). The question is "whether the fiduciary employed proper methods to investigate and evaluate decisions," *Ellis v. Fid. Mgmt. Tr. Co.*, 257 F. Supp. 3d 117, 128-29 (D. Mass. 2017) (quotation omitted), *aff'd*, 883 F.3d 1 (1st Cir. 2018)—i.e., whether they acted as a hypothetical prudent fiduciary would have in the circumstances. "[T]he subjective intentions of the fiduciary are irrelevant." *In re Wells Fargo ERISA 401(k) Litig.*, 331 F. Supp. 3d 868, 874-75 (D. Minn. 2018); *see Sacerdote v. NYU*, 2017

1

WL 3701482, at *9 (S.D.N.Y. Aug. 25, 2017) (duty of loyalty "is analytically distinct" from prudence). A prudence claim is not a loyalty claim, and Plaintiffs' speculative assertions that Defendants improperly favored Fidelity's interests have no place in the summary judgment analysis.

## II. THE COURT SHOULD GRANT SUMMARY JUDGMENT FOR DEFENDANTS ON PLAINTIFFS' PRUDENCE CLAIMS

### A. Plaintiffs' Proffered Experts Do Not Insulate Them From Summary Judgment

Plaintiffs attempt to short-circuit the summary judgment inquiry with the sweeping assertion that, "[w]hen the moving party does not challenge the admissibility of expert opinion [offered in opposition to the motion], disputes between experts create issues of fact" that necessarily preclude summary judgment. Opp. 6. But, contrary to Plaintiffs' suggestion, "[a]n expert's report is not a talisman against summary judgment." *Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of N.Y.*, 735 F. Supp. 2d 42, 65 (S.D.N.Y. 2010) (quotation omitted); *accord Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll. (Harvard Corp.)*, 346 F. Supp. 3d 174, 194 (D. Mass. 2018) ("competing expert reports alone do not necessarily preclude summary judgment"). That is true regardless of whether the party seeking summary judgment has separately challenged at that stage of the case the admissibility of the opinions on which the non-moving party relies.

"As the Supreme Court itself explained in *Daubert*, even if expert evidence is not barred under Rule 702, 'in the event the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable [fact finder] to conclude that the position more likely than not is true, the court remains free … to grant summary judgment.'" *Longtin v. Organon USA, Inc.*, 363 F. Supp. 3d 186, 195 (D. Mass. 2018) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993)). Courts regularly apply that rule in


granting summary judgment notwithstanding the opposing party's reliance on expert opinions whose admissibility is not presently challenged.[1] Of particular relevance here, expert testimony "fails to create a genuine issue of material fact when the expert offers an opinion that courts have rejected as a matter of law." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 235 F.3d 1184, 1192 (9th Cir. 2000) (quotation and emphasis omitted); *see Straumann Co. v. Lifecore Biomedical Inc.*, 278 F. Supp. 2d 130, 135 (D. Mass. 2003) (expert opinion "based on an erroneous legal standard … cannot defeat summary judgment").

Plaintiffs are accordingly wrong in characterizing Defendants' arguments as an invitation for "the Court to make improper credibility determinations" at the summary judgment stage. Opp. 6; *see id.* at 7-8. The point instead is that, even if considered admissible and construed in the light most favorable to Plaintiffs, those opinions are legally insufficient to establish an ERISA violation—a determination the Court undoubtedly *can* make at this juncture.

Take, for example, Plaintiffs' challenge to the inclusion of a market-spanning set of regional and sector funds in the broad-choice Investment Window. Plaintiffs' expert Gerald Buetow asserts that regional and sector funds are per se inappropriate for any part of a defined-contribution-plan menu (even for a menu of supplemental options) because they are "excessively risky and volatile." Opp. 7; *see* ECF No. 207-13 (Buetow Report) ¶¶ 92-101. But, as Defendants have explained, courts have consistently rejected the contention that ERISA imposes a per se rule barring fiduciaries from offering regional and sector funds even in core plan menus.

---

[1] *See, e.g.*, *Longtin*, 363 F. Supp. 3d at 195 (summary judgment appropriate in light of "fatal gaps" in plaintiff's expert's analysis "and thus [p]laintiff's evidence"); *Tropix, Inc. v. Lumigen, Inc.*, 851 F. Supp. 25, 27 (D. Mass. 1994) (expert's "unsupported conclusions … although doubtless admissible" were "insufficient … in view of the overwhelming evidence to the contrary," and "an impartial fact-finder could not find for the plaintiff on the basis of the evidence in th[e] case").

ECF No. 205 ("Mem.") at 11 (citing cases); *see also Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 360 (4th Cir. 2014) (noting that DOL has "expressly rejected the suggestion that a particular investment can be deemed per se prudent or per se imprudent based on its level of risk"). Indeed, the court in *Tibble v. Edison International*, 639 F. Supp. 2d 1074 (C.D. Cal. 2009), granted summary judgment for the defendants in the face of similar allegations of imprudence, noting that "sector funds are a common component of many defined contribution plans." *Id.* at 1117. Plaintiffs' flawed expert opinion, which would hold Defendants liable for failing to comply with a "rule" the law does not impose, presents no barrier to summary judgment on this claim.[2]

Dr. Buetow's opinion that the Committee committed a fiduciary breach by not automatically eliminating from the Investment Window any fund whose trailing three-year performance fell below its benchmark at any point in the prior ten years (ECF No. 206 ("SUMF") ¶ 63) is also in conflict with established case law. Courts have repeatedly held that ERISA does not require fiduciaries to reflexively remove even core plan investment options based on short-term dips in performance. *See* Mem. 12-13 (citing cases). Dr. Buetow's unyielding three-year performance rule is also lacking in factual support as a standard for fiduciary conduct: Plaintiffs offer no evidence that any plan fiduciaries actually follow that

---

[2] Dr. Buetow's categorical opinion regarding regional and sector funds is so obviously flawed that Plaintiffs themselves attempt to back away from it, asserting that the problem is that the Investment Window included "sector and regional funds *without a plan specific justification for their inclusion*." Opp. 15 (emphasis added); *see id.* at 17. But Dr. Buetow offered no such qualifications, and Plaintiffs must come forward with more than their "alleg[ations]" (Opp. 17) to survive summary judgment. In any event, the undisputed facts show that there *was* a "plan specific justification" for offering regional and sector funds in the Investment Window: to provide broad choice to those participants who had the desire and ability to evaluate individual investment options and customize their supplemental retirement portfolios. *See* SUMF ¶¶ 18-19, 22.

4

purported rule, an omission that is underscored by the refusal of Plaintiffs' fiduciary practice expert, Wendy Dominguez, to endorse it, SUMF ¶ 65.  Nor do Plaintiffs deny that *every single one* of the most popular actively managed funds in 401(k) plans today would be disqualified under Dr. Buetow's rule, SUMF ¶ 67—such that acceptance of Dr. Buetow's opinion would compel the improbable conclusion that the fiduciaries of every plan that offered any of those funds breached ERISA's duty of prudence.  Summary judgment principles do not require the Court to close its eyes to reality when evaluating the sufficiency of the evidence cited in opposition to the motion.

The other investment-related theories pressed by Plaintiffs' experts suffer from similar deficiencies, *see* Mem. 13-15, as does the testimony offered by Plaintiffs' recordkeeping expert, Martin Schmidt.  Mr. Schmidt's central claim is that plan fiduciaries are *always* required to solicit periodic competitive bids to ensure that administrative fees are reasonable, and that it is *always* a fiduciary breach not to do so.  *See* ECF No. 207-17 (Schmidt Report) ¶¶ 74-88; Opp. 11-12.  That is not the law:  ERISA does not impose an absolute obligation to engage in competitive bidding in any and all circumstances.  *See White v. Chevron Corp.*, 2016 WL 4502808, at *14 (N.D. Cal. Aug. 29, 2016); *see also Chao v. Merino*, 452 F.3d 174, 182 (2d Cir. 2006) ("ERISA does not impose a duty to take any particular course of action if another approach seems preferable").

*George v. Kraft Foods Global, Inc.*, 641 F.3d 786 (7th Cir. 2011), is not to the contrary. Not only had the defendants in *George* not conducted an RFP, but they also "had not renegotiated their recordkeeping arrangement for more than fifteen years."  *White*, 2016 WL 4502808, at *14.  Here, by contrast, it is undisputed that Defendants secured significant fee reductions in the class period, obtaining revenue credits that reduced effective fees and

5

negotiating a flat $33-per-participant fee effective in early 2014 that even Plaintiffs' expert agrees was reasonable.  SUMF ¶¶ 98-100.  Mr. Schmidt's opinion is insufficient to carry Plaintiffs' burden of proving a fiduciary breach in these circumstances.  *Cf. Troudt v. Oracle Corp.*, 2019 WL 1006019, at *8 (D. Colo. Mar. 1, 2019) (granting summary judgment for defendants where undisputed evidence showed that defendants secured fee concessions over class period, and rejecting plaintiffs' reliance on an "artificially narrow conception of what 'negotiation' must look like").

### B. Plaintiffs' Remaining Arguments Cannot Surmount The Undisputed Facts

What little argument Plaintiffs offer beyond their irrelevant insinuations of disloyalty and legally insufficient expert opinions also fails to create any material issue of fact.  Plaintiffs, for example, assert that Defendants "did not monitor" the funds in the Investment Window.  Opp. 15; *see id.* at 14.  Yet Plaintiffs do not dispute Defendants' showing that the Committee *did* monitor the Investment Window in precisely the way MIT's outside ERISA counsel advised was appropriate in a 2007 memorandum.  SUMF ¶¶ 42-45, 53.  Plaintiffs criticize that oversight process as inadequate, *see* Opp. 16, but in doing so they ignore the Investment Window's distinct role within the Plan's multi-tiered pre-2015 lineup—a factor that was central to counsel's advice that the Committee's approach satisfied its fiduciary obligations, *see* SUMF ¶ 42-45.[3]  And Plaintiffs simply pretend that the reorganization of the Plan's investment lineup that was set in motion by new legal advice the Committee received in 2010 never happened, asserting that "all conversation regarding removing the 'Investment Window' ceased" in 2010, Opp. 15, despite the undisputed fact that the Committee *did* remove the Investment Window in 2015 after completing

---

[3] Plaintiffs emphasize that the Committee did not *remove* funds from the Investment Window menu based on this reporting, Opp. 15, but their only evidence that Defendants *should have* removed any fund is Dr. Buetow's legally inadequate opinions.  *See supra* at 3-5; Mem. 11-15.

6

a careful, multi-stage investigation that leveraged inside and outside experts, SUMF ¶¶ 50-52, 54.

Plaintiffs' effort to generate a material factual dispute to save their administrative fee claim is similarly anemic. Plaintiffs contend that Defendants allowed the Plan's recordkeeping fees to grow unchecked over the class period, *see* Opp. 9-11, but they are only able to sustain that narrative by ignoring undisputed evidence that the Plan's fiduciaries engaged with Fidelity on fees throughout the class period—both directly and through their consultant, Mercer— securing a concededly reasonable rate of $33 per participant in 2014, SUMF ¶ 99, and obtaining millions of dollars in revenue credits from Fidelity for the prior period, SUMF ¶ 98. *Tussey v. ABB, Inc.*, 746 F.3d 327 (8th Cir. 2014), did not involve a similar record. *Contra* Opp. 9 (asserting that "Defendants' conduct is indistinguishable from the defendant in *Tussey*"). The defendants in *Tussey* "failed to monitor recordkeeping costs" and "failed to negotiate rebates for the [p]lan." *Tussey*, 746 F.3d at 332. They also violated the plan's IPS, which "specifically require[d] use of a share class that has the least expenses," *Tussey v. ABB, Inc.*, 2012 WL 1113291, at *28 (W.D. Mo. Mar. 31, 2012), and "agreed to pay to Fidelity an amount that exceeded market costs for [p]lan services in order to subsidize … corporate services provided to ABB by Fidelity" that did not benefit the plan, *Tussey*, 746 F.3d at 333. The facts of this case are markedly different.

### III. UNDISPUTED FACTS ESTABLISH THAT THE PLAN'S INVESTMENT IN NON-MUTUAL FUND OPTIONS OFFERED BY FIDELITY WAS PERMITTED UNDER ERISA § 408(b)(8)

Plaintiffs also fail to identify any material factual dispute preventing entry of summary judgment for Defendants on Plaintiffs' prohibited transaction claim. As explained in Defendants' motion, Plaintiffs cannot succeed on that claim because the non-mutual fund options in the Plan's lineup during the class period indisputably satisfied the conditions of the prohibited-

7

transaction exemption in ERISA § 408(b)(8), 29 U.S.C. § 1108(b)(8).  Mem. 19-20.  Plaintiffs complain that "Defendants rely entirely on Dr. Wermers' opinion" to establish the reasonableness of the fees charged by the non-mutual fund options, Opp. 20, but Plaintiffs do not actually dispute that those fees were less than or comparable to the fees of similar investments, and they certainly offer no evidence to that effect, *see id*.  Plaintiffs instead assert that revenue sharing from the Plan's non-mutual fund options "contribute[d]" to allegedly "excessive and unreasonable" Plan "recordkeeping and administrative" fees.  *Id*.  But § 408(b)(8) asks in relevant part only "whether more than reasonable compensation was paid *in the form of investment management fees*."  *Dupree v. Prudential Ins. Co. of Am.*, 2007 WL 2263892, at *41 (S.D. Fla. Aug. 7, 2007) (emphasis added), *as amended* (Aug. 10, 2007); *see* DOL Adv. Op. No. 2005-09A, 2005 WL 1208696, at *4 (May 11, 2005) ("Congress anticipated that the term 'reasonable compensation' [in ERISA § 408(b)(8)] would apply to the purchase or sale of an interest in a collective investment fund by a plan and to amounts to be paid by the plan for investment management of such assets.").  Plaintiffs' attempt to avoid summary judgment by grafting additional requirements onto the statutory exemption must be rejected.

## CONCLUSION

For the foregoing reasons and those previously stated, Defendants are entitled to summary judgment on each of Plaintiffs' claims.

Dated:  August 15, 2019

Respectfully submitted,

*/s/ Shannon M. Barrett*
Shannon M. Barrett (*pro hac vice*)
Brian D. Boyle (*pro hac vice*)
Gregory F. Jacob (*pro hac vice*)
Meaghan Vergow (*pro hac vice*)
Deanna M. Rice (*pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.

Washington, DC, 20006
T: 202-383-5300
F: 202-383-5414
sbarrett@omm.com
bboyle@omm.com
gjacob@omm.com
mvergow@omm.com
derice@omm.com

Catalina J. Vergara (*pro hac vice*)
Natasha S. Fedder (*pro hac vice*)
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071-2899
T: 213-430-6000
F: 213-430-6407
cvergara@omm.com
nfedder@omm.com

Alison V. Douglass (BBO # 646861)
Roberto M. Braceras (BBO# 566816)
GOODWIN PROCTER, LLP
100 Northern Avenue
Boston, MA 02210
T: 617-570-1676
F: 617-523-1231
adouglass@goodwinlaw.com
rbraceras@goodwinlaw.com

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that this document was filed through the Electronic Case Filing (ECF) system on August 16, 2019, and thus copies will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Shannon M. Barrett*
Shannon M. Barrett (*pro hac vice*)

*Attorney for Defendants*