UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
DAVID B. TRACEY, et al.,                                          :

               Plaintiffs,                     :       Civil Action
   v.                                                           No. 16-11620-NMG
                                                 :
MASSACHUSETTS INSTITUTE OF
TECHNOLOGY, et al.,                                               :

               Defendants.                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OF LAW OF NON-PARTIES ABIGAIL P. JOHNSON
AND FMR LLC IN SUPPORT OF THEIR MOTION FOR A PROTECTIVE ORDER**

 

James R. Carroll
Mary E. Grinman
SKADDEN, ARPS, SLATE
 MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
mary.grinman@skadden.com

*Counsel for Non-Parties*
Dated: August 19, 2019                *Abigail P. Johnson and FMR LLC*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND .............................................................................................................................3

ARGUMENT ...................................................................................................................................4

I. MS. JOHNSON IS NOT AN APPROPRIATE
TRIAL WITNESS BECAUSE SHE HAS NO PERSONAL
KNOWLEDGE OF ANY FACTS RELEVANT TO THIS ACTION. ...............................5

II. PLAINTIFFS SEEK MS. JOHNSON'S TESTIMONY
EXCLUSIVELY TO HARASS HER AND TO GARNER MEDIA ATTENTION...........8

III. A FIDELITY EMPLOYEE WHO HAS BROAD
PERSONAL KNOWLEDGE OF FACTS RELEVANT TO PLAINTIFFS'
CASE IS ALSO ON PLAINTIFFS' WITNESS LIST AND WILL TESTIFY..................10

CONCLUSION ...............................................................................................................................11

# **TABLE OF AUTHORITIES**

**CASES** **PAGE(S)**

*Amazon.com, Inc. v. Commissioner of Internal Revenue*,
    108 T.C.M. (CCH) 588 (T.C. 2014) ..................................................................5, 8, 11

*Celerity, Inc. v. Ultra Clean Holding, Inc.*,
    No. C 05-4374 MMC (JL), 2007 WL 205067 (N.D. Cal. Jan. 25, 2007).........................10

*Dauth v. Convenience Retailers, LLC*,
    No. C 13-047 MEJ, 2013 WL 4103443 (N.D. Cal. Aug. 12, 2013) ..............................5, 10

*Koken v. Lexington Insurance Co.*,
    No. 04-2539, 2005 WL 6051364 (E.D. Pa. July 18, 2005) ...............................................10

*Mulvey v. Chrysler Corp.*,
    106 F.R.D. 364 (D.R.I. 1985) ...........................................................................................10

*RFF Family Partnership, LP v. Link Development, LLC*,
    68 F. Supp. 3d 260 (D. Mass. 2014) ...................................................................................8

*Rissman, Hendricks & Oliverio, LLP v. MIV Therapeutics, Inc.*,
    No. 11-10791-MLW, 2011 WL 5025206 (D. Mass. Oct. 20, 2011) ..................................4

*Steward Health Care System LLC v. Southcoast Health System, Inc.*,
    No. 15-14188-MLW, 2016 WL 11004353 (D. Mass. June 15, 2016)................................4

*Treppel v. Biovail Corp.*,
    No. 03 CIV. 3002 PKL JCF, 2006 WL 468314 (S.D.N.Y. Feb. 28, 2006).............5, 10, 11

**RULES**

Federal Rule of Civil Procedure 11 ...........................................................................................6, 7

Federal Rule of Civil Procedure Rule 26..................................................................................1, 4

Supreme Judicial Court Rule 3:07: Rule of Professional Conduct 3.6 .........................................10

Local Rule of the United States District Court for the District of Massachusetts 83.2.1(h) .........10

**PRELIMINARY STATEMENT**

On August 7, 2019, Plaintiffs served a witness list naming non-party Abigail Johnson -- the Chairman and Chief Executive Officer ("CEO") of FMR LLC ("Fidelity") -- as the first "will call" witness. (Declaration of James R. Carroll in Support of Non-Parties Abigail P. Johnson's and FMR LLC's Motion For A Protective Order ("Carroll Decl."), Ex. 1, Plaintiffs' Witness List.) Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure and the Court's inherent equitable powers to ensure full and fair proceedings, Ms. Johnson and Fidelity respectfully request that this Court issue a protective order prohibiting Ms. Johnson from being subpoenaed because (i) Ms. Johnson has no relevant testimony to offer in this case, (ii) Plaintiffs' effort to obtain Ms. Johnson's trial testimony is a transparent attempt to harass Ms. Johnson and to attract media attention, and (iii) a Fidelity employee who does have broad knowledge regarding the facts at issue in this case is also listed on Plaintiffs' witness list and will testify.[1]

Neither Ms. Johnson nor Fidelity are (or ever were) parties to this action, and the record in this case establishes that Ms. Johnson has no connection to the Massachusetts Institute of Technology ("MIT") Supplemental 401(k) Plan (the "Plan"). This Court previously rejected Plaintiffs' attempts to allege a duty of loyalty claim based on speculative allegations of a purported connection between the Plan and Ms. Johnson, holding that those allegations were "untenable," and dismissing them in 2017. More recently, after years of discovery -- during which Plaintiffs ***never even sought to depose Ms. Johnson*** -- Plaintiffs moved to amend their

---

[1]  Non-parties Abigail P. Johnson and Fidelity bring this motion now, in advance of Plaintiffs' service of a trial subpoena on Ms. Johnson, in order to avoid expedited motion practice on the verge of trial, which would be inconvenient for the Court, for the parties, and for Ms. Johnson.

complaint to add the duty of loyalty claim back into the case. The Court rejected that proposed amendment on August 8, 2019, but Plaintiffs have refused to remove Ms. Johnson from the witness list. (Non-Parties Abigail P. Johnson's and FMR LLC's Motion For A Protective Order at 1.)

In their papers seeking leave to amend, Plaintiffs admitted that discovery turned up *no evidence* that Ms. Johnson ever acted to exert influence on the Plan's decision-making: "[w]ith the benefit of discovery, Plaintiffs learned that Abigail Johnson did not have to exert any influence" and "whether Abigail Johnson knew that Defendants made decisions to curry her favor is [] irrelevant." Of course Plaintiffs have no evidence: Ms. Johnson had no involvement with the Plan. On the other hand, Plaintiffs' witness list also names a different Fidelity employee -- John Harrington, Fidelity's relationship manager for the Plan -- who does have broad knowledge of facts relevant to the case. Mr. Harrington will testify at trial.

That Plaintiffs seek Ms. Johnson's testimony only for the purpose of harassment is evident from their conduct. Just days before Plaintiffs' counsel listed Ms. Johnson as a trial witness, and more than two months *after* admitting that they had no evidence of Ms. Johnson's involvement with the Plan, Plaintiffs issued a press release titled "**MIT Squanders Workers' Retirement Savings in Payments to Abigail Johnson and Fidelity in Return for Donations, Says Schlichter Bogard & Denton**," making reckless statements regarding Ms. Johnson and Fidelity that Plaintiffs had previously admitted were unsupported by any facts implicating Ms. Johnson. (Carroll Decl., Ex. 2, Plaintiffs' Press

Release (Aug. 5, 2019).)[2]  Naming Ms. Johnson on their witness list is merely Plaintiffs' most recent attempt to garner media attention, and this Court should not allow it to stand.

## BACKGROUND

Below is a chronology of relevant events leading up to this motion.

| Date | Event |
| --- | --- |
| August 9, 2016 | Plaintiffs file their first complaint, alleging, among other things, that Defendants breached their duty of loyalty by "dr[iving] revenue from participants' retirement assets to Fidelity and the Johnson family, while receiving donations from the Johnson family and Fidelity." (Complaint at ¶¶ 57, 126, *Tracey v. MIT et al.*, No. 16-11620 (D. Mass. Aug. 9, 2016) ("*Tracey*"), ECF No. 1.) |
| November 16, 2016 | Plaintiffs file an amended complaint, continuing to assert breach of loyalty claims against Defendants related to Fidelity and Ms. Johnson. (Amended Complaint at ¶¶ 85, 108, 172, 181, *Tracey*, ECF No. 32.) |
| August 31, 2017 | Magistrate Judge Bowler recommends dismissing Plaintiffs' breach of loyalty claims, agreeing with Defendants that Plaintiffs' "disloyalty theories constitute speculation." (Report and Recommendation at 36-40, *Tracey*, ECF No. 70.) |
| October 4, 2017 | This Court accepts and adopts Magistrate Judge Bowler's recommendation, and dismisses Plaintiffs' breach of loyalty claims, holding that they are "speculative" and "***rely on untenable claims such as that Abigail Johnson, CEO of Fidelity, sits on MIT's Board of Trustees***. Plaintiffs d[id] not allege that Ms. Johnson was involved with the Plan, however, and she was not on the Board when Fidelity was selected as the investment provider." (Memorandum & Order at 4, *Tracey*, ECF No. 79 (emphasis added).) |
| October 4, 2017 - February 15, 2019 | After the motion to dismiss decision, the parties conduct fact discovery for more than a year. (Order at 1, *Tracey*, ECF No. 184.) During that time, (1) **Plaintiffs never seek to depose Ms. Johnson**, and (2) **all knowledgeable deponents testify that Ms. Johnson had nothing to do with the Plan** (*see infra* at 6). |

---

[2]  The press release was also issued just prior to the Court's order striking Plaintiffs' jury demand.

| Date | Event |
|---|---|
| May 31, 2019 | Plaintiffs seek leave to file an amended complaint to re-assert the duty of loyalty claims. (Memorandum In Support Of Plaintiffs' Motion For Leave To File A Third Amended Complaint, *Tracey*, ECF No. 193-1.) Plaintiffs concede that in 2016, when they filed this action, they "***believed*** that Abigail Johnson proactively influenced the Plan's decision-making, ***but could not point to the 'inside information necessary to make out their claim in detail.'***" (*Id.* at 6 (emphasis added).) Plaintiffs admit that after more than a year of discovery, they have procured ***no evidence*** that Ms. Johnson ever acted to exert influence on the Plan's decision-making. (*Id.* (admitting that "[w]ith the benefit of discovery, Plaintiffs learned that Abigail Johnson did not have to exert any influence" over the Plan's decision-making).) Plaintiffs also concede that "***whether Abigail Johnson knew that Defendants made decisions to curry her favor is [] irrelevant***." (*Id.* at 14 (emphasis added).) |
| August 5, 2019 | Plaintiffs issue a press release titled "MIT Squanders Workers' Retirement Savings in Payments to Abigail Johnson and Fidelity in Return for Donations, Says Schlichter Bogard & Denton," making unsubstantiated statements regarding Ms. Johnson and Fidelity. (Carroll Decl., Ex. 2, Plaintiffs' Press Release.) |
| August 7, 2019 | Plaintiffs' counsel serves their witness list, naming Ms. Johnson as the first "will call" witness. (Carroll Decl., Ex. 1, Plaintiffs' Witness List.) |
| August 8, 2019 | The Court denies Plaintiffs' motion to amend the complaint, holding that Plaintiffs' duty of loyalty claims are untimely, and limiting the breach of fiduciary duty claims to claims for imprudence. (Memorandum & Order, *Tracey*, ECF No. 232.) The Court also strikes Plaintiffs' jury demand. (Memorandum & Order, *Tracey*, ECF No. 231.) |

## ARGUMENT

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, the "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). Rule 26 "confers broad discretion on the trial court to decide when a protective order is appropriate." *Steward Health Care Sys. LLC v. Southcoast Health Sys., Inc.*, No. 15-14188-MLW, 2016 WL 11004353, at *1 (D. Mass. June 15, 2016). In addition, this Court possesses "inherent equitable powers to ensure full and fair proceedings." *See, e.g.*, *Rissman, Hendricks & Oliverio, LLP v. MIV Therapeutics, Inc.*, No. 11-10791-MLW, 2011 WL 5025206, at *5 (D. Mass. Oct. 20, 2011). The Court should issue a protective order prohibiting Ms. Johnson from being subpoenaed to testify at trial because

4

(i) she has no knowledge of any facts relevant to this case, (ii) Plaintiffs seek Ms. Johnson's testimony only to harass her and Fidelity, and (iii) there is a Fidelity witness on Plaintiffs' list with knowledge who will testify.

**I.   MS. JOHNSON IS NOT AN APPROPRIATE TRIAL WITNESS BECAUSE SHE HAS NO PERSONAL KNOWLEDGE OF ANY FACTS RELEVANT TO THIS ACTION**

Numerous courts have held that the testimony of a high-level executive should be precluded unless the party requesting the testimony can establish that the executive "possesses unique knowledge of *relevant facts*." *Amazon.com, Inc. v. Comm'r of Internal Revenue*, 108 T.C.M. (CCH) 588, at *3 (T.C. 2014) (emphasis added) (granting motion to quash trial subpoena directed at Amazon's CEO, Jeff Bezos). *See also Treppel v. Biovail Corp.*, No. 03 Civ. 3002 PKL JCF, 2006 WL 468314, at *2 (S.D.N.Y. Feb. 28, 2006) (granting motion for protective order precluding the depositions of defendant's CEO and one of its board members, and holding that "[w]hen considering whether to allow the deposition of a corporate executive, courts consider the likelihood that the individual possesses *relevant knowledge*" (emphasis added)); *Dauth v. Convenience Retailers, LLC*, No. C 13-047 MEJ, 2013 WL 4103443, at *1 (N.D. Cal. Aug. 12, 2013) (denying motion to compel deposition testimony of defendants' President and CEO and holding that "parties seeking to depose a high ranking corporate officer must first establish that the executive [] has unique, non-repetitive, firsthand knowledge *of the facts at issue in the case*" (emphasis added)). Here, not only does Ms. Johnson lack *unique* knowledge of the relevant facts, she lacks *any* knowledge of them.

The claims remaining in the case turn on whether the MIT Plan fiduciaries acted in an objectively prudent manner when making decisions concerning the Plan. But the evidence establishes that Ms. Johnson had no involvement with the Plan, played no role in the relationship

5

between Fidelity and the Plan, and has no personal knowledge relevant to Plaintiffs' remaining claims for imprudence. For example:

1. Plaintiffs concede that MIT's former Director of Benefits "testified that Ms. Johnson did not have any responsibility with respect to the Plan." ([Proposed] Third Amended Complaint ¶ 210.ff, *Tracey*, ECF No. 193-3.)

2. Fidelity employee John Harrington, who has been the relationship manager between the Plan and Fidelity since approximately 2008, also testified that he has **never had "any conversations with Abigail Johnson about MIT's 401(k) plan**." (Carroll Decl., Ex. 3, Deposition of John Harrington 15:13-20, 188:19-22.)

3. Michael Howard, a former MIT employee who was a member of the Plan's fiduciary committee testified that he did **not "have any conversations about how MIT's decisions with respect to the 401(k) plan would play with Abigail Johnson**." (Carroll Decl., Ex. 4, Deposition of Michael Howard 71:22-72:8, 140:13-17.)

Moreover, even if Plaintiffs' loyalty theory were still viable, none of the facts that Plaintiffs have cited to support that theory involve any actions taken by Ms. Johnson related to the Plan or demonstrate any awareness by Ms. Johnson of Defendants' purportedly disloyal conduct:

1. Plaintiffs allege that "Defendants made decisions in Fidelity's and Ms. Johnson's favor and delayed unfavorable decisions because MIT derived benefits from its relationship with Abigail Johnson and Fidelity." (Memorandum In Support Of Plaintiffs' Motion For Leave To File A Third Amended Complaint at 6, *Tracey*, ECF No. 193-1.) However, Plaintiffs do not -- and consistent with Rule 11 of the Federal Rules of Civil Procedure, could not -- allege that Ms. Johnson participated in or knew about these alleged decisions made by MIT personnel.

2. Plaintiffs allege that foundations associated with the Johnson family donated to MIT and to the Boston Museum of Fine Arts, where the chair of the Plan's fiduciary committee was a trustee. (*Id.* at 6, 8, 11.) However, Plaintiffs do not -- and consistent with Rule 11 of the Federal Rules of Civil Procedure, could not -- cite any evidence that these donations were related to the Plan.[3]

---

3      Indeed, this Court has previously held that Plaintiffs' allegations concerning donations made by Fidelity-affiliated organizations to MIT "d[id] not plausibly allege . . . more than a coincidence or innocuous activity." (Memorandum & Order at 8, *Tracey*, ECF No. 79.) And the foundation on which Plaintiffs focus in their press release and other filings -- the Fidelity Non-Profit Management Foundation -- is an organization with which Ms. Johnson has had no

*(cont'd)*

3.      Plaintiffs allege that in 2009 (before the start of the class period), the chair of the Plan's fiduciary committee commented at a committee meeting that "MIT must be sensitive to [the fact that] . . . Ms. Abigail P. Johnson is a member of both the MIT Corporation and MITIMCo's Board of Trustees." (Memorandum In Support Of Plaintiffs' Motion For Leave To File A Third Amended Complaint at 7, *Tracey*, ECF No. 193-1.) Plaintiffs do not -- and consistent with Rule 11 of the Federal Rules of Civil Procedure, could not -- allege that Ms. Johnson participated in or even knew about either the comment or the meeting.

4.      Plaintiffs allege that MIT personnel waited to make a decision about Fidelity as an index fund provider for the Plan in 2014 "until Abigail Johnson's term as Chair of the MIT Sloan School of Management Visiting Committee ended." (*Id.* at 10.) Plaintiffs do not -- and consistent with Rule 11 of the Federal Rules of Civil Procedure, could not -- allege that Ms. Johnson participated in or knew about the alleged decision.

5.      Plaintiffs allege that MIT personnel discussed whether they should communicate with Ms. Johnson concerning the removal of certain Fidelity funds from the Plan's offerings in 2014. (*Id.* at 10.) However, Plaintiffs do not -- and consistent with Rule 11 of the Federal Rules of Civil Procedure, could not -- allege that such communication occurred, or that Ms. Johnson knew such communication was contemplated.

6.      Plaintiffs allege that Defendants' choices with respect to the Plan "can only be explained by Defendants' desire to keep Fidelity's CEO, Abigail Johnson, happy." (*Id.* at 13.) However, Plaintiffs do not -- and consistent with Rule 11 of the Federal Rules of Civil Procedure, could not -- allege that Ms. Johnson knew about Defendants' alleged decisions or motivations.

Plaintiffs' conduct in this litigation demonstrates that even *they* do not truly believe Ms. Johnson has relevant testimony to offer.  Just a few months ago, after the close of fact discovery, Plaintiffs represented to the Court that they lacked any evidence that Ms. Johnson "exert[ed] any influence" on the MIT Plan fiduciaries, and they stated that "whether [Ms.] Johnson knew that Defendants made decisions to curry her favor [would be] irrelevant" to their case, even if they were allowed to pursue their duty of loyalty claims.  (*Id.* at 6, 14.)  (Now that

_____
*(cont'd from previous page)*
personal affiliation during the Class Period (*i.e.*, she has served neither as an officer nor as a director or trustee of the foundation). (Plaintiffs' Responses And Objections To Defendants' Statement Of Undisputed Material Facts In Support Of Defendants' Motion For Summary Judgment And Plaintiffs' Statement Of Additional Material Facts ¶ 171 n.611-12, *Tracey*, ECF No. 224 ("Plaintiffs' Statement of Facts").)

7

those claims have been excluded, Ms. Johnson's testimony is even further removed from the issues to be tried.) Moreover, Plaintiffs never even sought to take Ms. Johnson's deposition in discovery, strongly suggesting that they do not truly believe she has relevant testimony to offer. *See Amazon.com, Inc.*, 108 T.C.M. (CCH) at *4 (observing that the IRS's decision to not depose Mr. Bezos during discovery was one fact indicating that its "need for Mr. Bezos' testimony is minimal and weigh[s] heavily in favor of granting the motion to quash"); *RFF Family P'ship, LP v. Link Dev., LLC*, 68 F. Supp. 3d 260, 261 (D. Mass. 2014) (Gorton, J.) (granting motion to quash a trial subpoena issued by the defendant to the plaintiff's trial counsel and noting, among other things, that the defendant "ha[d] taken no discovery nor ha[d] it sought to depose" the plaintiff's counsel).

In sum, there is no evidence that Ms. Johnson has personal knowledge on any issue even potentially relevant to the case, and Plaintiffs therefore have no legitimate basis to subpoena her testimony at trial.

## II. PLAINTIFFS SEEK MS. JOHNSON'S TESTIMONY EXCLUSIVELY TO HARASS HER AND TO GARNER MEDIA ATTENTION

Several days before Plaintiffs served their witness list on counsel for Defendants, Plaintiffs' law firm issued their own lengthy press release, replete with the same unsubstantiated conjecture and misrepresentations concerning both Ms. Johnson and Fidelity that the Court earlier dismissed as "speculative" and "untenable":

> **MIT Squanders Workers' Retirement Savings in Payments to Abigail Johnson and Fidelity in Return for Donations, Says Schlichter Bogard & Denton**
>
> *Tracey, et al., v. Massachusetts Institute of Technology, et al., No: 1:16-11620-NMG (D. Mass)*
>
> **Fidelity donations to MIT over $23 million**
>
> August 05, 2019 06:04 PM Eastern Daylight Time

[ . . . ]

> **Contacts**
> Jerry Schlichter
> 800-873-5297
> sbd@uselaws.com

(Carroll Decl., Ex. 2, Plaintiffs' Press Release.)

    Like their filings with the Court, and despite the reference to Ms. Johnson in the title, Plaintiffs' press release does not reference any action taken by Ms. Johnson in connection with the Plan, and it (misleadingly) fails to acknowledge that neither Ms. Johnson nor Fidelity are or ever were defendants in this litigation. Rather, the press release contains reckless accusations and false statements[4] designed to harass Ms. Johnson[5] and to attract media attention

---

[4]  For example, the press release states that "MIT kept Fidelity as recordkeeper in the 401(k) Plan after being told by a Fidelity executive that Fidelity would 'really care about being the record keeper and keeping as much actively managed [assets under management] as possible.'" (Carroll Decl., Ex. 2, Plaintiffs' Press Release.) However, Plaintiffs' own filings make clear that this statement was made by an MIT employee, not a Fidelity executive, and that the employee was simply stating his "opinion" that Fidelity may care more about being a Plan's record keeper and having actively managed assets under management than it would about having passively managed assets under management. (*See* Plaintiffs' Statement of Facts at 46; Declaration of Joel D. Rohlf, Ex. P74, *Tracey*, ECF No. 225-74.) Similarly, the press release states that Fidelity donated $5 million to MIT "[s]oon" after the Dean of MIT's Sloan School of Management made a joke in March 2015 about expecting something "from the Johnson family" after MIT decided to keep Fidelity as its recordkeeper. (Carroll Decl., Ex. 2, Plaintiffs' Press Release; Declaration

*(cont'd)*

9

for Plaintiffs' upcoming trial by suggesting that Ms. Johnson has some prominent role. This sort of extra-judicial harassment underscores why courts frequently prevent a lawyer participating in a litigation from "making an extrajudicial statement" that "a reasonable person would expect to be disseminated by means of public communication if there is a reasonable likelihood that such dissemination will interfere with a fair trial." *See* L.R., D. Mass. 83.2.1(h); *see also* Supreme Judicial Court Rule 3:07: Rule of Professional Conduct 3.6.

### III.   A FIDELITY EMPLOYEE WHO HAS BROAD PERSONAL KNOWLEDGE OF FACTS RELEVANT TO PLAINTIFFS' CASE IS ALSO ON PLAINTIFFS' WITNESS LIST AND WILL TESTIFY

In addition to Ms. Johnson, the witness list served by Plaintiffs' counsel also includes Fidelity employee John Harrington, who will testify at trial. Mr. Harrington -- who was deposed during discovery -- has been the relationship manager between the Plan and Fidelity since approximately 2008, *i.e.*, the entire class period. (Carroll Decl., Ex. 3, Deposition of John Harrington 15:13-20.) Unlike Ms. Johnson, Mr. Harrington possesses substantial personal knowledge of facts related to this litigation. Courts routinely decline to compel testimony from

---

*(cont'd from previous page)*
of Joel D. Rohlf, Ex. P77, *Tracey*, ECF No. 225-77.) In fact, the $5 million donation was not made until 2016, which Plaintiffs concede is after the Plan removed more than one hundred Fidelity funds from the Plan's investment options. (Plaintiffs' Statement of Facts ¶ 171 n.611; Second Amended Complaint ¶ 102, *Tracey*, ECF No. 98.)

[5]   Indeed, numerous courts have recognized that seeking testimony from "an official at the highest level or 'apex' of corporate management . . . creates a tremendous potential for abuse or harassment." *See Celerity, Inc. v. Ultra Clean Holding, Inc.*, No. C 05-4374 MMC (JL), 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007); *Dauth*, 2013 WL 4103443, at *1 (same). *See also Treppel*, 2006 WL 468314, at *1 ("[P]ermitting unlimited access to corporate executives could disrupt their businesses and create a tool for harassment."); *Koken v. Lexington Ins. Co.*, No. 04-2539, 2005 WL 6051364, at *1 (E.D. Pa. July 18, 2005) (granting protective order to prohibit deposition of the defendant's assistant vice-president, and holding that it "would be duplicative, harassing, and unduly burdensome"); *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364, 366 (D.R.I. 1985) (barring the plaintiffs from taking the deposition of the Chairman of the Board of Chrysler Corporation, and holding that he was a "singularly unique and important individual who c[ould] be easily subjected to unwarranted harassment and abuse").

high-level executives like Ms. Johnson when "the information sought [can] be obtained by less burdensome means," including from "another source." *Amazon.com, Inc.*, 108 T.C.M. (CCH) at *3; *Treppel*, 2006 WL 468314, at *2.

## CONCLUSION

For all of the foregoing reasons, this Court should issue a protective order prohibiting Ms. Johnson from being subpoenaed to appear and testify at trial in this action.

Dated: August 19, 2019  
       Boston, Massachusetts

Respectfully submitted,

/s/ James R. Carroll  
James R. Carroll (BBO #554426)  
Mary E. Grinman (BBO #694097)  
SKADDEN, ARPS, SLATE  
 MEAGHER & FLOM LLP  
500 Boylston Street  
Boston, Massachusetts 02116  
(617) 573-4800  
james.carroll@skadden.com  
mary.grinman@skadden.com

*Counsel for Non-Parties*  
*Abigail P. Johnson and FMR LLC*