## United States District Court
## District of Massachusetts

|  |  |
|---|---|
| DAVID TRACEY, ET AL., ) | |
| ) | |
| PLAINTIFFS, ) | |
| ) | |
| V. ) | Civil Action No. |
| ) | 16-NMG-11620 |
| MASSACHUSETTS INSTITUTE OF ) | |
| TECHNOLOGY, ET AL., ) | |
| ) | |
| DEFENDANTS. ) | |

### MEMORANDUM & ORDER

**Gorton, J.**

This case involves an alleged breach of fiduciary duty by the Massachusetts Institute of Technology ("MIT", "the University" or "defendants") with respect to its supervision of its employer-sponsored defined contribution plan ("the Plan") under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1109.  It is brought as a putative class action by representatives of participants and beneficiaries of the MIT Supplemental 401(k) Plan ("plaintiffs").

The underlying claims are for a breach of the duty of prudence (failure to monitor, imprudent investment lineup and excessive recordkeeping) and prohibited transactions in violation of ERISA.  Plaintiffs claim that 1) defendants breached their fiduciary duty under 29 U.S.C. § 1104(a)(1)(A) by

- 1 -

failing to monitor the Plan and retaining imprudent and
excessive cost investment options that enriched Fidelity
Investments ("Fidelity") at the Plan's expense (Count I); 2)
defendants breached their fiduciary duty under 29 U.S.C. §
1104(a)(1)(A) by allowing Fidelity to collect excessive
recordkeeping and administrative fees (Count II); 3) defendants
caused the Plan to engage in prohibited transactions in
violation of 29 U.S.C. § 1106(a) (Count III) and 4) MIT, as the
monitoring fiduciary, failed adequately to monitor the other
defendants to whom it delegated fiduciary responsibilities
(Count IV).

Pending before this Court is defendants' motion for summary
judgment.  For the following reasons, that motion will be
allowed, in part, and denied, in part.

I.   **Background**

A.   **Factual Background**

MIT is a renowned, non-profit educational and research
institution that offers its employees an employer-sponsored
defined contribution plan.  The Plan is funded through employee
contributions and matching contributions from MIT.  Under ERISA,
the Plan's assets are held in a single trust for the exclusive
benefit of the Plan's participants. 29 U.S.C. § 1103(a).  MIT
serves as the Plan's administrator and named fiduciary with the
ultimate responsibility for the management and operation of the

Plan.  The University has delegated its investment-related duties to the MIT Supplemental 401(k) Plan Oversight Committee ("Committee"), which determines the available investment options in which participants may invest their accounts.

In 1999, MIT appointed Fidelity Investments to render recordkeeping and administrative services to the Plan. Specifically, the University contracted with Fidelity Investments Operations Company to serve as the Plan's recordkeeper and Fidelity Management Trust Company to serve as the Plan's trustee.

Prior to July, 2015, when the Plan was restructured, it consisted of four tiers of investment options.  The tiers were designed in order to provide MIT employees the flexibility to determine their desired level of involvement with their retirement investments.  Tier 1 consisted of low-risk, low expense trusts.  Tier 2 gave participants more flexibility by allowing them to distribute their investments across seven products with varying risk/return profiles.  Most relevant to the claims at issue, Tier 3, the "MIT Investment Window" ("Investment Window") offered a wide range of investment products and was designed to give individuals with experience conducting investment research a large degree of choice. Finally, Tier 4 "Fidelity BrokerageLink" was a self-directed

brokerage account designed for investors with a higher appetite for risk and independent management.

In July, 2015, the Plan underwent a major reorganization removing hundreds of mutual funds from Tier 3 and eliminating all but one Fidelity fund.  In essence, the Committee eliminated Tier 3 and expanded Tier 2 to include 37 core options. According to the Plan administrators, they adjusted the Plan's offerings in order to comply with regulatory standards, to lower costs and to strike a balance between affording Plan participants freedom of choice and ensuring they could choose efficient, cost effective investment options.

Plaintiffs allege that MIT breached the duty of prudence owed under ERISA by generally failing to monitor the Plan's offerings.  Specifically, plaintiffs contend that MIT failed to remove under-performing investments and included investment options with excessive fees instead of indistinguishable lower cost options.  Plaintiffs claim this failure to evaluate the Plan's offerings led Fidelity to collect millions of dollars in excessive fees that rightfully belonged to the retirement accounts.

Plaintiffs also assert that MIT breached its duty of prudence by allowing Fidelity to retain excessive administrative fees.  Fidelity is compensated for its administrative services as the Plan's recordkeeper through a revenue-sharing model by

which the recordkeeper receives a percentage of the value of the
Plan's assets.  Plaintiffs claim that defendants overpaid
Fidelity for its recordkeeping services due to its failure to
solicit bids from other recordkeepers through a Request for
Proposal ("RFP") and by otherwise failing to assess and reduce
administrative costs.  Plaintiffs further allege that Fidelity's
recordkeeping compensation was up to five times greater than the
market rate for such services and ultimately cost the Plan
millions of dollars in unnecessary expenses.

Plaintiffs also assert a statutory violation under 29
U.S.C. § 1106(a) which prohibits certain transactions between a
plan and a "party in interest".  They claim that MIT breached
that provision by causing the Plan to pay fees to Fidelity for
non-mutual fund investments.

Finally, plaintiffs claim a derivative failure to monitor
against MIT.  They argue that MIT as the responsible fiduciary
failed to monitor the other fiduciaries (in this case the other
defendants) and thus faces additional liability.

### B.    Procedural Background

On August 8, 2016, Plaintiffs David Tracey, Daniel
Guenther, Maria Nicolson, Corrianne Fogg and Vahik Minaiyan,
individually and as representatives of a class of participants
and beneficiaries filed this action alleging a breach of
fiduciary duties and prohibited transactions under ERISA.

Defendants filed a motion to dismiss and, in August, 2017,

Magistrate Judge Bowler issued a Report and Recommendation

("R&R") in which she recommended:

1) allowance of the motion to dismiss the duty of loyalty
   claims but denial of the motion to dismiss the duty of
   prudence claims under both Counts I and II;

2) denial of the motion to dismiss the claim for prohibited
   transactions involving "assets of the plan" under
   § 1106(a)(1)(D), allowance of the motion to dismiss the
   § 1106(a)(1)(C) claim arising from mutual funds in the
   Plan but denial of the motion to dismiss as to non-
   mutual fund options under Count III; and

3) denial of the motion to dismiss the claims for failure
   to monitor insofar as they are derived from plaintiffs'
   other claims under Count IV.

This Session entered a Memorandum and Order in October,

2017, that accepted and adopted the Magistrate Judge's R&R with

the exception that it dismissed plaintiffs' prohibited

transaction claims under 29 U.S.C. § 1106(a)(1)(D) in Count III

and the corresponding derivative claim under Count IV.  With

leave of Court, plaintiffs filed a Second Amended Complaint

("SAC"), adding additional defendants and eliminating certain

disloyalty allegations but otherwise reiterating the counts and

theories of liability and damages that were included in the

First Amended Complaint.

Subsequently, this Court allowed plaintiffs' motion to

certify a class of all MIT employees who participated in the

subject retirement plan, excluding defendants, from August 9,

2010, to the date of judgment.  Following class certification,
defendants filed a motion to strike plaintiff's demand for a
jury trial.  In February, 2019, Magistrate Judge Bowler allowed
the motion to strike the jury demand which this Court
subsequently affirmed.  In August, 2019, this Court denied
plaintiffs' motion to file a third amended complaint.
Defendants have now moved for summary judgment on all remaining
claims.

## II.  **Legal Analysis**

### A.  **Legal Standard**

The role of summary judgment is "to pierce the pleadings
and to assess the proof in order to see whether there is a
genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d
816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc.,
895 F.2d 46, 50 (1st Cir. 1990)).  The burden is on the moving
party to show, through the pleadings, discovery and affidavits,
"that there is no genuine dispute as to any material fact and
the movant is entitled to judgment as a matter of law." Fed. R.
Civ. P. 56(a).

A fact is material if it "might affect the outcome of the
suit under the governing law . . . ." Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 248 (1986).  A genuine issue of material
fact exists where the evidence with respect to the material fact

in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the moving party satisfies its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

**B.    ERISA's Duty of Prudence Generally**

Under ERISA, a fiduciary owes plan participants duties of loyalty and prudence. At issue in this case is the duty of prudence which mandates that a fiduciary act

> with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity . . . would use in the conduct of an enterprise of a like character.

29 U.S.C. § 1104(a)(1)(B).

The "prudent person" standard is an objective standard which focuses not on the results of an investment strategy but on the fiduciary's decision making process.

Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 716 (2d Cir. 2013).  In order to determine whether a fiduciary acted in accordance with its duty of prudence, a court will evaluate conduct under the "totality of the circumstances" and assess a fiduciary's procedures, methodology and thoroughness. DiFelice v. U.S. Airways, Inc., 497 F.3d 410, 418 (4th Cir. 2007;)see also Chao v. Tr. Fund Advisors, No. Civ. A. 02-559, 2004 WL 444029, (D.D.C. Jan. 20, 2004).  To prevail on a prudence claim, a plaintiff must establish that the fiduciary failed to employ appropriate procedures and as a result the retirement plan suffered losses.

With respect to the duty of prudence, plaintiffs allege two separate breaches: 1) failure to monitor (consisting of inadequate monitoring and inclusion of underperforming funds) and 2) excessive recordkeeping fees.  The Court will address each claim in turn.

### C.    Failure to Monitor (Count I)

An ERISA fiduciary has an ongoing "duty to monitor trust investments and remove imprudent ones" and must review investments at "regular intervals." Tibble v. Edison Int'l, 135 S.Ct. 1823, 1828.  In sum, a fiduciary must not only determine the prudence of each investment option at the outset of inclusion in a retirement plan but must continue to monitor each

investment option available. <u>Bunch</u> v. <u>W.R. Grace & Co.</u>, 532 F. Supp. 2d 283, 289 (D. Mass. 2008).

With respect to MIT's duty to monitor, which falls under the general duty of prudence, plaintiffs allege two kinds of breaches: 1) MIT's process for monitoring the Plan and 2) MIT's inclusion of specific underperforming or excessively risky funds.

### i. MIT's Process for Monitoring the Plan

Plaintiffs assert that MIT's process for evaluating investments was deficient and lacked due diligence in that defendants 1) ignored relevant advice from consultants and outside counsel, 2) failed to institute a robust policy to monitor investment alternatives and 3) before July, 2015, failed to make necessary changes to the Investment Window.

Defendants respond that MIT's Investment Committee is composed of a variety of MIT-affiliated economic experts who diligently executed their duties by 1) collecting data on the performance of the Investment Window, 2) maintaining a "watch-list" of potentially underperforming funds and 3) soliciting and duly considering independent advice. Moreover, defendants point to the 2015 reorganization of the Plan as clear evidence of the Committee's robust deliberative process and ability to implement logical adjustments.

With respect to the issue of whether MIT met its duty of prudence under § 1104(a)(1)(A) regarding its process for monitoring, the parties have set forth compelling and competing narratives.  On one hand, plaintiffs submit that MIT's lack of action and failure to implement outside advice demonstrates its failure adequately to discharge its duty to monitor.  Defendants rejoin that their monitoring strategy was reasonable under the circumstances, appropriately deliberative and well in line with its duty and industry practice.  Thus, because neither party has demonstrated as a matter of law that MIT did or did not act prudently, defendant's motion for summary judgment with respect to the monitoring claims of Count I will be denied.

### ii.  MIT's Inclusion of Specific Funds

In addition to the material dispute with respect to MIT's monitoring protocol, this Court finds that there are other genuine issues of material fact which preclude summary judgment on Count I.  Specifically, plaintiffs, relying on expert testimony, allege that the University retained several kinds of imprudent and underperforming funds in the Plan including regional and sector funds, funds without sufficient performance history and target date funds.  Plaintiffs assert that if MIT had acted prudently, those funds would have been removed or replaced.

Defendants dispute those assertions with expert testimony of their own and evidence regarding industry practice. The debate over whether certain kinds of funds should have been included in the Plan is a material factual dispute that will be preserved for trial. Accordingly, defendants' motion for summary judgment with respect to the specific funds claim in Count I will be denied.

### D.   Excessive Recordkeeping Fees (Count II)

In a revenue sharing system, the recordkeeper retains some of the investment income of the retirement plan to satisfy the plan's administrative expenses. In Count II Plaintiffs claim that the Plan was subject to excessive recordkeeping fees in violation of ERISA's duty of prudence because 1) MIT knew that Fidelity's recordkeeping fees exceeded the industry standard and 2) MIT did nothing to reduce the fees to the market rate. They assert that MIT's failure to solicit an RFP, which allegedly would have exerted competitive pressure on Fidelity, demonstrates a clear lack of prudence and that the defendants did not leverage the Plan's size as a bargaining strategy to reduce fees.

Defendants proffer contrary expert testimony that MIT's fees were well within industry standard, especially when compared to similar university and corporate plans. They contend that 1) the Committee maintained adequate procedures to

constrain costs and succeeded in successfully negotiating revenue sharing rebates from Fidelity, 2) their 2014 restructuring of Fidelity's compensation to a yearly per-participant flat rate of $33 is clear evidence that MIT took concrete steps to control recordkeeping fees, and 3) ERISA does not rigidly require a fiduciary to submit bids for an RFP periodically because an RFP is just one of many ways to discharge its monitoring duty.

Similar to Count I, the opinions of the parties' experts as to the proper industry protocol and the amount of fees that should be considered reasonable are in stark contrast.  Both parties also present competing narratives surrounding the decision not to conduct an RFP.  Because those disputes are more than superficial, the Court concludes that they are best resolved at trial. Students for Fair Admissions, Inc. v. President & Fellows of Harvard College (Harvard Corp.) 346 F.Supp. 3d 174, 194 (D. Mass. 2018)(citations omitted) (Though "competing expert reports alone do not necessarily preclude summary judgment" where party's experts present more than "merely conclusory allegations" summary judgement is inappropriate).

Viewing the entire record in the light most favorable to the nonmoving party, there are genuine issues of material fact as to whether defendants breached their duty of prudence with

respect to recordkeeping fees.  Accordingly, defendants' motion

for summary judgment on Count II will be denied.

### E.   The Plan's Investment in Non-Mutual Fund Options (Count III)

#### i.   Section 1106(a) and Applicable Exceptions

Separate from their claims for breach of the duty of

prudence, plaintiffs allege that defendants breached their

statutory duty under 29 U.S.C. § 1106(a)(1) which prohibits

certain transactions between a plan and a "party in interest".

Section 1106(a)(1) is primarily concerned with self-dealing

transactions and was enacted in order to

> supplement[] the fiduciary's general duty of loyalty to the
> plan's beneficiaries, § 404(a), by categorically barring
> certain transactions deemed "likely to injure the pension
> plan".

Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc., 530 U.S.

238, 241-42 (2000) quoting Comm'r v. Keystone Consol. Indus.

Inc., 08 U.S. 152, 160 (1993); see also Braden v. Wal-Mart

Stores, Inc., 588 F.3d 585, 602 (8th Cir. 2009) (noting that

§ 1106 prohibits transactions in which "a fiduciary might be

inclined to favor [a party in interest] at the expense of the

plan's beneficiaries.")

Plaintiffs have failed to proffer any concrete evidence of

self-dealing or disloyal conduct.  The Court is not convinced

that plaintiffs' non-mutual fund claims are more than

conclusory. See Cunningham v. Cornell Univ., No. 16-CV-6525,

- 14 -

2017 WL 4358769, (S.D.N.Y. Sept. 29, 2017); <u>Sacerdote</u> v. <u>New York Univ.</u>, 328 F.Supp.3d 273 (S.D.N.Y 2017).  Moreover, the Court now finds that defendants' non-mutual fund options fall under an exception to § 1106.  Accordingly, defendants' motion for summary judgment with respect to Count III will be allowed for the following reasons.

Section 1106 is subject to a number of exceptions, including 29 U.S.C. § 1108(b)(8) which exempts prohibited transactions where

> the bank, trust company, or insurance company receives not more than reasonable compensation.

29 U.S.C. § 1108(b)(8)(B).

In support of its position, MIT cites the expert testimony of Dr. Wermers who states that the expense ratios of the Plan's non-mutual fund options were comparable to or less expensive than fees of similar investments during the class period.  Plaintiffs offer no rebuttal and simply rejoin that the fees on the non-mutual fund options add to the already unreasonable recordkeeping and administrative fees alleged in Count II.

In short, plaintiffs have proffered no evidence that the fees specific to the non-mutual fund options were unreasonable or not subject to the exception in § 1108(b)(8).  Rather, their sole contention is that the subject non-mutual fund transactions contributed to the excessive administrative charges in Count II.

To the extent that plaintiffs argue that defendants bear the burden of proof of a § 1108(b)(8) exception, the Court finds that MIT has met that burden by offering unrebutted expert testimony.

Accordingly, MIT's motion for summary judgment with respect to plaintiffs' § 1106(a) claim will be allowed.

**F.   Failure to Monitor (Count IV)**

Finally, plaintiffs allege that MIT failed to monitor its appointed fiduciaries.  Ordinarily, a duty to monitor other fiduciaries is derivative of plaintiffs' other claims. <u>Slaymon</u> v. <u>SLM Corp.</u>, 506 F. App'x. 61, 2012 WL 6684564, (2d Cir. Dec. 26, 2012) (unpublished).  Thus, because the parties dispute the alleged underlying breach of fiduciary duty claims, plaintiffs' derivative claims that defendants breached their duty to monitor will also be preserved for trial.  Accordingly, defendants' motion for summary judgment with respect to Count IV will be denied as to the duty of prudence claims arising under Counts I and II but allowed as to the prohibited transaction claim (Count III) arising under § 1106(a).

**ORDER**

For the foregoing reasons, defendants' motion for summary judgment (Docket No. 204) is, with respect to plaintiffs' claim

under 29 U.S.C. § 1106(a) and the derivative failure to monitor claim, **ALLOWED**, but is otherwise, **DENIED**.

The viable claims for trial are: 1) breach of the duty of prudence for failure to monitor (Count I), 2) breach of the duty of prudence for excessive recordkeeping and administrative fees (Count II) and 3) the corresponding derivative claims that MIT failed to monitor its appointed fiduciaries. (Count IV).

A pre-trial conference will be held on Wednesday, September 11 at 11:00 AM and the bench trial will commence on Monday, September 16 at 9:00 AM.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated September 4, 2019