**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DAVID B. TRACEY *et al.*,<br>*Plaintiffs*,<br>v.<br>MASSACHUSETTS INSTITUTE OF TECHNOLOGY *et al.*,<br>*Defendants*. | No. 1:16-cv-11620-NMG |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

Plaintiffs alleged that Defendants breached their duties under the Employee Retirement Income Security Act of 1974 ("ERISA") to the Massachusetts Institute of Technology Supplemental 401(k) Plan ("Plan") and committed prohibited transactions by causing the Plan to pay unreasonable recordkeeping and administrative fees, maintaining high-cost and underperforming investment options and maintaining investments in higher-cost share classes when identical lower-cost share classes were available. Doc. 98. Defendants dispute these allegations, deny liability for any alleged fiduciary breach, and contend that the Plan has been managed, operated, and administered at all relevant times in compliance with ERISA and applicable regulations. After extensive arm's length negotiations with assistance of a nationally-recognized ERISA mediator, the parties reached a settlement that provides meaningful monetary and non-monetary relief to class members. In light of the litigation risks further prosecution of the actions would inevitably entail, Plaintiffs respectfully request that the Court: (1) preliminarily approve the proposed settlement attached as Ex. A to Plaintiffs' motion (the "Settlement"); (2) approve the proposed form and method of notice to the Settlement Class; and (3) schedule a hearing at which the Court will consider final approval of the Settlement.

## BACKGROUND

### I. Plaintiffs' Claims.

On August 9, 2016, Plaintiffs filed their original complaint. Doc. 1. On November 16, 2016, Plaintiffs filed an Amended Complaint. Doc. 32. On October 5, 2016, Defendants filed a motion to dismiss Plaintiffs' amended complaint. Doc. 38. On September 29, 2017, the Court granted in part and denied in part Defendants' motion to dismiss Plaintiffs' amended complaint. Docs. 70 and 75.

On March 1, 2018, Plaintiffs filed a second amended complaint which is the operative complaint and set forth the surviving claims. Doc. 98. In Count I, Plaintiffs alleged Defendants breached their duty of prudence under 29 U.S.C. § 1104(a)(1)(B) by failing to engage in a prudent process to assess the prudence of each investment option in the Plan and failing to remove imprudent investments resulting in the retention of investments in higher costs share classes and investment options with unreasonable expenses, risk and poor performance relative to other investment options that were readily available to the Plan. In Count II, Plaintiffs alleged Defendants breached their duty of prudence under 29 U.S.C. § 1104(a)(1)(B) by allowing the Plan's recordkeeper to receive unreasonable compensation, failing to prudently monitor and control recordkeeping expenses, and failing to solicit bids from other recordkeepers. In Count III, Plaintiffs alleged that Defendants committed prohibited transactions under §1106(a)(1)(C). Under Count V, to the extent Defendants delegated any of their fiduciary duties, Plaintiffs alleged that Defendants failed to prudently monitor the actions of those individuals.

The Court granted class certification on October 19, 2018, certifying the following class:

> All participants and beneficiaries of the MIT Supplemental 401(k) Plan from August 9, 2010 through the date of judgment, excluding the Defendants.

Doc. 157. On July 15, 2019, Defendants moved for summary judgment on all claims. Doc. 204. On September 4, 2019, the Court granted in part and denied in part Defendants' motion for summary judgment. Doc. 274.The motion was granted to the extent Plaintiffs alleged under Count III that Defendants engaged in prohibited transactions in violation of 29. U.S.C. §1106(a). *Id.* at 16-7. The motion was denied in all other respects. *Id*. Since the filing of this case, the parties engaged in over three years of litigation that included the production of over 185,000 pages of documents and the deposition of 19 fact witnesses and 5 experts. This case was set for trial beginning on September 16, 2019. Doc. 233.

## II. The Terms of the Proposed Settlement

In exchange for releases and for the dismissal of the actions and for entry of a judgment as provided for in the Settlement, Defendants will make available to Class Members the benefits described below.

### A. Monetary Relief

Defendants will deposit $18,100,000 (the "Gross Settlement Amount") into an interest-bearing settlement account (the "Gross Settlement Fund"). The Gross Settlement Fund will be used to pay the participants' recoveries, administrative expenses to facilitate the Settlement, and Plaintiffs' counsel's attorneys' fees and costs, and Class Representatives' Compensation if awarded by the Court.

### B. Additional Terms

In addition to the monetary component of the Settlement, Defendant agreed to substantial non-monetary terms in accordance with Article 10 of the Settlement Agreement. These terms include:

1. During the Settlement Period, MIT shall provide annual training to Plan fiduciaries on prudent practices under ERISA, loyal practices under ERISA, and proper decision making in the exclusive best interests of Plan participants;
2. No later than one hundred and twenty (120) days from the Settlement Effective Date, the Plan's fiduciaries shall issue a request for proposal for recordkeeping and administrative services for the Plan. The request for proposal shall be made to at least three qualified service providers for administrative and recordkeeping services for the investment options in the Plan, each of which has experience providing recordkeeping and administrative services to plans of similar size and complexity. The request for proposal shall request that any proposal provided by a service provider for basic recordkeeping services to the Plan not express fees based on percentage of Plan assets and be on a per-participant basis. The request for proposal shall include the restrictions described in paragraph 6 below;
3. After conducting the request for proposal for recordkeeping services, the Plan may decide to keep its current recordkeeper or retain a new recordkeeper based on whatever factors, including cost, value, available services, and quality of services, that the Plan fiduciaries deem appropriate under the circumstances. Fees paid to the recordkeeper for basic recordkeeping services will not be determined based on a percentage-of-plan-assets basis;
4. Any revenue sharing related to Plan investments will be deposited in the Plan trust and, to the extent not seasonably used to defray lawful Plan expenses, be returned to Plan participants according to a method of allocation approved by Plan fiduciaries and permitted by ERISA no less frequently than on an annual basis;
5. Plan fiduciaries will determine a method of allocating recordkeeping and administrative expenses that it determines is fair, equitable, and appropriate for Plan participants. This

determination will be separate from the flat fee negotiated with the recordkeeper and based on the number of Plan participants;

6. During the Settlement Period, MIT and the Plan's fiduciaries shall continue their current practice of allowing the Plan's recordkeeper to communicate with current Plan participants (in their capacities as such) only at the direction or with the authorization of Plan officials, and prohibiting any communications to Plan participants (in their capacities as such) concerning non-Plan products and services. Such non-Plan products and services shall include, but are not limited to, Individual Retirement Accounts, life or disability insurance, non-Plan investment products, and wealth management services. Notwithstanding this limitation, the parties understand that the Plan's recordkeeper may address non-Plan products and services in response to a request for information initiated by a Plan participant;
7. Within thirty (30) days of selecting the recordkeeper, MIT shall provide to Class Counsel the final bid amounts that were submitted in response to the request for proposal (without identifying the recordkeepers who submitted those bids), shall identify the selected recordkeeper, and shall (if then available) disclose the final agreed-upon contract for recordkeeping services. If the contract is not available, it will be forwarded to Class Counsel within 30 days of execution. Class Counsel shall sign any confidentiality agreements the recordkeepers may reasonably require in order to receive such information. MIT also shall provide Class Counsel the current recordkeeping contract for the Plan, to the extent not previously furnished in discovery. All such materials shall be kept confidential by Class Counsel, in accordance with the Protective Order governing confidential discovery material that has been entered in this case;

8. During the Settlement Period, MIT shall continue its current practice of using an independent investment consultant to review all designated investment alternatives in the Plan (excluding the brokerage window) at least annually;
9. The Settling Parties agree that the costs relating to the Plan's use of an investment consultant and the costs of conducting the request for proposal for recordkeeping and administrative services are expenses properly paid for by the Plan under applicable law.

The non-monetary terms are substantial and materially add to the total value of the Settlement.

### C. Notice and Class Representatives' Compensation

The costs to administer the Settlement, including those associated with providing notice to the Settlement Class, will be paid from the Gross Settlement Amount. Incentive payments in an amount approved by the Court also will be paid from the Gross Settlement Amount. For the costs associated with the Settlement Administrator, Plaintiffs reviewed proposals from candidates to provide these services. After consideration of the proposed fees and the quality of the services to be provided by each candidate, Analytics Consulting LLC was selected as the Settlement Administrator at an estimated cost of $100,000 to provide notices electronically for those class members for whom a current e-mail address is available and by first-class mail to the current or last known address of all class members for whom there is no current email address.[1]

Plaintiffs will seek incentive awards in the amount of $25,000 for each of the named plaintiffs. This amount is consistent with precedent recognizing the value of individuals stepping forward to represent a class, particularly in contested litigation like this where the potential

[1] The proposed fee for the Settlement Administrator to provide notice to class members and other related services to facilitate the Settlement is estimated based on information presently available to the parties and is subject to change once the number of class members and those with available e-mail addresses are determined.

benefit to any individual does not outweigh the cost of prosecuting class-wide claims and there are significant risks of no recovery and the risk of alienation from their employers and peers. *Clark v. Duke Univ.*, No. 16-1044, Doc. 165 at 11 (M.D.N.C. June 24, 2019); *Sims v. BB&T Corp.*, No. 15-732, 2019 WL 1993519, at *4 (M.D.N.C. May 6, 2019); *Kruger v. Novant Health, Inc*., No. 14-208, 2016 WL 6769066, at *6 (M.D.N.C. Sept. 29, 2016); *Savani v. URS Prof'l Solutions LLC,* 121 F.Supp.3d 564, 576 (D.S.C. 2015).

**D. Attorneys' Fees and Costs**

Plaintiffs' counsel will request attorneys' fees to be paid out of the Gross Settlement Fund in an amount not more than one-third of the Gross Settlement Amount, or $6,032,730, as well as reimbursement for costs incurred of no more than $525,000. Plaintiffs' counsel "pioneer[ed]" 401(k) excessive fee litigation as recognized by multiple federal judges, *e.g., Abbott v. Lockheed Martin Corp.,* No. 06-701, 2015 WL 4398475, at *1 (S.D.Ill. July 17, 2015), conducted the first trials of 401(k) excessive fee cases, and handled successfully the only ERISA excessive fee case taken by the Supreme Court, *Tibble v. Edison, Int'l*, 135 S.Ct. 1823 (2015). Plaintiffs' counsel also filed the first excessive fee cases against institutions of higher education in history, of which this case was one. Before Plaintiffs' counsel filed excessive fee cases against corporations and university plan sponsors, no one had ever brought a case alleging excessive fees. *See infra* Argument §III. A contingent one-third fee is the market rate for complex ERISA excessive fee cases. *Kruger*, 2016 WL 6769066, at *2 (collecting cases); *Sims*, 2019 WL 1993519, at *2; *Spano v. Boeing Co*., No. 06-743, 2016 WL 3791123, at *2 (S.D.Ill. Mar. 31, 2016); *see also Decohen v. Abbasi, LLC,* 299 F.R.D. 469, 482 (D.Md. 2014)(Quarles, J.)(complex consumer action). It is also the rate contractually agreed to by the named plaintiffs. Decl. of Jerome J. Schlichter, ¶5.

Although Plaintiffs' counsel will not request a fee greater than one-third of the monetary recovery, the additional terms of the settlement provide meaningful value in addition to the monetary amount. This results in the requested fee being significantly lower than a one-third award. In addition, Plaintiffs' counsel will not seek attorneys' fees: (1) from the interest earned on the Gross Settlement Amount; (2) for time associated with communicating with class members or Defendant during the Settlement Period; and (3) for work required in future years to enforce the settlement, if necessary. Plaintiffs' counsel will submit a formal application for attorneys' fees and costs and for the Class Representatives' incentive awards at least 30 days prior to the deadline for class members to file objections to the settlement.

## ARGUMENT

"The approval of a settlement agreement is a two-step process." *Hochstadt v. Boston Sci. Corp.,* 708 F. Supp. 2d 95, 97, n. 1 (D. Mass. 2010). In the first step, "the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing." *Id*. at 106-7 (*quoting* Manual for Complex Litigation (Fourth), §13.14 (2004)). Therefore, a court first makes a "'preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms.'" *Id*. at 107 (*quoting* Manual for Complex Litigation (Fourth), §21.632 (2004)). A presumption of fairness attaches when "'(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *Id*. (citing *In re Lupron Mktg. and Sales Practices Litig.*, 345 F.Supp.2d 135, 137 (D. Mass. 2004) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995)). Each of those factors is satisfied.

**I. The Settlement is the product of extensive arm's-length negotiations.**

There is an initial presumption that a proposed class action settlement is fair and reasonable when it is the result of arm's-length negotiations. *City P'ship. v. Atlantic Acquisition Ltd.*, 100 F.3d 1041, 1043 (1st Cir. 1996). The Settlement is the result of lengthy and complex arm's-length negotiations between the parties. *See* Schlichter Decl., ¶2. These negotiations extended over an extended period and included a mediation with a national mediator highly experienced in ERISA class actions. After the all-day mediation, the parties continued to discuss settlement through both the private mediator and directly. Through extensive discussions during mediation and at various points throughout the litigation the matter resolved in settlement the week prior to trial.

**II. The settlement was reached after extended litigation and significant investigation of the claims asserted by Plaintiffs.**

At the time the settlement was reached, the parties had been engaged in three years of litigation. Plaintiffs' counsel extensively developed the facts and legal theories supporting their claims. They conducted a substantial investigation of their claims prior to the filing of the complaint. Thereafter, they obtained extensive fact discovery, including obtaining from Defendants and third-parties, that totaled approximately 185,000 pages of documents. Plaintiffs sought and obtained leave to depose five additional fact witnesses beyond the limit of ten. Docs. 158-9, 184. Plaintiffs deposed 15 fact witnesses and two expert witnesses. Defendants also undertook discovery of the named plaintiffs. Defendants deposed each of the named plaintiffs and three expert witnesses.

The case was vigorously litigated at all stages of litigation. Defendant moved to dismiss Plaintiffs' amended complaint, which was granted in part and denied in part. Defendants moved for summary judgment on all allegations, which was granted in part and denied in part. At the

time of settlement, the parties had filed all preliminary trial motions. Only after hard-fought litigation and months of arm's length negotiations were the parties able to reach an agreement to resolve the claims asserted in this lawsuit.

### III. The proponents of the settlement are highly experienced in similar ERISA litigation.

Plaintiffs' counsel is not only highly experienced in handing ERISA class actions involving 401(k) and 403(b) plans, but "pioneer[ed]…the field of retirement plan litigation." *Abbott,* 2015 WL 4398475, at *1. Schlichter Bogard and Denton is the "preeminent firm" in excessive fee litigation having "achieved unparalleled results on behalf of its clients" in the face of "enormous risks". *Nolte v. Cigna Corp.,* No. 07-2046, 2013 WL 12242015, at *3–4 (C.D.Ill Oct. 15, 2013). They are "experts in ERISA litigation", *Krueger v. Ameriprise Fin., Inc*., No. 11-2781, 2015 WL 4246879, at *2 (D.Minn. July 13, 2015)(citation omitted), and "highly experienced", *In re Northrop Grumman Corp. ERISA Litig*., No. 06-6213, 2017 WL 9614818, at *4 (C.D.Cal. Oct. 24, 2017). The firm also obtained the only victory of an ERISA 401(k) excessive fee Supreme Court case, which held that an ERISA fiduciary has a continuing duty to monitor plan investments and remove imprudent ones. *Tibble,*135 S.Ct. at 1828–29.

District courts across the country have recognized the reputation and extraordinary skill and determination of Plaintiffs' counsel. Chief Judge Osteen from the Middle District of North Carolina, speaking of the efforts of Schlichter, Bogard and Denton, noted:

> Class Counsel's efforts have not only resulted in a significant monetary award to the class but have also brought improvement to the manner in which the Plans are operated and managed which will result in participants and retirees receiving significant savings in the coming four years.

*Kruger,* 2016 WL 6769066, at *3. Recently, on June 24, 2019, Judge Eagles from the same District "recognized the experience, reputation, and ability" of Plaintiffs' counsel and found that

the firm "demonstrated diligence, skill, and determination in this matter and, more generally, in an area of law in which few attorneys and law firms are willing or capable of practicing." *Clark,* Doc. 165 at 7. In another ERISA class action, Judge Eagles also recognized the "skill and determination" of the firm and noted that "[i]t is unsurprising that only a few firms might invest the considerable resources to ERISA class actions such as this, which require considerable resources and hold uncertain potential for recovery." *Sims,* 2019 WL 1993519, at *3.

Judge McDade of the Central District of Illinois, again speaking of the firm, observed that achieving a favorable result in this type of case required extraordinary efforts because the "litigation entails complicated ERISA claims". *Martin v. Caterpillar, Inc*., No. 07-1009, 2010 WL 3210448, at *2 (C.D.Ill. Aug. 12, 2010). Judge Baker from the same District also found:

> The law firm Schlichter, Bogard & Denton is the leader in 401(k) fee litigation…[T]he fee reduction attributed to Schlichter, Bogard & Denton's fee litigation and the Department of Labor's fee disclosure regulations approach $2.8 billion in annual savings for American workers and retirees.

*Nolte,* 2013 WL 12242015, at* 2 (internal citations omitted).

Numerous judges have commended the work of Schlichter, Bogard and Denton. Judge Patrick Murphy stated:

> Schlichter, Bogard & Denton's work throughout this litigation illustrates an exceptional example of a private attorney general risking large sums of money and investing many thousands of hours for the benefit of employees and retirees…Litigating the case required Class Counsel to be of the highest caliber and committed to the interests of the participants and beneficiaries of the General Dynamics 401(k) Plans.

*Will v. Gen. Dynamics Corp*., No. 06-698, 2010 WL 4818174, at *3 (S.D.Ill. Nov. 22, 2010).

Judge David Herndon echoed those thoughts:

> Litigating this case against formidable defendants and their sophisticated attorneys required Class Counsel to demonstrate extraordinary skill and determination. Schlichter, Bogard & Denton and lead attorney Jerome Schlichter's diligence and perseverance, while risking vast amounts of time and money, reflect the finest attributes of a private attorney general.

*Beesley v. Int'l Paper Co*., No. 06-703, 2014 WL 375432, at *2 (S.D.Ill. Jan. 31, 2014).

After recognizing "their persistence and skill of their attorneys", Judge Nancy Rosenstengel similarly noted:

> Class Counsel has been committed to the interests of the participants and beneficiaries of Boeing's 401(k) plan in pursuing this case and several other 401(k) fee cases of first impression. The law firm Schlichter, Bogard & Denton has significantly improved 401(k) plans across the country by bringing cases such as this one[.]

*Spano*, 2016 WL 3791123, at *3.

In awarding attorney's fees after the first 401(k) excessive fee trial, the district court concluded that "Plaintiffs' attorneys are clearly experts in ERISA litigation." *Tussey v. ABB, Inc*., No. 06-4305, 2012 WL 5386033, at *3 (W.D. Mo. Nov. 2, 2012). Following remand, the district court again awarded Plaintiffs' attorney's fees, emphasizing the significant contribution Plaintiffs' attorneys have made to ERISA litigation, including educating the Department of Labor and federal courts about the importance of monitoring fees in retirement plans.

> Of special importance is the significant, national contribution made by the Plaintiffs whose litigation clarified ERISA standards in the context of investment fees. The litigation educated plan administrators, the Department of Labor, the courts and retirement plan participants about the importance of monitoring recordkeeping fees and separating a fiduciary's corporate interest from its fiduciary obligations.

*Tussey v. ABB, Inc.,* No. 06-4305, 2015 WL 8485265, at *2 (W.D. Mo. Dec. 9, 2015).

Defendants' counsel is also highly experienced in ERISA litigation. *See*, *e.g.*, *Spano v. The Boeing Co.*, 125 F.Supp.3d 848 (S.D. Ill. 2014); *Rosen v. Prudential Ret. Ins. and Annuity Co.*, No. 15-1839, 2016 WL 7494320 (D. Conn. Dec. 30, 2016); *Ellis v. Fidelity Mgmt. Trust Co.*, 257 F.Supp.3d 117 (D. Mass. 2017).

It is Class Counsel's opinion that the settlement is fair and reasonable. Schlichter Decl. ¶ 2. As set forth above, the Settlement provides a substantial monetary relief component in the amount of $18,100,000. In addition, the Settlement provides substantial and comprehensive non-monetary relief. Finally, independent of the parties' opinion as to the reasonableness of the settlement, the parties will also submit the settlement terms to an independent fiduciary who will provide an opinion on the settlement's fairness before the final approval hearing.

## IV. The settlement is fair, reasonable and adequate to warrant sending notice to the Settlement Class.

Due process and Rule 23(e) do not require that each Class Member receive notice but do require that class notice be "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank and Trust Co*., 339 U.S. 306, 314 (1950). "Individual notice must be provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 175 (1974).

The proposed form and method of notice satisfy all due process considerations and meet the requirements of Rule 23(e)(1) because it is reasonably calculated to effect actual notice to the Settlement Class. The parties' proposed notice to current and former participants are attached as Exhibits 3 and 4 to the Settlement Agreement. The notice will fully apprise class members of the existence of the lawsuit, the proposed settlement, and the information they need to make informed decisions about their rights, including: (i) the terms and operation of the settlement; (ii) the nature and extent of the release; (iii) the maximum attorneys' fees and costs that will be sought; (iv) the procedure and timing for objecting to the settlement and the right of parties to seek limited discovery from objectors; (v) the date and place of the fairness hearing; and (vi) the website on which the full settlement documents and any modifications thereto will be posted.

The notice plan consists of multiple components designed to reach class members. First, the notice will be sent by electronic email to all class members who have a current email address known to the Massachusetts Institute of Technology and/or the Plan's recordkeeper and by first-class mail to the current or last known address of all class members for whom there is no current email address shortly after entry of the order preliminarily approving the settlement. In addition to the notice, Plaintiffs' counsel will develop a dedicated website solely for the settlement, and a link to that website will appear on Plaintiffs' counsel's website [www.uselaws.com]. The notice plan also includes a follow-up requirement for the Settlement Administrator to take additional action to reach those class members whose notice letters are returned as undeliverable. Thus, the form of notice and proposed procedures for notice satisfy the requirements of due process and the Court should approve the notice plan as adequate.

**CONCLUSION**

The Motion for Preliminary Approval of Class Settlement should be granted.

October 28, 2019

/s/ Jerome J. Schlichter

SCHLICHTER BOGARD & DENTON LLP
Jerome J. Schlichter (admitted *pro hac vice*)
Heather Lea (admitted *pro hac vice*)
Joel D. Rohlf (admitted *pro hac vice*)
Scott T. Apking (admitted *pro hac vice*)
100 South Fourth Street, Suite 1200
St. Louis, MO, 63102
(314) 621-6115
(314) 621-5934 (fax)
jschlichter@uselaws.com
hlea@uselaws.com
jrohlf@uselaws.com
sapking@uselaws.com
*Lead Counsel for Plaintiffs*

Michael M. Mulder (admitted *pro hac vice*)
Elena N. Liveris (admitted *pro hac vice*)
Law Offices of Michael M. Mulder
1603 Orrington Avenue, Suite 600
Evanston, Illinois 60201
(312) 263-0272
(847) 563-2301 (fax)
mmmulder@mmulderlaw.com
eliveris@mmulderlaw.com
*Counsel for Plaintiffs*

Stephen Churchill, BBO#564158
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
(617) 607-3260
(617) 488-2261 (fax)
steve@fairworklaw.com
*Local Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 28, 2019.

/s/ Jerome J. Schlichter