**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DAVID B. TRACEY, *et al*., | |
| | |
| Plaintiffs, | |
| | No. 16-cv-11620-NMG |
| v. | |
| | |
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY, *et al*., | |
| | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR AN AWARD
OF ATTORNEYS' FEES, CLASS REPRESENTATIVE AWARDS AND EXPENSES**

Table of Contents

INTRODUCTION ........................................................................................................................ 1

BACKGROUND ........................................................................................................................ 2

ARGUMENT ............................................................................................................................. 3

    I.    The lodestar confirms the reasonableness of Class Counsel's request ............................ 3

        A.    The hours expended are reasonable ....................................................................... 5

        B.    The hourly rates used to determine the lodestar are reasonable. .............................. 6

    II.    Class Counsel's request is additionally reasonable when the twelve factors are
        considered. ..................................................................................................................... 9

        A.    The amount and labor required ............................................................................ 10

        B.    The novelty and complexity of the issues ............................................................ 10

        C.    The skill required, reputation and ability of the attorneys (factors 3 and 9) .......... 12

        D.    The customary fee .............................................................................................. 13

        E.    The preclusion of other employment by the attorneys and desirability of the
            case (factors 5 and 10) ........................................................................................ 13

        F.    The contingent nature of the fee .......................................................................... 14

        G.    The time limitation imposed by the client or circumstances .................................. 15

        H.    The nature and length of the client relationship .................................................... 18

        I.    The size of the award in similar cases .................................................................. 18

        J.    Public policy ...................................................................................................... 18

    III.    The Court should award reimbursement of Class Counsel's litigation expenses. ......... 19

    IV.    The Court should approve case contribution awards for the Named Plaintiffs. ............. 19

CONCLUSION ........................................................................................................................ 20

Table of Authorities

**Cases**

*Abbott v. Lockheed Martin Corp.*,
  No. 06-701, 2015 WL 4398475 (S.D. Ill. Jul. 17, 2015) .......................................... 8, 11, 12, 20

*Bacchi v. Mass. Mutual Life Ins. Co.*,
  No. 12-11280-DJC, 2017 WL 5177610 (D. Mass. Nov. 8, 2017)............................................ 4

*Beesley v. Int'l Paper Co.*,
  No. 06-703, 2014 WL 375432 (S.D. Ill. Jan 31, 2014) .................................................. 8, 12, 20

*Bezdek v. Vibram USA Inc.*,
  79 F. Supp. 3d 324 (D. Mass. 2015) (Woodlock, J.) ................................................................ 16

*Carlson v. Target Enterprise, Inc.*,
  No. 18-40139-TSH, 2020 WL 1332829 (D. Mass. Mar. 23, 2020) .......................................... 4

*Cassell v. Vanderbilt Univ.*,
  No. 16-2086, Doc. 174 (M.D. Tenn. Oct. 22, 2019) ............................................................... 18

*Chrapliwy v. Uniroyal, Inc.*,
  670 F.2d 760 (7th Cir. 1982) .................................................................................................. 13

*Clark v. Duke Univ.*,
  No. 16-1044, Doc. 165 (M.D. N.C. June 24, 2019)............................................................. 8, 12

*Conley v. Sears, Roebuck & Co.*,
  222 B.R. 181 (D. Mass. 1998) ................................................................................................... 4

*Cunningham v. Cornell Univ.*,
  No. 16-6525, 2019 WL 4735876 (S.D.N.Y. Sep. 27, 2019) .................................................... 11

*Daugherty v. Univ. of Chi.*,
  No. 17-3736, Doc. 57-1 (N.D. Ill. Sept. 12, 2018) .................................................................. 16

*Davis v. Wash. Univ. in St. Louis*,
  No. 17-1641, 2018 WL 4684244 (E.D. Mo. Sept. 28, 2018) .................................................. 12

*Divane v. Northwestern Univ.*,
  No. 16-8157, 2018 WL 2388118 (N.D. Ill. May 25, 2018) *affirmed*, --- F.3d ---, 2020 WL
  1444966 (7th Cir. Mar. 25, 2020).......................................................................................... 11

*George v. Kraft Foods Glob., Inc.*,
  No. 07-1713, 2012 WL 13089487 (N.D. Ill. June 26, 2012)................................................... 20

*Gordan v. Mass. Mutual Life Ins. Co.*,
  No. 13-30184-MAP, 2016 WL 11272044 (D. Mass. Nov. 3, 2016) .......................... 4, 6, 10, 18

*I.W. v. School Dist. of Philadelphia*,
  No. 14-3141, 2016 WL 147148 (E.D. Pa. Jan. 13, 2016)......................................................... 6

*In re Global Crossing Sec. & ERISA Litig.*,

225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................................. 11

*In re Northrop Grumman ERISA Litig.,*
  No. 06-6214, 2017 WL 9614818 (C.D. Cal. Oct. 24, 2017) ................................. 20

*In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.,*
  No. 11-02208, 2014 WL 6968424 (D. Mass. Dec. 9, 2014)..................................... 4

*In re Relafen Antitrust Litig.,*
  231 F.R.D. 52 (D. Mass 2005)......................................................................... 10, 20

*In re The Mills Corp. Sec. Litig.,*
  265 F.R.D. 246 (E.D. Va. 2009) ............................................................................ 19

*In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.,*
  56 F.3d 295 (1st Cir. 1995).................................................................................... 3

*In re Volkswagen & Audi Warranty Extension Litig.,*
  89 F. Supp. 3d 155 (D. Mass. 2015)....................................................................... 4

*In re Wachovia Corp. ERISA Litig.,*
  No. 09-262, 2011 WL 5037183 (W.D. N.C. Oct. 24, 2011) ................................. 10

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.,*
  364 F.Supp.2d 980 (D. Minn. 2005)....................................................................... 5

*Kelly v. Johns Hopkins Univ.,*
  No. 16-2835, 2020 WL 434473 (D. Md. Jan. 28, 2020).............................. 6, 12, 18

*Krakauer v. Dish Network, LLC,*
  No. 14-333, 2018 WL 6305785 (M.D.N.C. Dec. 3, 2018) ................................... 13

*Krueger v. Ameriprise Fin., Inc.,*
  2015 WL 4246879 (D. Minn. July 13, 2015) .................................................... 9, 20

*Kruger v. Novant Health, Inc.,*
  No. 14-208, 2016 WL 6769066 (M.D.N.C. Sep. 29, 2016) ............. 8, 10, 12, 15, 20

*LaLonde v. Textron, Inc.,*
  369 F.3d 1 (1st Cir. 2004)..................................................................................... 11

*Lipsett v. Blanco,*
  975 F.2d 934 (1st Cir. 1992)................................................................................... 4

*Martin v. Caterpillar, Inc.,*
  No. 07-1009, 2010 WL 3210448 (C.D. Ill. Aug. 12, 2010) ............................. 10, 12

*Momenta Pharms., Inc. v. Amphastar Pharms., Inc.,*
  No. 11-11681-NMG, 2016 WL 2642997 (D. Mass. May 9, 2016) ................. 7, 8, 10

*New England Carpenters Health Bens. Fund v. First Databank, Inc.,* No. 05-11148-PBS,
  2009 WL 2408560 (D. Mass. Aug. 3, 2009) ........................................................ 4, 9

*Nolte v. Cigna Corp.,*
  No. 07-2046, 2013 WL 12242015 (C.D. Ill Oct. 15, 2013) ...................... 12, 14, 19

*Ramsey v. Phillips N. Am. LLC,*

No. 18-1099, Doc. 27 (N.D. Ill. Oct. 15, 2018) .................................................... 8, 14

*Roberts v. TJX Co.*,
No. 13-13142-ADB, 2016 WL 8677312 (D. Mass. Sep. 30, 2016) ...................................... 4, 9

*Savani v. URS Prof'l Solutions LLC*,
121 F. Supp. 3d 564 (D. S.C. 2015)..................................................................... 20

*Short v. Brown Univ.*,
No. 17-318, Doc. 55 (D. R.I. Aug. 2, 2019) ........................................................ 16

*Sims v. BB&T Corp.*,
No. 15-1705, 2019 WL 1993519 (M.D.N.C. May 6, 2019) ........................................ 5, 8, 12

*Smith v. Krispy Kreme*,
No. 05-187, 2007 WL 119157 (M.D.N.C. Jan. 10, 2007) ........................................ 18

*Spano v. Boeing Co.*,
No. 06-743, 2016 WL 3791123 (S.D. Ill. Mar. 31, 2016) ............................................ 7, 12, 19

*Tibble v. Edison Int'l*,
135 S.Ct. 1823 (2015) .................................................................................... 13

*Tibble v. Edison*,
No. 07-5359, 2017 WL 3523737 (C.D. Cal. Aug. 16, 2017) .................................... 15

*Tussey v. ABB, Inc.*,
746 F.3d 327 (8th Cir. 2014) .......................................................................... 9

*Tussey v. ABB, Inc.*,
No. 06-4305, 2012 WL 5386033 (W.D. Mo. Nov. 2, 2012), *vacated and remanded*, 746
F.3d 327 (8th Cir. 2014) ................................................................................ 11, 12

*Tussey v. ABB, Inc.*,
No. 06-4305, 2015 WL 8485265 (W.D. Mo. Dec. 9, 2015), *vacated and remanded*, 850 F.
3d 951 (8th Cir. 2017)................................................................................... 13, 19

*Tussey v. ABB, Inc.*,
No. 06-4305, 2019 WL 3859763 (W.D. Mo. Aug. 16, 2019) .................................... 6, 18

*Tussey v. ABB, Inc.*,
No. 06-4305, Doc. 859 (W.D. Mo. Mar. 28, 2019) ............................................... 15

*U.S. Bank Nat'l Assoc. v. Dexia Real Estate Capital Mkts.*,
No. 12-9412, 2016 WL 6996176 (S.D.N.Y. Nov. 30, 2016)..................................... 7

*Wilcox v. Georgetown Univ.*,
No. 18-422, 2019 WL 132281 (D.D.C. Jan. 8, 2019)............................................. 11

*Will v. Gen. Dynamics Corp.*,
No. 06-698, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010)............................................ 9, 12, 20

**Statutes**

29. U.S.C. §1106(a) ...................................................................................... 3

**Rules**

Fed. R. Civ. P. 23(h) .............................................................................................................. 19

**Other Authorities**

Greg Iacurci, *Cross-selling gaining prominence in retirement-plan lawsuits*, Investment
News (Nov. 6, 2019) ............................................................................................................ 17

*Informed Investor Advisory: Cross-Selling*, North American Securities Administrators
Association (Nov. 6, 2019) .................................................................................................. 17

Peter Brady, *Marginal Tax Rates and the Benefits of Tax Deferral,* Investment Company
Institute, Sept. 17, 2013 ..................................................................................................... 16

## INTRODUCTION

Class Counsel worked diligently in litigating this matter on behalf of the Settlement Class and achieved an outstanding result. Similar cases against universities have been dismissed and upheld on appeal, another university obtained summary judgment on most claims, and the only trial in an excessive fee case involving a university's retirement plan resulted in a judgment for the defendant, New York University. Class Counsel recognizes that, before this filing, this Court indicated it would not approve fees exceeding 25% of the common fund, or $4,525,000 pursuant to the lodestar method. Class Counsel requests that this Court base its determination on the facts presented in this filing, recognizing the full value of the benefit to the Class, including the non-monetary relief, which must be taken into account, and the fact that there is no multiplier, despite the risk taken by Class Counsel. The percentage recovery, taking into account both the common fund and the valuable non-monetary relief, is as low as 20 percent.

Moreover, this case and the other university cases filed about the same time by Class Counsel are the first ever filed against universities for fiduciary breaches resulting in excessive fees and imprudent investments. Class Counsel's commitment was the same as in each excessive fee case—to take the case as far as needed, including appeals, to invest whatever expenses were required, and to carry those expenses for potentially a decade or more.

 Further, the settlement amount is the largest recovery ever obtained in an excessive fee case against a university—$18,100,000. No money will revert to the Defendants.

Not only will the settlement fund provide substantial monetary compensation to Plan participants, but the affirmative relief component will provide substantial additional benefit of up to $8,012,367 to the Class and ensure that current and future participants have a quality retirement plan for years.

Class Counsel requests that the Court award attorneys' fees of $6,032,730, which represents

1

a 0.97 lodestar with no multiplier, which means there is no compensation for the very substantial

risk undertaken by Class Counsel. In ERISA class actions such as this, courts in this District and

others, have routinely approved the hourly rates requested by Class Counsel and found similar

hours expended reasonable. Additionally, apart from a lodestar less than one, a one-third fee

award of the common fund is the market rate established by many courts for similar ERISA class

actions. Such an award is both appropriate and reasonable considering the risk and results in this

case and the standards established by the First Circuit.

The Court should also reimburse Class Counsel's reasonable litigation expenses of

$522,021.93, and grant incentive awards of $25,000 each for Class Representatives David B.

Tracey, Daniel Guenther, Maria T. Nicholson, and Corrinne R. Fogg who remained highly

engaged throughout the litigation.

## BACKGROUND

On August 9, 2016, Plaintiffs filed this action alleging that Defendants breached their

fiduciary duties and took part in prohibited transactions in operating the MIT Supplemental

401(k) Plan. Doc. 1.[1] Prior to August 2016, no case had ever been brought by a private law firm,

the Department of Labor, or any other party or entity asserting claims of fiduciary breach for

excessive fees and imprudent investments on behalf of a university's retirement plan. Schlichter

Decl. ¶¶22-23; Sturdevant Decl. ¶¶7-8. Since the filing of this case, the parties engaged in over

three years of litigation that included the production of over 185,000 pages of documents and the

deposition of 19 fact witnesses and 5 experts.

The Court granted class certification on October 19, 2018, certifying the following class:

All participants and beneficiaries of the MIT Supplemental 401(k) Plan from

---

[1] "Doc." references are to the docket unless otherwise indicated. Capitalized terms not otherwise defined have the meanings ascribed to them in the Settlement Agreement. Doc. 290-01. A detailed discussion of the procedural history of this case is set forth in the Declaration of Scott T. Apking submitted herewith.

August 9, 2010 through the date of judgment, excluding the Defendants.

Doc. 157. On July 15, 2019, Defendants moved for summary judgment on all claims. Doc. 204.

On September 4, 2019, the Court granted in part and denied in part Defendants' motion for

summary judgment. Doc. 274.The motion was granted to the extent Plaintiffs alleged under

Count III that Defendants engaged in prohibited transactions in violation of 29. U.S.C. §1106(a).

*Id.* at 16–7. The motion was denied in all other respects. *Id*. This case was set for trial beginning

on September 16, 2019. Doc. 233. The parties reached an agreement to settle the case on

September 10, 2019.

## ARGUMENT

Class Counsel recognizes that this Court stated it would determine any fee award using the

lodestar method. Doc. 295. Although the Court has the discretion to apply the lodestar method,

the First Circuit prefers the percentage of fund approach in cases involving common funds. As

noted by the First Circuit, the percentage of fund approach offers distinctive advantages

including: (1) it is less burdensome to administer; (2) it reduces the possibility of collateral

disputes; (3) it enhances the efficiency throughout the litigation; (4) it is less taxing on judicial

resources; and (5) *it better approximates the workings of the marketplace. In re Thirteen Appeals

Arising out of the San Juan Dupont Plaza Hotel Fire Litig.,* 56 F.3d 295, 307 (1st Cir. 1995)

(emphasis added). The preference is particularly strong in this case because Class Counsel

represents clients *entirely* on a contingency basis and does not charge an hourly fee. Schlichter

Decl. ¶46. Further, it is fundamentally different from being paid an assured hourly payment

when a Plaintiffs' firm is pioneering new litigation that no one has ever done, as is the case here.

## I.      The lodestar confirms the reasonableness of Class Counsel's request.

The lodestar approach multiplies the reasonable hours spent in litigating the case by the

reasonable hourly rates of the attorneys who worked on the case. *In re Thirteen Appeals*, 56 F.3d

at 305. The rates must be in line with attorneys with commensurate skill and experience. *In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*, No. 11-02208, 2014 WL 6968424, at *6 (D. Mass. Dec. 9, 2014). A multiplier of the lodestar rate may be used. *In re Volkswagen & Audi Warranty Extension Litig.*, 89 F. Supp. 3d 155, 165 (D. Mass. 2015) (multipliers are an accepted means of enhancing a lodestar to appropriately reflect, for example, the scale of the results achieved by the prevailing counsel or the risks counsel took in pursuing contingent fees). Although the First Circuit prefers the percentage of fund approach, a lodestar analysis may nevertheless be performed as simply a check to ensure that the percentage award is fair and reasonable. *In re Volkswagen*, 89 F. Supp.3d at 163.

Class Counsel's lodestar in this matter is $6,168,902, resulting in a fee multiplier of less than one—0.97. The lodestar in this case is below "the lower end of multipliers reflected in other cases … [.]" *Bacchi v. Mass. Mutual Life Ins. Co.*, No. 12-11280-DJC, 2017 WL 5177610, at *5 (D. Mass. Nov. 8, 2017) (finding that a 1.31 lodestar is low); *see also Carlson v. Target Enterprise, Inc.*, No. 18-40139-TSH, 2020 WL 1332829, at *2 (D. Mass. Mar. 23, 2020) (stating that 1.08 is a low multiplier); *Gordan v. Mass. Mutual Life Ins. Co.*, No. 13-30184-MAP, 2016 WL 11272044, at *3 (D. Mass. Nov. 3, 2016) (approving 3.66 multiplier in a similar ERISA case); *New England Carpenters Health Bens. Fund v. First Databank, Inc.*, No. 5-11148-PBS, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (approving 8.3 multiplier); *Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 182 (D. Mass. 1998) (approving 8.9 multiplier); *Roberts v. TJX Co.*, No. 13-13142-ADB, 2016 WL 8677312, at *13 (D. Mass. Sep. 30, 2016)(collecting cases with multiples from 1 to 2). "Once established, the lodestar represents a presumptively reasonable fee … [.]" *Lipsett v. Blanco*, 975 F.2d 934, 937 (1st Cir. 1992). The hours and fees that Class Counsel used to calculate the lodestar are reasonable.

A. <u>The hours expended are reasonable</u>

To determine the final number of hours in this matter, Class Counsel performed a line-by-line audit of the time records. Apking Decl. ¶¶6-8. First, Class Counsel eliminated all time from attorneys who spent under 100 hours on the case (with an exception for one attorney who participated in drafting the complaint). *Id.* ¶7. Next, Class Counsel removed any duplicative, insufficient or otherwise unnecessary time entries. *Id.* This process resulted in the elimination of over 900 hours. *Id.* After eliminating those hours, 9,094.60 hours of attorney time and 1,490.4 hours of non-attorney time remained for the over three-years to bring this case to an $18.1 million settlement on the eve of trial. Schlichter Decl. ¶¶42, Exhibit B; Apking Decl. ¶¶8, 10.[2] The total hours expended in this case are consistent with the approved hours expended by other firms in complex ERISA class actions that did not even reach the summary judgment stage. *See*, *e.g.*, *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F.Supp.2d 980, 989 (D. Minn. 2005) (Plaintiffs' counsel spent a total of 10,401.67 hours prosecuting the case for two and a half years). The hours in this case are less than those approved in some of Class Counsel's other similar cases with similar procedural backgrounds. Apking Decl. ¶9. For example, in a similar ERISA case that also settled on the eve of trial, Class Counsel expended 18,200 hours. *Sims v. BB&T Corp.*, No. 15-1705, 2019 WL 1993519, at *2 (M.D.N.C. May 6, 2019). This case required great attention to detail and efficiency by Class Counsel because it involve high-profile and sophisticated fact and expert witnesses. Schlichter Decl. ¶¶21, 37; Apking Decl. ¶¶23-25 ; Doc. 205 at 7 ("members include MIT's Executive Vice President and Treasurer and other senior faculty and administrators"). The case was vigorously defended. Schlichter Decl. ¶41; Apking Decl. ¶¶15-20, 23-25, 27-28.

---

[2] A detailed summary of Class Counsel's efforts in this litigation is set forth in the Apking Declaration. If the Court deems it necessary, Class Counsel is willing to submit their time entries for in camera review, since they reflect sensitive work product of their attorneys.

In these types of cases, opposing counsel's hours and fees can dwarf those of Plaintiffs' counsel. *Tussey v. ABB, Inc.* represents a prime example of this. In that case, the first 401k excessive fee case trial, the two corporate defendants had 15 or more lawyers present in the courtroom throughout the month-long trial. Schlichter Decl. ¶38; Rosen Decl. ¶39. The two Defendants' legal fees, not including expenses, exceeded $42 million through trial. *Tussey v. ABB, Inc.*, No. 06-4305, 2019 WL 3859763, at *3 (W.D. Mo. Aug. 16, 2019); *see also I.W. v. School Dist. of Philadelphia*, No. 14-3141, 2016 WL 147148, at *13 (E.D. Pa. Jan. 13, 2016) ("Evidence of the hours expended by the non-prevailing party on the same task is relevant to the determination of whether the hours requested by the prevailing party are reasonable." (citations omitted)). Thus, the hours Class Counsel expended in this action are reasonable.

B.  <u>The hourly rates used to determine the lodestar are reasonable.</u>

Without doubt, this is national litigation. As recently as January 2020, Class Counsel's hourly rates used to calculate the lodestar in this matter were approved in similar class action litigation. *Kelly v. Johns Hopkins Univ.*, No. 16-2835, 2020 WL 434473, at *6–7 (D. Md. Jan. 28, 2020). The approved hourly rates are as follows: for attorneys with at least 25 years of experience, $1,060 per hour; for attorneys with 15–24 years of experience, $900 per hour; for attorneys with 5–14 years of experience, $650 per hour; for attorneys with 2–4 years of experience, $490 per hour; and for Paralegals and Law Clerks, $330 per hour. *Id*. Staff attorneys are billed at the lowest experience rate for attorneys 2-4 years regardless of years of experience. These rates were brought up to date based on 2016 hourly rates for Schlichter Bogard & Denton that were previously approved by Judge Ponsor in this District. *Gordan*, 2016 WL 11272044, at *3. Judge Ponsor adopted the 2016 hourly rates that were previously approved by the Southern District of Illinois in *Spano v. Boeing Co.*, No. 06-743, 2016 WL 3791123, at *3 (S.D. Ill. Mar. 31, 2016).These rates are reasonable.

6

Class Counsel has brought actions across the country defended by national firms with ERISA expertise, such as opposing counsel in this case. Schlichter Decl. ¶¶4-15, 20; Rosen Decl. ¶40. Class Counsel's requested rates were independently verified by a recognized expert in attorney fee litigation who opined that Class Counsel's requested rates were reasonable based on rates charged by national attorneys of equivalent experience, skill, and expertise in complex class action litigation on both sides of the "v". Rosen Decl. ¶¶59-74. Opposing counsel in this case, O'Melveny, a global law firm with 15 offices, utilized attorneys from its offices in Washington D.C., New York, and Los Angeles. Lead counsel for Defendants is the co-chair of O'Melveny's Financial Services Practice. The former Solicitor of Labor (who was responsible for enforcing ERISA), Gregory Jacob, also represented Defendants. Defense attorneys of this caliber generally charge rates to clients in the range of $1,350-$2,000 per hour, much more than the highest rate set forth in Class Counsel's rate schedule. *See* Rosen Decl. ¶¶61-62; *see also U.S. Bank Nat'l Assoc. v. Dexia Real Estate Capital Mkts.*, No. 12-9412, 2016 WL 6996176, at *8 (S.D.N.Y. Nov. 30, 2016) (observing in 2016 that Morgan Lewis and another large firm billed at rates up to $1,055 per hour to the client and that "partner billing rates in excess of $1,000 an hour are by now not uncommon in the context of complex commercial litigation."). Indeed, in 2016 this Court reviewed a declaration from a Boston based-law firm stating that its partner charged $1000 per hour to clients starting in March 2013. *Momenta Pharms., Inc. v. Amphastar Pharms., Inc.*, No. 11-11681-NMG, 2016 WL 2642997, at *9 (D. Mass. May 9, 2016); *Id*. at Doc. 546, ¶4. A fifth-year associate at that firm billed clients $695 per hour in September 2013. *Id*. ¶¶7-8. A second to third-year associate billed $495 per hour in 2013. *Id*. ¶¶10-12. The same caliber attorneys routinely represents defendants in cases brought by Class Counsel. Rosen Decl. ¶40. The 2013 rates these types of firms charge to clients are generally higher than those sought by

Plaintiffs. *Compare Momenta Pharms., Inc.* No. 11-11681-NMG, Doc. 546 *with* Apking Decl. ¶10.

ERISA attorneys garner some of the highest rates in the country because litigating these breach of fiduciary duty claims involves managing a case with sparse yet rapidly evolving law, extremely complex facts, and analysis of a great number of documents. It requires deep knowledge of 401(k) industry practices. Thus, ERISA litigation, such as this, involves a national market because the number of plaintiff's and defense firms who have the expertise and the resources to litigate these complex claims is small. *Abbott v. Lockheed Martin Corp.*, No. 06-701, 2015 WL 4398475, at *3 (S.D. Ill. Jul. 17, 2015); Schlichter Decl. ¶¶27, 37-38, 41; Sturdevant Decl. ¶10, 12; Rosen Decl. ¶¶26, 47, 60, 64, 69. Therefore, the relevant hourly rate is the "nationwide market rate" and opposing counsel's rates are instructive because Schlichter Bogard & Denton charges an entirely contingent fee. *Kruger v. Novant Health, Inc.*, No. 14-208, 2016 WL 6769066, at *4 (M.D.N.C. Sep. 29, 2016); *Clark v. Duke Univ.,* No. 16-1044, Doc. 165 at 5, 8 (M.D. N.C. June 24, 2019); *Sims,* 2019 WL 1993519, at *2; *Ramsey v. Phillips N. Am. LLC*, No. 18-1099, Doc. 27 at 8 (N.D. Ill. Oct. 15, 2018); *Beesley v. Int'l Paper Co.*, No. 06-703, 2014 WL 375432, at *3 (S.D. Ill. Jan 31, 2014); *Abbott,* 2015 WL 4398475, at *2; *Tussey,* 2015 WL 8485265, at *7.

When viewed as a blended rate, Class Counsel's request amounts to $569.93 per hour. This is the equivalent of a large defense firm's second or third-year associate defending the entire case. Rosen Decl. ¶73; *see also Momenta Pharms., Inc.* No. 11-11681-NMG, Doc. 546. Second and third-year associates at large defense firms engage in tasks such as document review and reviewing deposition testimony to make confidentiality designations. Rosen Decl. ¶73. Additionally, this blended rate is similar to blended rates approved as far back as 2010. *See, e.g.,*

*Will v. Gen. Dynamics Corp.*, No. 06-698, 2010 WL 4818174, at *9, 13 (S.D. Ill. Nov. 22, 2010) (blended rate of $514.60 per hour to calculate lodestar in 2010); *Tussey v. ABB, Inc.*, 746 F.3d 327, 340-41 (8th Cir. 2014) (same); *Krueger v. Ameriprise Fin., Inc.*, 2015 WL 4246879, at *8–9 (D. Minn. July 13, 2015)(same).

Class Counsel's hours do not include the hours expended by local counsel. Having paid local counsel, who is not on a contingent fee arrangement, Class Counsel's net will be reduced by the sum paid to local counsel. Apking Decl. ¶8. In addition, Class Counsel has committed to the following work without any additional fee: (1) time for preparation, travel and attending the final approval hearing; (2) time for managing the process of handling many calls from participants that will come regarding the notice, the timing, and the details of the settlement; (3) time for interacting with the Settlement Administrator and the Independent Fiduciary; (4) time for reviewing the Requests for Proposals responses; (5) time for monitoring compliance with the settlement for the next three years; and (6) time for handling an enforcement action, if needed, to enforce the settlement. Apking Decl. ¶¶29-31.

Based on its experience in other cases, Class Counsel anticipates spending an additional 50-100 hours administering the settlement over the upcoming years. Class Counsel will provide these additional services to the class for no additional fee, supporting Class Counsel's reasonable fee. *Roberts*, 2016 WL 8677312, at *13; Apking Decl. ¶30.

The rates and hours used to calculate the lodestar are therefore reasonable, given the specialized area of law, Class Counsel's creation of the field of 401(k) excessive fee litigation, and its skill, reputation, and expertise. *First Databank*, 2009 WL 2408560, at *2.

## II.    Class Counsel's request is additionally reasonable when the twelve factors are considered.

In determining the reasonableness of class counsel's fee award, the Court should considering

the following factors: (1) the time and labor required, (2) the novelty or complexity of the issues, (3) the skill required, (4) customary fee, (5) the preclusion of other employment by the attorneys, (6) the fixed or contingent nature of the fee, (7) the time limitations imposed by the client or circumstances, (8) the damages involved and results obtained, (9) attorney experience, reputation and ability, (10) desirability of the case, (11) the nature and length of the client relationship and (12) the size of awards in similar cases. *Momenta Pharms.*, 2016 WL 2642997, at *3; *see also Gordan*, 2016 WL 11272044 (listing common fund considerations); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 85−89 (D. Mass 2005). In applying these factors, Class Counsel demonstrates below that the requested award is not only fair and reasonable, it is warranted.

A. <u>The amount of labor required</u>

Class Counsel's requested fee is amply justified by their work in this case. As noted above, Class Counsel devoted over 10,500 hours of attorney and staff time over three years to bring this case to an $18.1 million settlement. These hours were efficiently expended and are less than the approved hours expended in other similar cases. Class Counsel reviewed over 180,000 pages of documents, the parties took 23 deposition, and Class Counsel fully prepared for trial, reaching settlement only on the brink of trial.

B. <u>The novelty and complexity of the issues</u>

ERISA class action litigation is inherently complex. *Kruger*, 2016 WL 6769066, at *2–3; *see also* Sturdevant Decl. ¶¶10-11. This "rapidly evolving" area of law places demands on counsel that are "complex and require the devotion of significant resources." *In re Wachovia Corp. ERISA Litig.*, No. 09-262, 2011 WL 5037183, at *4 (W.D. N.C. Oct. 24, 2011). Excessive fee litigation "entails complicated ERISA claims" and "novel questions of law." *Martin v. Caterpillar, Inc.*, No. 07-1009, 2010 WL 3210448, at *2 (C.D. Ill. Aug. 12, 2010); *Tussey v. ABB, Inc.*, No. 06-4305, 2012 WL 5386033, at *3 (W.D. Mo. Nov. 2, 2012), *vacated and*

10

*remanded*, 746 F.3d 327 (8th Cir. 2014). Few firms "are capable of handling this type of national litigation." *Abbott,* 2015 WL 4398475, at \*3; Schlichter Decl. ¶¶14, 27, 37-38, 41; Sturdevant Decl. ¶10.

Litigating an ERISA 401(k) breach of fiduciary duty claim involves managing a case with sparse, yet rapidly evolving law, extremely complex facts, and analysis of a great number of documents. *LaLonde v. Textron, Inc.,* 369 F.3d 1, 6 (1st Cir. 2004) (noting the sparse jurisprudence relating to ERISA breach of fiduciary duty claims)(citing *In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 459 n.13 (S.D.N.Y. 2004) (noting the esoteric, rapidly developing nature of ERISA breach of fiduciary duty cases)); Schlichter Decl. ¶24. It requires deep, specialized knowledge of 401(k) industry practices, as demonstrated by the fact that Class Counsel spent a year and nine months investigating the industry before filing any claim Schlichter Decl. ¶¶18, 21-22 The novelty and difficulty of this case is demonstrated by the fact that Defendants retain global law firms that utilize attorneys from multiple offices throughout the nation. Rosen Decl. ¶40; Apking Decl. ¶23. The subject matter is highly technical, including facts about prudent investment practices, industry best practices, fiduciary practices, and complex financial matters, requiring use of multiple experts for all parties. Apking Decl. ¶¶24-25.

In addition to the novel questions of law, Plaintiffs also faced recent, adverse precedent. *See, e.g., Cunningham v. Cornell Univ.*, No. 16-6525, 2019 WL 4735876 (S.D.N.Y. Sep. 27, 2019)(granting summary judgment); *Divane v. Northwestern Univ.,* No. 16-8157, 2018 WL 2388118 (N.D. Ill. May 25, 2018) (granting motion to dismiss) (and affirmed on March 25, 2020, --- F.3d ---, 2020 WL 1444966 (7th Cir. Mar. 25, 2020)); *Wilcox v. Georgetown Univ.,* No. 18-422, 2019 WL 132281 (D.D.C. Jan. 8, 2019)(same); *Davis v. Wash. Univ. in St. Louis*, No.

17-1641, 2018 WL 4684244 (E.D. Mo. Sept. 28, 2018)(same); *see also Kruger*, 2016 WL

6769066, at *4 (noting adverse precedent). Demonstrating the novelty and complexity of the

legal issues, during this case, both parties filed notices of conflicting supplemental authority on

various questions of law. *See, e.g.,* Docs. 55, 63, 68, 118.

    C.  The skill required, reputation and ability of the attorneys (factors 3 and 9)

    Class Counsel is not only highly experienced in handing ERISA class actions involving

retirement plans, but "pioneer[ed] . . . the field of retirement plan litigation." *Abbott,* 2015 WL

4398475, at *1. Class Counsel is the "preeminent firm" in excessive fee litigation having

"achieved unparalleled results on behalf of its clients" in the face of "enormous risks." *Nolte v.*

*Cigna Corp.,* No. 07-2046, 2013 WL 12242015, at *3–4 (C.D. Ill Oct. 15, 2013). Courts across

the country have recognized the reputation, skill, and determination of Class Counsel in pursuing

relief on behalf of retirement plan participants. Schlichter Decl. ¶¶5-15; Rosen Decl. ¶¶26-36.

    Recently, on January 28, 2020, U.S. District Judge Russell found that "Schlichter Bogard &

Denton are Class Counsel of the highest caliber." *Kelly*, 2020 WL 434473, *4. A litany of other

judges have commended the work of Class Counsel in ERISA matters. *See, e.g.*, *Clark*, 2019 WL

2579201, at *3; *Martin*, 2010 WL 3210448, at *2; *Nolte,* 2013 WL 12242015, at *2 (internal

citations omitted); *Will*, 2010 WL 4818174, at *3; *Sims*, 2019 WL 1993519, at *3; *Beesley*, 2014

WL 375432, at *2; *Spano*, 2016 WL 3791123, at *3.

    In awarding attorneys' fees to Class Counsel after the first trial of an ERISA excessive class

action, the district court concluded that "Plaintiffs' attorneys are clearly experts in ERISA

litigation." *Tussey*, 2012 WL 5386033, at *3. Class Counsel's record of success and

perseverance enabled the class to obtain a favorable settlement, and no other private law firm

could have obtained the extensive relief in the case. Rosen Decl. ¶38.

    Class Counsel also litigated the landmark case of *Tibble v. Edison Int'l*, 135 S.Ct. 1823

(2015)—the first and only 401(k) fee case to be heard by the Supreme Court—where it won a unanimous 9-0 verdict. In that case, the United States Solicitor General and the AARP filed amicus briefs in support of Plaintiffs' position, not only demonstrating the importance of the work being done by Class Counsel, but also that it is at the highest level. *See* Rosen Decl. ¶42.

      D.  <u>The customary fee</u>

As described above, Class Counsel represents clients entirely on a contingency basis and does not charge an hourly fee. Therefore, the rates charged by defense counsel are instructive on the customary fee in this type of case. *See, e.g., Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768 n.18 (7th Cir. 1982) ("The rates charged by the defendant's attorneys provide a useful guide to rates customarily charged in this type of case." (citation omitted)). As noted below, the customary fee is a one-third award of the common fund.

      E.  <u>The preclusion of other employment by the attorneys and desirability of the case (factors 5 and 10)</u>

The decision to pursue this case, advance substantial costs and commit substantial resources and thousands of attorney hours to obtain a successful recovery materially impacted Class Counsel's ability to handle "other simpler and less risky matters." *Krakauer v. Dish Network, LLC,* No. 14-333, 2018 WL 6305785, at *4 (M.D.N.C. Dec. 3, 2018); Schlichter Decl. ¶42. The commitment for this type of litigation when taking it on is done with the knowledge that it may require 20,000 or more hours over 12 years with a trial, multiple appeals, and multiple remandments. *See Tussey,* 2015 WL 8485265 (over 12 years of litigation and 24,000 hours). This demonstrates the fact that it is undesirable to bring these types of cases for most firms. *See* Schlichter Decl. ¶38.

      Further, in August 2016 Class Counsel became the first law firm in the country to file an excessive fee lawsuit involving a university's retirement plan, including this case. No

law firm was willing to devote the resources and endure the tremendous risk of

nonpayment inherent in this litigation "at *any* rate[.]" *Nolte,* 2013 WL 12242015, at *3;

*Ramsey,* Doc. 27 at 3; *see also* Schlichter Decl. ¶¶22-23; Sturdevant Decl. ¶¶13-14. Even

now, few law firms have the necessary expertise and are willing take the risk and devote

the substantial resources necessary, at risk of nonpayment, to litigate these complex

ERISA claims. *Abbott*, 2015 WL 4398475, at *3; Schlichter Decl. ¶¶37-38, 41;

Sturdevant Decl. ¶¶10.

      F.  <u>The contingent nature of the fee</u>

     Class Counsel litigated this matter on a contingent basis with no guarantee of recovery. Class

Counsel entered into contingency fee agreements with each of the Named Plaintiffs for one-third

of any monetary recovery plus reimbursement of expenses. Schlichter Decl. ¶35. The Named

Plaintiffs would not have been unable to pursue this litigation other than on a contingency fee

basis. *Id*; Sturdevant Decl. ¶14. The action settled just before trial, a high-stakes endeavor,

inherently fraught with risks and bearing enormous consequences, especially in light of the fact

that the only university excessive fee to go to trial in history resulted in judgment for the

Defendants. *Sacerdote v. New York Univ.*, 328 F.Supp.3d 273 (S.D. N.Y. 2018). That trial,

handled by Class Counsel, occurred in April 2018. Judgment was entered on July 31, 2018.

Similar allegations of imprudence are also made in this case.

     The difficulty in successfully obtaining a judgment is further illustrated by dismissals of

similar excessive fee allegations involving university retirement plans. *See, e.g.*, *Divane*, 2018

WL 2388118 (dismissal upheld by the 7th Circuit Court of Appeals, March 25, 2020, --- F.3d ---,

2020 WL 1444966); *Cunningham*, 2019 WL 4735876 (granting defendants' summary

judgment). Moreover, even if a successful judgment is obtained after a trial, recovery is far from

certain. *Tussey v. ABB, Inc.*, required over twelve years of litigation following multiple appeals

before the parties reached a settlement on March 28, 2019. *Tussey v. ABB, Inc.*, No. 06-4305, Doc. 859 (W.D. Mo. Mar. 28, 2019). *Tibble v. Edison*, supra, also took over 12 years and had multiple appeals. No. 07-5359, 2017 WL 3523737 (C.D. Cal. Aug. 16, 2017).

Obtaining the $18.1 million settlement in this case required Class Counsel to remain committed to the litigation throughout, and entailed significant risk of nonpayment.

G. <u>The time limitation imposed by the client or circumstances</u>

This case was set for trial on September 16, 2019. Doc. 234. The parties settled the case on September 10, 2019. Doc. 286. Class Counsel was fully prepared for trial. Apking Decl. ¶28. However, even if Plaintiffs had prevailed at trial, like *Tussey* and *Tibble*, the aggressive defense presented the possibility that Class Members would have to wait over a decade to receive any compensation pending multiple appeals. Rather than "having to wait as long as a decade as other classes in similar 401(k) cases have to do," Class members will receive compensation and be able to invest their proceeds immediately in a tax-deferred vehicle, which adds more value. *Kruger*, 2016 WL 6769066, at *5. Alternatively, this Court may have sided with the decisions of other courts and found in favor of Defendants.

H. <u>The damages involved and the results obtained.</u>

 Class Counsel obtained $18.1 million in monetary compensation for the Class. This is an excellent result and represents the largest settlement in any university sponsored retirement plan excessive fee case in history. There are an estimated 29,567 class members. This case is not a "coupon cases" where individual class members receive minimal benefit. They will also greatly benefit from the changes to the plan going forward for many years.

 Comparison to similar settlements demonstrates the outstanding results here. After Plaintiffs filed the instant case, several other firms pursued similar cases against other university plan fiduciaries. Two of them settled. This settlement is multiples of the other university sponsored

15

retirement plan settlements handled by different law firms. *See Short v. Brown Univ.*, No. 17-318, Doc. 55 (D. R.I. Aug. 2, 2019) ($3.5 million; 41,780 class members); *Daugherty v. Univ. of Chi.*, No. 17-3736, Doc. 57-1 (N.D. Ill. Sept. 12, 2018) ($6.5 million; 14,838 class members). Rosen Decl. ¶51. The robust non-monetary relief herein also exceeds any relief obtained by other firms. *Id*. The superior result was reached because of Class Counsel's hard-earned and acknowledged reputation as the pioneering law firm in retirement plan excessive fee litigation – a field Class Counsel *created* – along with its diligent work in this case. Class members will receive compensation and be able to invest their proceeds immediately in a tax-deferred retirement savings vehicle. The Investment Company Institute estimates that the benefit of the present value of tax deferral for 20 years is an additional 18.6%,[3] so the actual present value to the Class of the monetary portion of the settlement is $21,466,600.

In addition to the monetary value of the settlement, this Court also must consider the additional value added by the affirmative or injunctive relief obtained. *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 346–47 (D. Mass. 2015) (Woodlock, J.) ("Injunctive relief has been recognized as a meaningful component of a settlement agreement") (internal citations omitted).[4] The affirmative future relief is extensive and provides substantial additional value. *See* Doc. 290-1 at 23–24 (Art. 10). Defendants have committed to providing this relief over a three-year settlement period, during which it will, among other things, provide annual training to Plan fiduciaries; conduct a competitive bidding process for recordkeeping services; and prohibit solicitation for the purchase of non-Plan products. Class Counsel engaged Dr. Stewart Brown, a nationally recognized economist, at no expense to the class, to provide the Court with an

---

[3] Peter Brady, *Marginal Tax Rates and the Benefits of Tax Deferral,* Investment Company Institute, Sept. 17, 2013, available at http://www.ici.org/viewpoints/view_13_marginal_tax_and_deferral.

[4] *Blanchard v. Bergeron*, 489 U.S. 87, 95 (1989) (cautioning against an "undesirable emphasis" on monetary "damages" that might "short-change efforts to seek effective injunctive or declaratory relief").

estimate of the economic value of the expected decrease in recordkeeping fees following the competitive bidding process. Dr. Brown estimates that over a five-year period, Plan participants will achieve fee savings of at least $2,241,428 as a result of the competitive bidding process. Brown Decl. ¶8. The present value of these savings is $2,212,367. *Id*. ¶11.

The non-monetary relief provisions of the Settlement provide significantly enhanced value beyond the value of the Plan consultant and competitive bidding process. These provisions will allow Plan participants to avoid targeted solicitations pressuring them to purchase investment products outside the Plan. Recent publications have noted the significance of the non-monetary relief provision in this case, and have noted that these provisions help protect against cross-selling by third-party service providers.[5] Class Counsel engaged Professor Neil Richards, at no expense to the class, an internationally recognized data privacy expert, to provide the Court with an opinion about the value of the provision requiring Defendants to prohibit the Plan's recordkeeper from proactively soliciting Plan participants and inform the Court on how companies collect and use data to influence consumers—here Plan participants. Richards Decl. ¶¶2, 10, 18-39. Protection of Plan participants from unwanted solicitations using their personal information will save them as much as $5.8 million over the settlement period. *Id.* ¶¶40-54.

This substantial relief is not temporary or fleeting. Rather, this relief will go into effect after final approval and continue to protect class members for *three years* after final approval. The non-monetary terms will also protect future class members that join the Plan after final approval. After agreeing to these items, it would be highly unlikely that Defendants would revert to past practices after the three-year enforcement period is concluded.

---

[5] Greg Iacurci, *Cross-selling gaining prominence in retirement-plan lawsuits*, Investment News (Nov. 6, 2019 4:41 PM), https://www.investmentnews.com/article/20190812/FREE/190819996/cross-selling-gaining-prominence-in-retirement-plan-lawsuits; *see also Informed Investor Advisory: Cross-Selling*, North American Securities Administrators Association (Nov. 6, 2019), https://www.nasaa.org/51426/informed-investor-advisory-cross-selling/?qoid=investor-advisories.

Considering the monetary value of the Settlement, plus the value of tax deferral, anticipated future recordkeeping fee savings resulting from competitive bidding, and anticipated savings from the anti-solicitation clause, the Settlement is valued at as much as $29,478,967. Thus, Class Counsel's requested fee is 20% of the total benefit to the Class.

### H.  The nature and length of the client relationship

Class Counsel did not have a professional relationship with any of the Named Plaintiffs prior to this litigation, which supports the requested fee award. Schlichter Decl. ¶36; *Smith v. Krispy Kreme,* No. 05-187, 2007 WL 119157, at *3 (M.D.N.C. Jan. 10, 2007).

### I.  The size of the award in similar cases

In complex ERISA class actions, a one-third contingency fee of the monetary sum is routinely awarded. *See e.g., Kelly*, 2020 WL 434473, *4 (D. Md. Jan. 28, 2020); *Cassell v. Vanderbilt Univ.*, No. 16-2086, Doc. 174 (M.D. Tenn. Oct. 22, 2019) (33.33%); *Tussey*, No. 06-4305-NKL, Doc. 870 (same); *Gordan*, 2016 WL 11272044 (same); Apking Decl. ¶11.

The leading treatise on class action litigation has put the average fee at one third. *See* Alba Conte & Herbert Newberg, Newberg on Class Actions (4th ed. 2002), §14:6 at 551 ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery."

### J.  Public policy

Public policy also supports Class Counsel's fee. Class Counsel has provided "significant, national contribution" helping to "clarify[y] ERISA standards" and "educate[] plan administrators, the Department of Labor, the courts and retirement plan participants about the importance of monitoring recordkeeping fees and separating a fiduciary's corporate interest from its fiduciary obligations." *Tussey v. ABB, Inc.,* No. 06-4305, 2015 WL 8485265, at *2 (W.D. Mo. Dec. 9, 2015), *vacated and remanded*, 850 F. 3d 951 (8th Cir. 2017). "The public benefits when

capable and seasoned counsel undertake private action to enforce [federal] laws." *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 263 (E.D. Va. 2009). Additionally, the non-monetary relief in this case helps draw attention to the issue of cross-selling in retirement plans. Richards Decl. ¶54. Class Counsel's efforts have contributed to over $2 billion in fee savings for plan participants throughout the whole industry. *Nolte,* 2013 WL 12242015, at *2.

### III.    The Court should award reimbursement of Class Counsel's litigation expenses.

Class Counsel is entitled to reimbursement of litigation expenses of $522,021.93. Fed. R. Civ. P. 23(h). Reimbursable expenses include expert fees, travel, conference telephone, postage, delivery services, and legal research. Alba Conte, 1 Attorney Fee Awards §2:19 (3d ed. 2004). That is what the expenses submitted here cover. *See* O'Gorman Decl. ¶5.[6] The expenses incurred in this case were reasonable and necessary. Schlichter Decl. ¶¶38, 41; Apking Decl. ¶9.

Class Counsel brought this case without guarantee of reimbursement or recovery. There was a strong incentive to limit costs. Given the complexity of this case, the costs incurred are much lower with what would be expected in a case of this magnitude that was litigated for years and settled on the eve of trial. *See Spano,* 2016 WL 3791123, at *1, 4 ($1.8 million in expenses); *Abbott,* 2015 WL 4398475, at *1, 4 ($1.6 million in expenses); *Beesley,* 2014 WL 375432, at *1, 3 ($1.6 million in expenses); *In re Northrop Grumman ERISA Litig.,* No. 06-6214, 2017 WL 9614818, at *6 (C.D. Cal. Oct. 24, 2017) ($1.2 million in expenses); *George v. Kraft Foods Glob., Inc.,* No. 07-1713, 2012 WL 13089487, at *1, 4 (N.D. Ill. June 26, 2012) ($1.5 million in expenses).

### IV.    The Court should approve case contribution awards for the Named Plaintiffs.

In their discretion, Courts typically award special compensation to the class representatives

---

[6] Class Counsel is not seeking reimbursement for expenses paid for local counsel's time or expenses incurred by co-counsel.

in recognition of their time and effort. *In re Relafen Antitrust Litig.*, 231 F.R.D. at 82. "A

substantial incentive award is appropriate in [a] complex ERISA case given the benefits accruing

to the entire class in part resulting from [named plaintiff's] efforts." *Savani v. URS Prof'l*

*Solutions LLC*, 121 F. Supp. 3d 564, 577 (D. S.C. 2015). In this case, the Named Plaintiffs

provided invaluable assistance to Class Counsel. *See* Apking Decl. ¶¶12-13, 16. They risked

their reputation and alienation "in bringing an action against a prominent [university] in their

community." *Kruger,* 2016 WL 6769066, at *6; *see also* Apking Decl. ¶13. The Named

Plaintiffs were subject to national media regarding the case.[7]

    A case contribution award of $25,000 each for the five Class Representatives, which when

combined represents less than one percent of the Settlement Fund is reasonable and appropriate

given the contributions of the Class Representatives to the case. This amount is consistent with

awards in similar excessive fee settlements. *See Kruger,* 2016 WL 6769066, at *6; *Abbott*, 2015

WL 4398475, at *4; *Krueger*, 2015 WL 4246879, at *4; *Beesley*, 2014 WL 375432, at *4; *Will*,

2010 WL 4818174, at *4 (all awarding $25,000 to each named plaintiff).

## CONCLUSION

    This Court should grant Plaintiffs' Motion.

---

[7] *See*, MIT Accused of Costing Workers Millions In Cozy Deal with Financial Giant Fidelity, All Things Considers, NPR, Aug. 14, 2019, https://www.npr.org/2019/08/14/750918282/mit-accused-of-costing-workers-millions-in-cozy-deal-with-financial-giant-fideli.

March 27, 2020

/s/ Jerome J. Schlichter
SCHLICHTER BOGARD & DENTON LLP
Jerome J. Schlichter (admitted *pro hac vice*)
Heather Lea (admitted *pro hac vice*)
Joel D. Rohlf (admitted *pro hac vice*)
Scott T. Apking (admitted *pro hac vice*)
100 South Fourth Street, Suite 1200
St. Louis, MO, 63102
(314) 621-6115
(314) 621-5934 (fax)
jschlichter@uselaws.com
hlea@uselaws.com
jrohlf@uselaws.com
sapking@uselaws.com
*Lead Counsel for Plaintiffs*

Michael M. Mulder (admitted *pro hac vice*)
Elena N. Liveris (admitted *pro hac vice*)
LAW OFFICES OF MICHAEL M. MULDER
1603 Orrington Avenue, Suite 600
Evanston, Illinois 60201
(312) 263-0272
(847) 563-2301 (fax)
mmmulder@mmulderlaw.com
eliveris@mmulderlaw.com
*Counsel for Plaintiffs*

Stephen Churchill, BBO#564158
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
(617) 607-3260
(617) 488-2261 (fax)
steve@fairworklaw.com
*Local Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 27, 2020.

/s/ Jerome J. Schlichter

21