IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID B. TRACEY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MASSACHUSETTS INSTITUTE OF TECHNOLOGY, *et al.*, <br><br> Defendants. | No. 16-cv-11620-NMG |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF**
**UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

This Settlement provides significant monetary relief, $18.1 million, and substantial future relief that will benefit virtually every participant in the MIT Supplemental 401(k) Plan ("Plan"). For the reasons described below and those set forth in the Motion, this Court should enter its order approving the Settlement.

Plaintiffs filed this action in August of 2016. Doc. 1. In summary, Plaintiffs claimed that Defendant the Massachusetts Institute of Technology and other Defendants breached their duties under the Employee Retirement Income Security Act of 1974 ("ERISA") by causing the Plan to pay unreasonable investment management and administrative fees, selecting and retaining underperforming investments and failing to monitor and remedy breaches of other Plan fiduciaries.

Ultimately, the parties reached a settlement in this matter the week prior to trial. The Settlement was the product of extensive arm's-length negotiations preceded by hard-fought litigation and broad fact and expert discovery. In light of the litigation risks further prosecution of this action would inevitably entail along with the uncertainty of a trial, Plaintiffs request that

the Court grant final approval of the proposed Settlement.

## BACKGROUND

On August 9, 2016, Plaintiffs filed their original complaint. Doc. 1. On November 16, 2016, Plaintiffs filed an Amended Complaint. Doc. 32. On October 5, 2016, Defendants filed a motion to dismiss Plaintiffs' amended complaint. Doc. 38. On September 29, 2017, the Court granted in part and denied in part Defendants' motion to dismiss Plaintiffs' amended complaint. Docs. 70 and 75.

On March 1, 2018, Plaintiffs filed a second amended complaint, which is the operative complaint and set forth the surviving claims. Doc. 98. In Count I, Plaintiffs alleged Defendants breached their duty of prudence under 29 U.S.C. § 1104(a)(1)(B) by failing to engage in a prudent process to assess the prudence of each investment option in the Plan and failing to remove imprudent investments resulting in the retention of investments in higher costs share classes and investment options with unreasonable expenses, risk and poor performance relative to other investment options that were readily available to the Plan. In Count II, Plaintiffs alleged Defendants breached their duty of prudence under 29 U.S.C. §1104(a)(1)(B) by allowing the Plan's recordkeeper to receive unreasonable compensation, failing to prudently monitor and control recordkeeping expenses, and failing to solicit bids from other recordkeepers. In Count III, Plaintiffs alleged that Defendants committed prohibited transactions under §1106(a)(1)(C). Under Count V, to the extent Defendants delegated any of their fiduciary duties, Plaintiffs alleged that Defendants failed to prudently monitor the actions of those individuals.

The Court granted class certification on October 19, 2018, certifying the following class:
> All participants and beneficiaries of the MIT Supplemental 401(k) Plan from August 9, 2010 through the date of judgment, excluding the Defendants.

Doc. 157. On July 15, 2019, Defendants moved for summary judgment on all claims. Doc. 204.

On September 4, 2019, the Court granted in part and denied in part Defendants' motion for summary judgment. Doc. 274.The Court granted the motion to the extent Plaintiffs alleged under Count III that Defendants engaged in prohibited transactions in violation of 29. U.S.C. §1106(a). *Id.* at 16-7. The Court denied the motion in all other respects. *Id*. Since the filing of this case, the parties engaged in over three years of litigation that included the production of over 185,000 pages of documents and the deposition of 19 fact witnesses and five experts. The parties completed all required pretrial compliance and trial was set to begin on September 16, 2019. Doc. 233.

**The terms of the Settlement.**

In exchange for releases and for the dismissal of the action and for entry of a judgment as provided for in the Settlement, Defendants will make available to Class Members the benefits described below during a Settlement Period of three-years.

**A. Monetary Relief.**

Defendants will deposit $18,100,000 (the "Gross Settlement Amount") into an interest-bearing settlement account (the "Gross Settlement Fund"). The Gross Settlement Fund will fund the participants' recoveries, administrative expenses to facilitate the Settlement, and Plaintiffs' counsel's attorneys' fees and costs, and Class Representatives' Compensation if awarded by the Court. No residual monies remaining in the Gross Settlement Fund will revert back to the Defendants.

The majority of Class Members will automatically receive their distributions directly into their tax-deferred retirement account. Those who already left the Plan and no longer have an active account are given the option to receive their distributions in the form of a check made out to them individually or as a roll-over into another tax-deferred account. As a result, most Class

Members will receive their distributions tax-deferred, further enhancing the significant monetary recovery.

### B. Additional Terms.

In addition to the monetary component of the Settlement, Defendants agreed to substantial non-monetary terms in accordance with Article 10 of the Settlement Agreement. These terms include:

1. During the Settlement Period, MIT shall provide annual training to Plan fiduciaries on prudent practices under ERISA, loyal practices under ERISA, and proper decision making in the exclusive best interests of Plan participants;

2. No later than one hundred and twenty (120) days from the Settlement Effective Date, the Plan's fiduciaries shall issue a request for proposal for recordkeeping and administrative services for the Plan. The request for proposal shall be made to at least three qualified service providers for administrative and recordkeeping services for the investment options in the Plan, each of which has experience providing recordkeeping and administrative services to plans of similar size and complexity. The request for proposal shall request that any proposal provided by a service provider for basic recordkeeping services to the Plan not express fees based on percentage of Plan assets and be on a per-participant basis. The request for proposal shall include the restrictions described in paragraph 6 below;

3. After conducting the request for proposal for recordkeeping services, the Plan may decide to keep its current recordkeeper or retain a new recordkeeper based on whatever factors, including cost, value, available services, and quality of services, that the Plan fiduciaries deem appropriate under the circumstances. Fees paid to the recordkeeper for basic recordkeeping services will not be determined based on a percentage-of-plan-assets basis;

4

4. Any revenue sharing related to Plan investments will be deposited in the Plan trust and, to the extent not seasonably used to defray lawful Plan expenses, be returned to Plan participants according to a method of allocation approved by Plan fiduciaries and permitted by ERISA no less frequently than on an annual basis;

5. Plan fiduciaries will determine a method of allocating recordkeeping and administrative expenses that it determines is fair, equitable, and appropriate for Plan participants. This determination will be separate from the flat fee negotiated with the recordkeeper and based on the number of Plan participants;

6. During the Settlement Period, MIT and the Plan's fiduciaries shall continue their current practice of allowing the Plan's recordkeeper to communicate with current Plan participants (in their capacities as such) only at the direction or with the authorization of Plan officials, and prohibiting any communications to Plan participants (in their capacities as such) concerning non-Plan products and services. Such non-Plan products and services shall include, but are not limited to, Individual Retirement Accounts, life or disability insurance, non-Plan investment products, and wealth management services. Notwithstanding this limitation, the parties understand that the Plan's recordkeeper may address non-Plan products and services in response to a request for information initiated by a Plan participant;

7. Within thirty (30) days of selecting the recordkeeper, MIT shall provide to Class Counsel the final bid amounts that were submitted in response to the request for proposal (without identifying the recordkeepers who submitted those bids), shall identify the selected recordkeeper, and shall (if then available) disclose the final agreed-upon contract for recordkeeping services. If the contract is not available, it will be forwarded to Class

5

Counsel within 30 days of execution. Class Counsel shall sign any confidentiality agreements the recordkeepers may reasonably require in order to receive such information. MIT also shall provide Class Counsel the current recordkeeping contract for the Plan, to the extent not previously furnished in discovery. All such materials shall be kept confidential by Class Counsel, in accordance with the Protective Order governing confidential discovery material that has been entered in this case;

8. During the Settlement Period, MIT shall continue its current practice of using an independent investment consultant to review all designated investment alternatives in the Plan (excluding the brokerage window) at least annually;

9. The Settling Parties agree that the costs relating to the Plan's use of an investment consultant and the costs of conducting the request for proposal for recordkeeping and administrative services are expenses properly paid for by the Plan under applicable law.

The non-monetary terms are substantial and materially add to the total value of the Settlement.

**Preliminary approval of the Settlement and Plaintiffs' motion for attorneys' fees.**

Plaintiffs filed their motion for preliminary approval of the Settlement on October 28, 2019. Doc. 290. In accordance with the terms of the Settlement, on November 6, 2019 the Settlement Administrator served the CAFA notice to the United States Attorney General, as well as the Attorney Generals for the 50 states and the District of Columbia and Puerto Rico. Decl. of Analytics, ¶3. On January 7, 2020, the Court preliminarily approved the Settlement. Doc. 295. On March 27, 2020, Plaintiffs filed their Motion for Attorneys' Fees, Reimbursement of Expenses, and Case Contribution Awards for Named Plaintiffs. Doc. 302.

# ARGUMENT

There is a "presumption of fairness for settlements that are deemed to be the result of 'arms-length negotiations' following 'adequate' discovery." *In re Celexa and Lexapro Marketing and Sales Practices Litig.*, No. 09-2067-NMG, 2014 WL 4446464, at *4 (D.Mass. Sep. 8, 2014) (citing *Nat'l Ass'n of Chain Drug Stores v. New Eng. Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir.2009)); *see also Newberg on Class Actions* §11.41 at 11-88 (3d ed. 1992). Although the First Circuit has not adopted any single list of factors in approving a settlement, Courts in the First Circuit have considered factors such as: "(1) the risk, complexity, expense and duration of the case; (2) comparison of the proposed settlement with the likely result of continued litigation, (3) reaction of the class to the settlement; (4) stage of litigation and the amount of discovery completed; and (5) quality of counsel and conduct during litigation and settlement negotiations." *In re Celexa and Lexapro Marketing and Sales Practices Litig.*, 2014 WL 4446464, at *4 (quotations omitted). As previously explained in Plaintiffs' prior briefing related to this Settlement (Docs. 291, 302-1), and incorporated herein by reference, all relevant factors are met.

## I. The Settlement is fair because it is the product of extensive arm's length negotiations.

There is an initial strong presumption that a proposed class action settlement is fair and reasonable when it is the result of arm's-length negotiations. *City Pshp. Co. Atlantic Acquisition Ltd. Pshp.*, 100 F.3d 1041, 1043 (1st Cir. 1996) (noting a strong presumption that a proposed class action settlement is fair and reasonable when it is the result of arm's-length negotiations). The parties reached the Settlement only after lengthy negotiations with the assistance of a nationally recognized mediator extending over a period of approximately four months. Doc. 291

7

at 9. The parties began settlement discussions in May 2019 but were unable to reach an agreement on all terms, including non-monetary relief, until September 2019. *Id.* Counsel on both sides are experienced and thoroughly familiar with the factual and legal issues presented. *Id.* at 10-12. Indeed, Class Counsel is the preeminent law firm in ERISA fiduciary breach litigation, and pioneered the field. *Id.* All parties' counsel believe that this Settlement is fair and reasonable. *Id.* at 13.

## II. All relevant factors weigh in favor of approving the Settlement.

### A. The Settlement was executed after significant discovery and lengthy and complex litigation.

The first and fourth factors examine the risk, complexity, expense and duration of the case, the stage of litigation and the amount of discovery completed. Counsel filed this case over four year ago and settled the claims the week prior to trial in September 2019. Litigating this ERISA 401(k) breach of fiduciary duty case involved managing a case with sparse, yet rapidly evolving law, extremely complex facts, and analysis of a great number of documents. *LaLonde v. Textron, Inc.,* 369 F.3d 1, 6 (1st Cir. 2004) (noting the sparse jurisprudence relating to ERISA breach of fiduciary duty claims)(citing *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 n.13 (S.D.N.Y. 2004)). It requires deep, specialized knowledge of 401(k) industry practices, as demonstrated by the fact that Class Counsel spent a year and nine months investigating the industry before filing any claim. Doc. 302-1 at 17.

In August 2016 Class Counsel became the first law firm in the country to file an excessive fee lawsuit involving a university's retirement plan, including this case. The novelty and difficulty of this case is demonstrated by the fact that the Defendants retained a global law firm that utilized attorneys from multiple offices throughout the nation. *Id.* The subject matter is

highly technical, including facts about prudent investment practices, industry best practices, fiduciary practices, and complex financial matters, requiring use of multiple experts for all parties. *Id*. The necessary expenses incurred by Plaintiffs' counsel to bring this matter to a resolution—$522,021.93—reflect the complexity of litigating the claims. Given the complexity and expense of the case, the representation was highly risky and Plaintiffs' counsel litigated this matter on a contingent basis with no guarantee of recovery. The risk of non-recovery in this case was significant. Several of the 401(k) cases handled by Class Counsel were dismissed and the dismissals upheld by the Courts of Appeals. *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009); *Loomis v. Exelon Corp.*, 658 F.3d 667 (7th Cir. 2011); *Renfro v. Unisys Corp.*, 671 F.3d 314 (3d Cir. 2011). Others had summary judgment granted against the plaintiffs in whole or in part. *Kanawi v. Bechtel Corp.*, 590 F.Supp.2d 1213 (N.D. Cal. 2008); *Taylor v. United Techs. Corp.*, No. 06-3194, 2009 U.S.Dist.LEXIS 19059 (D. Conn. Mar. 3, 2009), *aff'd*, 354 Fed. Appx. 525 (2d Cir. 2009); *George v. Kraft Foods Global, Inc.*, 684 F.Supp. 2d 992 (N.D.Ill. 2010), *rev'd in part*, 641 F.3d 786 (7th Cir. 2011); *Tibble v. Edison Int'l*, 639 F.Supp.2d 1074 (C.D.Cal. 2009), aff'd, 729 F.3d 1110 (9th Cir. 2013), *vacated*, 135 S. Ct. 1823 (2015), *aff'd on remand*, 820 F.3d 1041 (9th Cir. 2016); *Cunningham v. Cornell Univ.*, 16-6525, 2019 WL 4735876 (S.D.N.Y. Sep. 27, 2019).

Prior to the Settlement, Plaintiffs' counsel conducted a full investigation of their claims. In addition to a substantial investigation prior to the filing of the complaint, Plaintiffs' counsel completed fact and expert discovery, including obtaining from Defendants and third parties approximately 185,000 pages of documents. Plaintiffs sought and obtained leave to depose five additional fact witnesses beyond the limit of ten. Doc. 158-9, Doc. 184. In total, Plaintiffs deposed 15 fact witnesses and two expert witnesses. Defendants also undertook discovery of the

9

named plaintiffs. Defendants deposed each of the named plaintiffs and three expert witnesses. The parties completed robust discovery and vigorously litigated the claims at all stages of litigation.

      **B.**      **The Settlement is reasonable in light of the likely result of continued litigation.**

The second factor examines the comparison of the proposed settlement with the likely result of continued litigation. The Settlement represents an outstanding recovery in light of both the strength of Plaintiffs' claims but also in light of the strength of Defendants' defenses. The action settled just before trial, a high-stakes endeavor, inherently fraught with risks and bearing enormous consequences, especially in light of the fact that the only university excessive fee to go to trial in history resulted in judgment for the Defendants. *Sacerdote v. New York Univ.*, 328 F.Supp.3d 273 (S.D. N.Y. 2018).

The Settlement is the largest against any university sponsored retirement plan and multiples of settlements in similar cases. Doc. 302-1 at 15-16. Plaintiffs maintain that they have strong underlying claims for breach of fiduciary duty against Defendants. However, the existence of significant legal obstacles and Defendants' legal defenses rendered any recovery in this case uncertain. Doc. 302-1 at 17, 21. This makes the monetary recovery of $18.1 million highly valuable, even without considering the value of the non-monetary terms and the changes Defendants will make to the Plan as a result of this litigation. Taking into account the benefit of tax deferral and the economic value of the non-monetary relief, the Settlement is valued at up to $29.4 million. Doc. 302-1 at 23-24. The Settlement also avoids lengthy and costly litigation.

Without this Settlement, the parties would incur very substantial expenses in continuing this litigation due to the complexity of the issues involved. As previously explained by Plaintiffs,

even if Plaintiffs prevailed at trial, further delay in recovery and additional expenses would be incurred through many years of appeal, which has been the experience of Class Counsel. *Id*. at 20-21. There is no reason to believe this case would proceed differently than prior ERISA class actions handled by Class Counsel.

### C. The Class reacted favorably to the Settlement

The fourth factor examines the reaction of the class to the settlement. As of the objection deadline of April 26, 2020, and as of this filing, of the over 29,000 Class Members who were sent notices, *only two* filed an objection to any aspect of the Settlement, including Plaintiffs' requested attorneys' fees and reimbursement of expenses, or the case contribution awards sought for the Named Plaintiffs. A majority of the Class Members—22,690—will receive automatic distributions from the common fund. Many of the remaining 6,877 Former Participants who are required to submit a claims form have done so. As of the date of this filing, 2,430 Former Participants, over 35 percent, have submitted claims and the claims filing deadlines continues until May 16, 2020. In addition to the positive reaction by the Settlement by Class Members, the Independent Fiduciary has thoroughly reviewed all aspects of the Settlement and has approved the Settlement and Plaintiffs' attorneys' fees and expenses as reasonable. *See* Ex. 1 (Statement of Newport Trust Company).

### D. The quality of counsel and conduct during litigation and settlement.

The fifth factor examines the quality of counsel and conduct during litigation and settlement negotiations. Plaintiffs' counsel is the "preeminent firm" in excessive fee litigation having "achieved unparalleled results on behalf of its clients" in the face of "enormous risks." *Nolte v. Cigna Corp.*, No. 07-2046, 2013 WL 12242015, at *3–4 (C.D. Ill Oct. 15, 2013). Courts across the country have recognized the reputation, skill, and determination of Plaintiffs' counsel in

11

pursuing relief on behalf of retirement plan participants. Doc. 302-2 at 4-8. Defense counsel is a highly regarded global law firm with significant experience in ERISA litigation. Doc. 302-1 at 13. As reflected by the docket in this case, the parties vigorously litigated this matter to the day of Settlement.

## CONCLUSION

The Court should grant final approval of the Settlement.

Case 1:16-cv-11620-NMG Document 308-1 Filed 05/12/20 Page 13 of 13

| | |
|---|---|
| Dated: May 12, 2020 | /s/ Jerome J. Schlichter |

SCHLICHTER BOGARD & DENTON LLP
Jerome J. Schlichter (admitted *pro hac vice*)
Heather Lea (admitted *pro hac vice*)
Joel D. Rohlf (admitted *pro hac vice*)
Scott T. Apking (admitted *pro hac vice*)
100 South Fourth Street, Suite 1200
St. Louis, MO, 63102
(314) 621-6115
(314) 621-5934 (fax)
jschlichter@uselaws.com
hlea@uselaws.com
jrohlf@uselaws.com
sapking@uselaws.com
*Lead Counsel for Plaintiffs*

Michael M. Mulder (admitted *pro hac vice*)
Elena N. Liveris (admitted *pro hac vice*)
LAW OFFICES OF MICHAEL M. MULDER
1603 Orrington Avenue, Suite 600
Evanston, Illinois 60201
(312) 263-0272
(847) 563-2301 (fax)
mmmulder@mmulderlaw.com
eliveris@mmulderlaw.com
*Counsel for Plaintiffs*

Stephen Churchill, BBO#564158
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
(617) 607-3260
(617) 488-2261 (fax)
steve@fairworklaw.com
*Local Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 12, 2020.

/s/ Jerome J. Schlichter